# EXHIBIT 1



# Ministry of Health and Wellness

**FRANK WALCOTT BUILDING**
**CULLODEN ROAD, ST. MICHAEL**
**BARBADOS**



GOVERNMENT OF BARBADOS

*In Replying, the Reference Number and Date of this Letter should be quoted*

**Telephone** █████████

**Email:** pshealth@health.gov.bb

███████████████

April 6, 2021

**TO:** AstraZeneca

**C/O:** Distributor/Allocation Holder

**Via:** United Products and Distribution LLC

**Thru:** Ms. Linda Salud Margon

Dr. CB

This Letter of Intent is addressed to you to set forth the urgent and imminent interest of our Government for the Country of Barbados, to contract and authorize Radical Investments Limited, 20 Micoud Street, Castries, St. Lucia to procure the supply of 1,000,000 doses / 100,000 5ml multi-dose vials of AstraZeneca's AZD1222 vaccine. We attest that we are purchasing these vaccines for the exclusive use of vaccinating our population against COVID-19, and that this product will not be resold under any circumstance.

Based on the above, please provide to Radical Investments a Full Corporate Offer along with verifiable information specifying factory location, product specifications, etc. to enable us to conduct due diligence of authenticity of the very critical and important life-saving vaccine much needed in this fight against the Pandemic.  Once we are satisfied with documentation, we shall expeditiously move forward with the order placement and signing of the Sales Purchase agreement and payment procedures to secure the timely procurement of the vaccines for our people.

After AstraZeneca has provided us all necessary and required commercial documents, including but not limited to Certificate of Authentication, testing reports, SGS report and Bill of Lading, Radical Investments agrees to make all payments directly to the Allocation Holder.

Our Government further agrees to allow and take responsibility for importing the AZD1222 vaccines stated above once the shipment arrives CIF to our country of Barbados.

**Page 2**

We understand that AstraZeneca must do due diligence and contact one or more government officials, including an embassy to embassy call from the embassy in India or UK in order to confirm that authenticity of this LOA/LOI letter, and our Government agrees to assist them in this mission.

We appreciate your consideration of this order.  I can be contacted at ███████████ ███████████

Signed,

Janet Phillips (Mrs.)

PERMANENT SECRETARY
MINISTRY OF HEALTH
Permanent Secretary

# EXHIBIT 2

**CONTRACT CODE: UPD-DH –1MilIAZ-AM-15321**
**UPD USA-4-500MCF-22321-AM**

This Sales and Purchase Agreement (this "**Agreement**") is entered intoeffective April 16, 2021. (the "**Effective Date**")

**Between:**

| SELLER | |
|---|---|
| **Good Vibrations Entertainment LLC**<br>2219 Main St., Santa Monica, CA 90405<br>United States<br><br>EIN: ███████ | CONTACT PERSON<br><br>Name:      Alex Moore<br>Position: BDM<br>Telephone:<br>E-mail:████████████<br><br>█████████ |

| BUYER | |
|---|---|
| RADICAL INVESTMENTS LIMITED<br>Company Number 2015-00356<br>███ coud Street, Castries, St. Lucia Phone –<br><br>Email ████████<br>TIN:████████<br>Caribbean | CONTACT PERSON<br><br>Name: Mark Maloney<br>Position: Director<br>Sales Telephone: +1<br>█████████████<br>E-mail: ████████████ |

Buyer and Seller are also referred to in this Agreement as the "**Parties**."

Buyer agrees to purchase, and Seller agrees to sell, the Product identified below in accordance with the following terms and conditions.

Buyer warrants that it can fulfill the requirements of this Agreement to purchase the Product identified below.

Buyer represents and warrants that it has the financial and corporate authority to purchase the Product identified below in a timely manner, under the terms specified and agreed upon by the Parties in this Agreement.

Seller and Buyer, respectively, each represents and warrants that it can fulfill the requirements of this Agreement and respectively provide the Products at the Purchase Price referred to herein, in time and under the terms agreed to.

In consideration of the mutual promises, agreements, terms, assertions and covenants herein and other good and valuable considerations, the receipt of which is acknowledged hereby, the Parties hereto mutually and voluntarily agree as follows:

**Art. 1   Specific Conditions**

| | |
|---|---|
| Product Sold: | Astra Zeneca |
| Origin: | **Belgium** |

| | |
|---|---|
| **Quantity:** | **One Million (1,000,000) Covid 19 Vaccine doses (100,000 vials)** |
| **Contract Length:** | Single Shipment |
| Purchase Price: | USD $10.20 per dose. Total: $10,200,000.00 for the Products plus USD$2.00 per dose (USD$2,000,000) commission |
| **Brand:** | Astra Zeneca |
| Payment Terms: | Payment into escrow account on execution of this Agreement, to be released in accordance with the terms hereof and the Escrow Agreement attached as Exhibit A (the "**Escrow Agreement**"), as further set forth in Article 4. |
| Delivery Terms: | As per Article 5. |
| Inspection: | SGS report at shipping point. |
| Packaging: | As per Manufacturer's Recommendations |

**Art. 2    Title**

Seller shall sell, and the Buyer shall purchase, the Products set forth in Article 1 (the "**Products**") in the Quantities and Pricing set forth in Article 1.  Title to the Product will be held by Astra Zeneca and transferred to the Buyer free and clear of any liens  or encumbrances upon receipt of the Purchase Price in accordance with the terms of the Escrow Agreement.

**Art. 3        Invoicing**

Promptly after execution of this Agreement, Seller shall issue an invoice to  Buyer  for One Million (1,000,000)  doses (100,000 vials) of the  Products.

**Art. 4   Payment and Escrow**

Upon receipt of the Invoice:

1.) Buyer shall deposit the Purchase Price for the Products into the IOLTA Trust Account identified below (the "**Escrow Account**") and maintained   under   the Escrow  Agreement.

| | |
|---|---|
| IOLTA Account Name: | Charlie Stein State Bar ofCA Trust Fund Program |
| Bank: | Bank of West |
| | 9401 Wilshire Blvd., |
| | Beverly Hills, CA 90212 |

| | |
|---|---|
| Routing  Number: | |
| Account Number: | ▉ |
| SWIFT: | |
| ABA: | BWSTUS66 |
| Account Holder: | Charlie Stein |
| Paymaster: | Charlie Stein |
| | Davidovich Stein Law Group, LLC6442 Coldwater Canyon Ave Suite 209 |
| | North Hollywood, CA 91606 |

2.) Within 24 hours of the funds being placed into the Escrow Account, the Seller shall provide to the Buyer an invoice from Astra Zeneca noting: (i) the total price for the Products; (ii) confirmation that delivery of the Products will be within seven days of receipt of payment; and (iii) the details of the account maintained by Astra Zeneca into which the purchase price for the Products is to be deposited (the "AZ Account") (the "AZ Invoice").

3.) Upon receipt of the AZ Invoice the Buyer shall execute an irrevocable pay order in accordance with the Escrow Agreement and upon receipt of same Paymaster shall release the sum of USD$10,200,000, (Ten Million Two Hundred Thousand United States Dollars) being the full purchase price for the Products, to the AZ Account.

4.) In the event that the AZ Invoice is not provided to the Buyer within the time required and in accordance with the other requirements set forth in Article 4 (2) above, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off deduction or counterclaim and the Seller shall not raise any protest or objection to same.

5.) Seller shall procure the delivery to the Buyer of the dossier from Astra Zeneca in respect of the Products within 24 hours of the payment to Astra Zeneca as above.

6.) Seller shall procure the delivery by Astra Zeneca of the original Bill of Lading for the Products to the Buyer.

7.) Upon its receipt of the original bill of lading for the Products the Buyer shall execute the Irrevocable Pay Order in accordance with the Escrow Agreement and upon receipt of same Paymaster shall release the sum of USD$2,000,000, being the full commission due by the Buyer to the Seller in respect of the Products. Any delay caused by Buyer in receiving the products shall incur a penalty equal to one percent (1%) of the Purchase Price.

The Original Bill of Sale shall be effective in transferring title of the Products to Buyer free and clear of any liens or encumbrances.

## Art. 5   Delivery

The Products shall be delivered to the Buyer by AstraZeneca. All documentation regarding shipping is coming from AstraZeneca manufacturing including the SGS report.

Astra Zeneca will deliver the Products to Barbados via air freight within seven days of receipt of the payment for the Products.

## Art. 6   Inspection

Manufacturer shall supply Buyer with a certified SGS report at the loading of Products in temperature controlled boxes suitable to ship the products airfreight to Barbados.

## Art. 7   Packaging

Manufacturers shall deliver the Products suitably wrapped and packaged for their specificcharacteristics and for the conditions of transport to be used as directed by the

manufacturer and in compliance with the manufacturer's specifications.

## Art. 8   Term and Termination

This Agreement shall be operative from the Effective Date for a single order of Products.

## Art. 9     Limitation of Liability and Warranty

Seller warrants that the Products will  conform to the specifications and descriptionsof features specified above for a period of thirty days starting from the Delivery Date. Seller disclaims all other warranties, whether express or implied, relating to the products. Any claim by Buyer alleging a breach of the above warranty shall be made within three working days after the Delivery Date, in relation to a breach that occurred during the above-referenced warranty period. Buyer's sole remedy for any such breach of warranty shall be replacement Products which conform to the warranty. Any alleged breach of warranty that cannot be duplicated or otherwise objectively confirmed by Seller shall be deemed to not be a breach of warranty. However, if the Buyer agrees on the use of Independent inspection, verification and testing company (SGS, etc.), and the  independent agency, thus engaged, gives a satisfactory report, the Buyer cannot allege any breach of the above warranty and no other objections/breach will be  deemed relevant for the Seller. With the exception of liability relating to intellectual property, Seller shall not be liable to Buyer for any consequential, indirect or special damages that Buyer may suffer in relation to the Products, including, but not limited to, lost profits, lost revenues, lost business chance, loss of use of the Products, and loss of use of other products or facilities. In addition, notwithstanding any other provision herein to the contrary, Seller's aggregate liability arising from transactions for any Product/s under this Agreement shall not exceed the purchase price for any specific purchase order.

## Art. 10  Intellectual Property Infringement

Buyer shall defend and indemnify Seller against any claim or legal action brought by a third party alleging that Buyer's use of the Product infringes the intellectual property or other proprietary rights of the third party.

## Art. 11  Taxes, Duties, Bank Charges, Escrow Fees

Each Party should bear their own taxes, duties and bank charges not otherwise allocated in this Agreement.

## Art. 12    Force Majeure

The parties shall not be in breach of any of its obligation under this Agreement where failure to perform or delay in performing any obligations is due wholly or in part, directly or indirectly, upon the occurrence of: Act of God, act of public enemy, act of governmental bodies or agencies foreign or domestic, sabotage, riot, fire, floods, typhoon, explosions or other catastrophes, epidemics or quarantine restrictions, labour unrest or labour sabotages, accident, freight embargoes, exhaustion of raw

materials, delays occasioned by carriers or delays of a seller of the seller or because any other event beyond the control of the seller, for the period of time occasioned by any such occurrence. A party is not liable under a force majeure event in so far as it proves (a) that the failure was due to an impediment beyond its control, (b) that it could not reasonably be expected to have taken the impediment and its effects upon its ability to perform into account at the time of the conclusion of the contract, and (c)that it could not reasonably have avoided or overcome the impediment or its effects.

## Art. 13   Dispute Resolution

The parties may at any time, without prejudice to any other proceedings, seek to settle any dispute arising out of or in connection with the present Agreement in accordance with the ICC ADR Rules.

## Art. 14 Applicable Law

This Agreement will be governed by the Laws of the State of California without reference to its choice of laws rules.

## Art. 15   Amendment

No amendment or modification to this Agreement shall be effective unless evidenced by a writing executed by both Parties.

## Art. 16   Waiver

The failure at any time of either Party to enforce or require strict compliance with any provision of this Agreement shall in no way be construed as a waiver of suchprovision nor in any way be construed to affect the right of such Party to thereafter enforce that or any other provision of this Agreement.

## Art. 17  Severability

In the event that a court or other tribunal of competent jurisdiction at any time holds that any provision of this Agreement is illegal or unenforceable, such provision shall be severed from this Agreement, and the remainder of this Agreement shall not be affected thereby and shall continue in full force and effect.

## Art. 18 Entire Agreement

This Agreement, including any Exhibits attached hereto, contains the complete and entire understanding of the Parties with respect to the subject matter hereof and supersedes any prior negotiations, agreements, and understandings between the Parties with respect to such subject matter. Each Party specifically acknowledges that the other Party has made no representations or promises (written or oral)inducing execution of this Agreement other than those specifically stated herein.

## Art. 19  No Assignment; Successors and Assigns

Neither Party may assign or grant a security interest in any of its rights or delegate any of its obligations under this Agreement to a third party without the prior written consent of the other Party. Any purported assignment / grant of security interest / delegation made in violation of this provision shall be null and void. Notwithstanding the above, either Party may assign all of its rights and delegate all of its obligations under this Agreement without the consent of the other Party in the case of a merger or the sale of substantially all of the assets or stock of the assigning Party, provided that the assignee assumes all of the assigning Party's obligations under this Agreement. No partial assignment or delegation shall be allowed in such a case.

## Art. 20  No Third-Party Beneficiary

This Agreement is solely for the benefit of the Parties and their successors and assigns, subject to the restrictions on assignment contained herein, and shall not be construed to confer any rights on any third parties.

## Art. 21  Communications

All communications between the Parties relating to this Agreement shall be in the English language.

The Parties have executed this Agreement as of the Effective Date.

| Good Vibrations Entertainment ,LLC | Radical Investments Limited |
|---|---|
| BY: | By: |
| Name:  Alex Moore | Name:   Mark Maloney |
| Title:   CEO | Title:    Director |
| Date:    April 16, 2021 | Date:    April 16, 2021 |

## ESCROW AND PAYMASTER AGREEMENT

**THIS ESCROW AND PAYMASTER AGREEMENT** (this "Agreement") is made and enteredinto on this the 16th day of April 2021, (the "Effective Date") by and between:

**Radical Investments Limited**, a company incorporated under the laws of St. Lucia with its registered office situate at 20 Micoud Street, Castries, St Lucia represented herein by Mark Maloney, the duly authorized Director. (the "**Buyer**"),

**GoodVibrations Entertainment LLC** of 2219 Main St., Santa Monica, CA 90405, United States (EIN # 83-0885082) represented herein by Alex Moore, the duly authorized CEO (the "**Seller**") and

**Davidovich Stein Law Group, LLP represented by Charlie Stein Attorney-at-Law** with California Bar registration number 265361, (the "**Paymaster**" or "**Escrow Agent**").

## RECITALS

**WHEREAS,** Buyer and Seller are parties to a transaction, the terms of which are detailed in the Purchase Agreement between the Buyer and the Seller (the "**Purchase Agreement**") effective as ofApril 16, 2021 whereby the Seller is to arrange the delivery of 1 Million Doses of Astra Zeneca COVID-19 vaccine to the Buyer (the "**Product**").

**WHEREAS,** the Seller desires assurances that funds equal to the purchase price of the Products are available and placed into escrow, and that the commission payable to the Seller is deposited into the escrow account to be released to the Seller upon delivery to the Buyer of the original bill of lading in respect of the Products in accordance with the terms of the Purchase Agreement.

**WHEREAS** the Buyer desires assurances that the funds placed into the escrow account will be released to the Manufacturer of the Products in accordance with the terms of the Purchase Agreement and that the commission due to the Seller will be released only upon delivery of the original bill of lading to the Buyer in respect of the Products shipped by Astra Zeneca to the Buyer within the timeline stated in the Purchase Agreement.

**WHEREAS,** Buyer and Seller have determined it is necessary and advisable to retain the servicesof the Paymaster as both escrow agent and paymaster in its capacity as a neutral third-party to receive and hold the funds for the purchase of the Product from the Buyer and, thereafter as directed by both the Buyer and the Seller disburse the funds to the Seller, reconcile the amount escrowed and complete necessary paperwork with both state and federal agencies.

**WHEREAS,** the Paymaster has agreed to act as the escrow agent and paymaster in accordancewith the terms of this Agreement.

THEREFORE, in consideration of the mutual covenants set forth herein, the parties agree asfollows:

The Recitals are incorporated herein by reference in their entirety and form a part of the

terms and conditions hereof.

1. **Deposit of Escrow Funds.** Seller and Buyer hereby agree that upon execution of the Purchase Agreement, Buyer shall deposit with the Paymaster funds in the amount of Twelve Million two hundred thousand Dollars ($12,200,000.00) which is comprised of Ten Million Two hundred Thousand Dollars (USD$10,200,000.00) being the purchase price for the Products (the "**Product Purchase Price**") and Two Million Dollars (USD$2,000,000.00) being the commission payable to the Seller (the "**Commission**") (together the "**Escrow Funds**") into Paymasters IOLTA Account, the details of which are set forth in Schedule 1 ("**IOLTA Account**" or "**Escrow Account**"). Paymaster agrees to accept the Escrow Funds into the IOLTA Account pursuant to the terms hereof.

2. **Paymaster's Obligations and Fees.**

    a. Paymaster shall hold the Escrow Funds in the IOLTA Account in accordance withthe terms of this Agreement and disburse the Escrow Funds upon certification from Seller and Buyer, as applicable, that they have fulfilled their respective obligations under the Purchase Agreement. The Buyer shall confirm compliance with the foregoing by sending to the Escrow Agent the Irrevocable Pay Order in substantially the form set forth in **Exhibit A** attached hereto in order to release the Product Purchase Price to Astra Zeneca, and upon satisfaction of the terms of the Purchase Agreement the Buyer and Seller shall submit the Irrevocable Pay Order in substantially the form set forth in **Exhibit B** in order to release the Commission to the Seller. In the event that Astra Zeneca does not deliver the Products to the Buyer of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer without any deduction. In the event that AstraZeneca does not issue an invoice in accordance with Article 4 of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off, deduction or counterclaim and the Seller shall not raise any protest or objection to same. The Buyer shall confirm non-compliance by Astra Zeneca by delivering to the Escrow Agent the Irrevocable Pay Order in substantially the form set forth in **Exhibit C.**

    b. Paymaster shall ensure compliance with all applicable federal laws and regulations regarding accepting and distributing the funds, including but not limited to US Treasury Department and Department of Homeland Security.

    c. Upon request, Paymaster shall provide both Buyer and Seller with online access to the Escrow Account via segregated login information to confirm the presence of the Escrow Funds until such time as the fully executed Irrevocable Pay Order has been delivered and Paymaster completes the disbursements detailed therein.

    d. As payment for services and escrow agent and paymaster, Paymaster shall beentitled to fees calculated as follows, as applicable:

        i. For transactions with a cumulative value of up to One Billion Dollars, the fee shall be equal to Two-Tenths of One Percent (0.2%) of the first One Hundred Million Dollars($100,000,000.00) (the "Initial Tranche") for any transaction between the buyer and the Seller. For any transaction amount above the Initial Tranche on any single transaction Paymaster shall be entitled to a fee equal to one-half of one

percent (0.05%) of any amount above the Initial Tranche; or

ii.      For transactions, or series of transactions with the same client as part of atotal purchase plan (i.e., regular or monthly purchases by the same client under the terms of a single purchase agreement), with a cumulative value over One Billion Dollars, the fee shall be equal to one-half of one percent (0.05%) of the total transaction or each transaction subject to such purchase plan.

3.      **Disbursement of Escrow Funds.** Paymaster shall only release Escrow Funds from the IOLTA Account to Astra Zeneca upon receipt of a fully executed Irrevocable Pay Order in the form set forth in Exhibit A and signed by the Buyer and to the Seller upon receipt of a fully executed Irrevocable Pay Order in the form set forth in Exhibit B and signed by the Seller and Buyer.

4.      **Choice of Law.** All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the laws of the State of California without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of  California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of California . All parties to this Agreement hereby unconditionally and irrevocably waive any and all rights to trial by jury in anyaction, suit or proceeding arising out of or related to this Agreement.

5.      **Indemnification.** Buyer and Seller shall each indemnify and hold harmless Paymaster from and against any and all claims arising from the Paymaster's services under this Agreement as directed by any applicable Irrevocable Pay Order duly executed and delivered to the Paymaster in accordance with the terms hereof, save in the event of gross negligence or willful misconduct by the Paymaster. Buyer and Seller shall further indemnify and hold harmless Paymaster from and against any and all claims arising from any breach or default in the performance of any obligation on Buyer and Seller's part to be performed under the terms of this Agreement or any Purchase Agreement, or arising from any negligence of the Buyer and Seller, or any of Buyer and Seller's agents, contractors, or employees, and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon; and in case any action or proceeding be brought against Paymaster by reason of any such claim, Buyer and Seller upon notice from Paymaster shall defend the same at Buyer and Seller's expense by counsel satisfactory to Paymaster. Buyer and Seller, as a material part of the consideration to Paymaster,hereby assumes all risk of damage to property or injury to persons from any transactions contemplated by the Purchase Agreement arising from any cause and Buyer and Seller hereby waives all claims in respect thereof against Paymaster.

6.      **General Terms.** This Agreement may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  No failure or delay on the part of a party to this Agreement in exercising any

power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power preclude any other or further exercise thereof or the exercise of any other right or power hereunder. This Agreement represents to entire Agreement between the parties hereto regarding the services to be provided by the Paymaster.  No modification or waiver of any provision of this Agreement and no consent to any departure by any party to this Agreement shall be effective unless the same shall be in writing and signed by the party against whom such modification, waiver, or consent is being sought to be enforced against, and then such waiver, modification, or consent shall be effective only in the specific instance and for the purpose for which given.

IN WITNESS WHEREOF, the undersigned Buyer, Seller and Paymaster have executed this Agreement as of the Effective Date.

| Seller: Good Vibrations Entertainment LLC | Buyer: Radical Investments Limited |
|---|---|
| Name:  Alex Moore<br>Title: CEO | Name: Mark Maloney<br>Title: Director |
| **Paymaster** | |
| Name:  Charles Z Stein<br>Title: Attorney | |

**EXHIBIT A**
**Irrevocable Pay Order**

This Irrevocable Pay Order (the "**Irrevocable Pay Order**") is executed pursuant to the agreement between the Seller and Buyer (as each is defined below) to effect payment for the below referenced transaction:

Product: Astra Zeneca Covid-19 Vaccine

Product Location:  manufacturer location: Belgium

Quantity: 1 million doses (100,000 vials)

Total value: $10,200,000.00 (Ten Million Two Hundred Thousand Dollars)

Seller Name, address: Good Vibrations Entertainment LLC, 2219 Main St., Santa Monica, CA 90405

Buyer Name, address: Radical Investments Limited, 20 Micoud Street, Castries, St. Lucia

Paymaster: Charles Z. Stein of Davidovich Stein Law Group, LLC (the Paymaster)

All capitalized terms used herein and not otherwise defined, shall have the meaning set forth in the Paymaster Agreement by and among the Buyer, Seller and Paymaster.

The undersigned, an authorized signatory for the Buyer, acknowledges fulfillment of the obligations under the Purchase Agreement pursuant to which payment is now due to Astra Zeneca for the Products.  The Buyer hereby irrevocably and unconditionally confirms and authorizes the release of the Product Purchase Price by Paymaster in the IOLTA Account to Astra Zeneca in accordance with the attached invoice and as directed herein. The pay order directed herein is irrevocably confirmed and payable to Astra Zeneca, without protest delays and/or deductions.

The Paymaster hereby agrees to place this Irrevocable Pay Order into effect with the Bank for the purposes of making the payment directed herein.

The undersigned Buyer representative hereby guarantees to fully cooperate with Paymaster's actions that are necessary to affect the directions set forth herein.

IN WITNESS WHEREOF, the undersigned Buyer has executed this Agreement as of the Effective Date  April 27, 2021

| Buyer: Radical Investments Limited | |
| --- | --- |
| Name: Mark Maloney<br>Title: Director | |

Bank Name:

**Schedule 1 – Davidovich Stein Law LLC Paymaster Account
Information**

| | |
|---|---|
| **Beneficiary Name** | Charlie Stein State Bar of CA Trust Fund Program |
| **Payment Term** | |
| **Paymaster for** | Good Vibrations Entertainment LLC and Radical Investments Limited |
| **Paymaster Name** | Charles Z Stein |
| **Paymaster Passport #** | ███████ |
| **Nationality** | American |
| **Company Name** | Davidovich Stein Law Group LLP |
| **Designation** | |
| **Address** | 6442 Coldwater Canyon Ave Suite 209 North Hollywood, CA 91606 |
| **Telephone Number** | |
| **Email** | |
| **Beneficiary's Name** | Charlie Stein State Bar of CA Trust Fund Program |
| **Bank Details** | Bank of The West |
| **Account #** | ███████ |
| **Bank Address** | ███████ ., Beverly Hills, CA 90212 |
| | |
| **SWIFT** | ███████ |
| **ABA** | ███████ |
| **FOR FURTHER CREDIT TO** | |
| **Bank Officer** | |
| **Signature & Seal** | |

| | |
|---|---|
| **Bank Telephone /Fax** | |
| **Signed Date** | |
| | |
| **Required Message/MEMO** | |

# EXHIBIT 3





| Billed To | Date of Issue | Invoice/ | Amount Due (USD) |
|---|---|---|---|
| GVE LLC. | 04/22/2021 | Purchase | |
| 2219 Main St | | Order Number | |
| Santa Monica, California 90405 | Delivery Date | AZD122-39-76 | |
| United States | 04/30/2021 | EU-421 | |

| Description | Price | Qty | Line Total |
|---|---|---|---|
| Astra Zeneca COVID-19 Vaccine<br>100,000 AZD1222 (Barbados Gov't)<br>Vials (1,000,000 doses) vaccine | | 100000 | |

| | | |
|---|---|---|
| Subtotal | | |
| Tax | | |
| Total | | |
| Amount Paid | | |
| Amount Due (USD) | | |

# EXHIBIT 4



A LIMITED LIABILITY
PARTNERSHIP

6442 COLDWATER CANYON AVE.
SUITE 209
NORTH HOLLYWOOD, CA 91606



WWW.DAVIDOVICHLAW.COM

AUTHOR'S EMAIL:
CHARLIE@DAVIDOVICHLAW.COM

April 26, 2021

RADICAL INVESTMENT LIMITED
ATTN: MR. MARK MALONEY, EXECUTIVE CHAIRMAN
20 MICOUD STREET
CASTRIES
ST LUCIA

**Re:**   ***Good Vibrations – Astra Zeneca***

To Mr. Maloney:

My firm has been retained to assist Good Vibrations Entertainment LLC with acting as an escrow agent and paymaster regarding the distribution of Astra Zeneca products. I can hereby confirm, based on evidence presented to me, that Good Vibrations Entertainment LLC ("GVE") has been involved in the medical supply and distribution business and has negotiated contracts for the right to sell Astra Zeneca products through its distribution channel for governments only.  GVE has presented me with, among other things, contracts, irrevocable purchase orders, and letters of attestation from its distribution contacts supporting its involvement in this field.

This Letter is for the use of this transaction and may not be used for any other transaction for purpose of proof of funds for any other transaction.

Should you have any questions concerning the above, please do not hesitate to contact me.

Very truly yours,

**DAVIDOVICH STEIN LAW GROUP**

CHARLIE Z. STEIN

From: **Olivia Watson** oliviawatson.bgi@gmail.com 📎
Subject: Good Vibrations Entertainment LLC
Date: 26 April 2021 at 10:56
To: jscott@wnj.com

OW

Good morning Mr Scott

I hope you are well.  Further to correspondence over the weekend I would appreciate it if I could have a call with you to discuss your attached opinion and the draft that I would have provided to Alex.  I am available at your convenience and would appreciate it if we could speak as soon as possible given the urgency of the transaction we have entered into.


Kind regards

Olivia Watson
Group Legal and Commercial Director
Maloney Group Inc.
█████████
Skype: paris.bgi

NOTICE: This communication contains information which is confidential. If you are not the intended recipient of this communication, please delete and destroy all copies and notify the sender immediately. Any use of the information in this communication by unauthorised persons is strictly prohibited. If you are the intended recipient of this communication, you must not copy, disclose or distribute this communication without the sender's authority.




Warner Norcross + Judd LLP


April 24, 2021


Re:      **Good Vibrations Entertainment LLC**

To Whom It May Concern:

I have been asked to represent Good Vibrations Entertainment LLC.  In connection with that request, I can hereby confirm, based on documents presented to me, that Good Vibrations Entertainment LLC ("GVE") has been involved in the medical supply and distribution business and has negotiated contracts for the right to promote and sell COVID-19 vaccine products through its distribution channel for governments only.

This letter is for the use of a transaction with GVE and may not be used for any other transaction for purpose of proof of funds for any other transaction.

Sincerely,

James L. Scott

/jls

**James L. Scott | Partner**

E jscott@wnj.com
150 Ottawa Avenue, N.W., Suite 1500
Grand Rapids, MI 49503

# EXHIBIT 5

## ESCROW AND PAYMASTER AGREEMENT

**THIS ESCROW AND PAYMASTER AGREEMENT** (this "Agreement") is made and enteredinto on this the 16th day of April 2021, (the "Effective Date") by and between:

**Radical Investments Limited**, a company incorporated under the laws of St. Lucia with its registered office situate at 20 Micoud Street, Castries, St Lucia represented herein by Mark Maloney, the duly authorized Director. (the "**Buyer**"),

**GoodVibrations Entertainment LLC** of 2219 Main St., Santa Monica, CA 90405, United States (EIN # 83-0885082) represented herein by Alex Moore, the duly authorized CEO (the "**Seller**") and

**Davidovich Stein Law Group, LLP represented by Charlie Stein Attorney-at-Law** with California Bar registration number 265361, (the "**Paymaster**" or "**Escrow Agent**").

## RECITALS

**WHEREAS,** Buyer and Seller are parties to a transaction, the terms of which are detailed in the Purchase Agreement between the Buyer and the Seller (the "**Purchase Agreement**") effective as ofApril 16, 2021 whereby the Seller is to arrange the delivery of 1 Million Doses of Astra Zeneca COVID-19 vaccine to the Buyer (the "**Product**").

**WHEREAS,** the Seller desires assurances that funds equal to the purchase price of the Products are available and placed into escrow, and that the commission payable to the Seller is deposited into the escrow account to be released to the Seller upon delivery to the Buyer of the original bill of lading in respect of the Products in accordance with the terms of the Purchase Agreement.

**WHEREAS** the Buyer desires assurances that the funds placed into the escrow account will be released to the Manufacturer of the Products in accordance with the terms of the Purchase Agreement and that the commission due to the Seller will be released only upon delivery of the original bill of lading to the Buyer in respect of the Products shipped by Astra Zeneca to the Buyer within the timeline stated in the Purchase Agreement.

**WHEREAS,** Buyer and Seller have determined it is necessary and advisable to retain the servicesof the Paymaster as both escrow agent and paymaster in its capacity as a neutral third-party to receive and hold the funds for the purchase of the Product from the Buyer and, thereafter as directed by both the Buyer and the Seller disburse the funds to the Seller, reconcile the amount escrowed and complete necessary paperwork with both state and federal agencies.

**WHEREAS,** the Paymaster has agreed to act as the escrow agent and paymaster in accordancewith the terms of this Agreement.

THEREFORE, in consideration of the mutual covenants set forth herein, the parties agree asfollows:

The Recitals are incorporated herein by reference in their entirety and form a part of the

terms and conditions hereof.

1. **Deposit of Escrow Funds.** Seller and Buyer hereby agree that upon execution of the Purchase Agreement, Buyer shall deposit with the Paymaster funds in the amount of Twelve Million two hundred thousand Dollars ($12,200,000.00) which is comprised of Ten Million Two Hundred Thousand Dollars (USD$10,200,000.00) being the purchase price for the Products (the "**Product Purchase Price**") and Two Million Dollars (USD$2,000,000.00) being the commission payable to the Seller (the "**Commission**") (together the "**Escrow Funds**") into Paymasters IOLTA Account, the details of which are set forth in Schedule 1 ("**IOLTA Account**" or "**Escrow Account**"). Paymaster agrees to accept the Escrow Funds into the IOLTA Account pursuant to the terms hereof.

2. **Paymaster's Obligations and Fees.**

a.   Paymaster shall hold the Escrow Funds in the IOLTA Account in accordance withthe terms of this Agreement and disburse the Escrow Funds upon certification from Seller and Buyer, as applicable, that they have fulfilled their respective obligations under the Purchase Agreement.  The Buyer shall confirm compliance with the foregoing by sending to the Escrow Agent the Irrevocable Pay Order in substantially the form set forth in **Exhibit A** attached hereto in order to release the Product Purchase Price to Astra Zeneca, and upon satisfaction of the terms of the Purchase Agreement the Buyer and Seller shall submit the Irrevocable Pay Order in substantially the form set forth in **Exhibit B** in order to release the Commission to the Seller.  In the event that Astra Zeneca does not deliver the Products to the Buyer of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer without any deduction.  In the event that AstraZeneca does not issue an invoice in accordance with Article 4 of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off, deduction or counterclaim and the Seller shall not raise any protest or objection to same.  The Buyer shall confirm non-compliance by Astra Zeneca by delivering to the Escrow Agent the Irrevocable Pay Order in substantially the form set forth in **Exhibit C.**

b.   Paymaster shall ensure compliance with all applicable federal laws and regulations regarding accepting and distributing the funds, including but not limited to US Treasury Department and Department of Homeland Security.

c.   Upon request, Paymaster shall provide both Buyer and Seller with online access to the Escrow Account via segregated login information to confirm the presence of the Escrow Funds until such time as the fully executed Irrevocable Pay Order has been delivered and Paymaster completes the disbursements detailed therein.

d.   As payment for services and escrow agent and paymaster, Paymaster shall beentitled to fees calculated as follows, as applicable:

i.      For transactions with a cumulative value of up to One Billion Dollars, the fee shall be equal to Two-Tenths of One Percent (0.2%) of the first One Hundred Million Dollars($100,000,000.00) (the "Initial Tranche") for any transaction between the buyer and the Seller. For any transaction amount above the Initial Tranche on any single transaction Paymaster shall be entitled to a fee equal to one-half of one

percent (0.05%) of any amount above the Initial Tranche; or

ii.       For transactions, or series of transactions with the same client as part of atotal purchase plan (i.e., regular or monthly purchases by the same client under the terms of a single purchase agreement), with a cumulative value over One Billion Dollars, the fee shall be equal to one-half of one percent (0.05%) of the total transaction or each transaction subject to such purchase plan.

3.       **Disbursement of Escrow Funds.** Paymaster shall only release Escrow Funds from the IOLTA Account to Astra Zeneca upon receipt of a fully executed Irrevocable Pay Order in the form set forth in Exhibit A and signed by the Buyer and to the Seller upon receipt of a fully executed Irrevocable Pay Order in the form set forth in Exhibit B and signed by the Seller and Buyer.

4.       **Choice of Law.** All issues and questions concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the laws of the State of California without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of  California or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of California . All parties to this Agreement hereby unconditionally and irrevocably waive any and all rights to trial by jury in anyaction, suit or proceeding arising out of or related to this Agreement.

5.       **Indemnification.** Buyer and Seller shall each indemnify and hold harmless Paymaster from and against any and all claims arising from the Paymaster's services under this Agreement as directed by any applicable Irrevocable Pay Order duly executed and delivered to the Paymaster in accordance with the terms hereof, save in the event of gross negligence or willful misconduct by the Paymaster. Buyer and Seller shall further indemnify and hold harmless Paymaster from and against any and all claims arising from any breach or default in the performance of any obligation on Buyer and Seller's part to be performed under the terms of this Agreement or any Purchase Agreement, or arising from any negligence of the Buyer and Seller, or any of Buyer and Seller's agents, contractors, or employees, and from and against all costs, attorney's fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon; and in case any action or proceeding be brought against Paymaster by reason of any such claim, Buyer and Seller upon notice from Paymaster shall defend the same at Buyer and Seller's expense by counsel satisfactory to Paymaster. Buyer and Seller, as a material part of the consideration to Paymaster,hereby assumes all risk of damage to property or injury to persons from any transactions contemplated by the Purchase Agreement arising from any cause and Buyer and Seller hereby waives all claims in respect thereof against Paymaster.

6.       **General Terms.** This Agreement may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  No failure or delay on the part of a party to this Agreement in exercising any

power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power preclude any other or further exercise thereof or the exercise of any other right or power hereunder. This Agreement represents to entire Agreement between the parties hereto regarding the services to be provided by the Paymaster.  No modification or waiver of any provision of this Agreement and no consent to any departure by any party to this Agreement shall be effective unless the same shall be in writing and signed by the party against whom such modification, waiver, or consent is being sought to be enforced against, and then such waiver, modification, or consent shall be effective only in the specific instance and for the purpose for which given.

IN WITNESS WHEREOF, the undersigned Buyer, Seller and Paymaster have executed this Agreement as of the Effective Date.

| Seller: Good Vibrations Entertainment LLC | Buyer: Radical Investments Limited |
|---|---|
| Name:  Alex Moore<br>Title: CEO | Name: Mark Maloney<br>Title: Director |
| **Paymaster** | |
| Name:  Charles Z Stein<br>Title: Attorney | |

**EXHIBIT A**
**Irrevocable Pay Order**

This Irrevocable Pay Order (the "**Irrevocable Pay Order**") is executed pursuant to the agreement between the Seller and Buyer (as each is defined below) to effect payment for the below referenced transaction:

Product: Astra Zeneca Covid-19 Vaccine

Product Location:  manufacturer location: Belgium

Quantity: 1 million doses (100,000 vials)

Total value: $10,200,000.00 (Ten Million Two Hundred Thousand Dollars)

Seller Name, address: Good Vibrations Entertainment LLC, 2219 Main St., Santa Monica, CA 90405

Buyer Name, address: Radical Investments Limited, 20 Micoud Street, Castries, St. Lucia

Paymaster: Charles Z. Stein of Davidovich Stein Law Group, LLC (the Paymaster)

All capitalized terms used herein and not otherwise defined, shall have the meaning set forth in the Paymaster Agreement by and among the Buyer, Seller and Paymaster.

The undersigned, an authorized signatory for the Buyer, acknowledges fulfillment of the obligations under  the Purchase Agreement pursuant to which payment is now due to Astra Zeneca for the Products.  The Buyer hereby irrevocably and unconditionally confirms and authorizes the release of the Product Purchase Price by Paymaster in the IOLTA Account to Astra Zeneca in accordance with the attached invoice and as directed herein. The pay order directed herein is irrevocably confirmed and payable to Astra Zeneca, without protest delays and/or deductions.

The Paymaster hereby agrees to place this Irrevocable Pay Order into effect with the Bank for the purposes of making the payment directed herein.

The undersigned Buyer representative hereby guarantees to fully cooperate with Paymaster's actions that are necessary to affect the directions set forth herein.

IN WITNESS WHEREOF, the undersigned Buyer has executed this Agreement as of the Effective Date April 27, 2021

| Buyer: Radical Investments Limited | |
|---|---|
| Name: Mark Maloney<br>Title: Director | |

| Bank Name | Wells Fargo N.A. |
|---|---|
| Bank Address | 9233 Lincoln Avenue, Lone Tree, CO, 80124, U.S.A |
| Account Name | Prestige Pegasus LLC |
| Account Number: | ███████ |
| Sort Code ABA No.: | ███████ |
| SWIFT Code | WFBIUS6S |

**Schedule 1 – Davidovich Stein Law LLC Paymaster Account
Information**

| | |
|---|---|
| **Beneficiary Name** | Charlie Stein State Bar of CA Trust Fund Program |
| **Payment Term** | |
| **Paymaster for** | Good Vibrations Entertainment LLC and Radical Investments Limited |
| **Paymaster Name** | Charles Z Stein |
| **Paymaster Passport #** | ██████████ |
| **Nationality** | American |
| **Company Name** | Davidovich Stein Law Group LLP |
| **Designation** | |
| **Address** | 6442 Coldwater Canyon Ave Suite 209 North Hollywood, CA 91606 |
| **Telephone Number** | |
| **Email** | |
| **Beneficiary's Name** | Charlie Stein State Bar of CA Trust Fund Program |
| **Bank Details** | Bank of The West |
| **Account #** | ██████████ |
| **Bank Address** | 9401 Wilshire Blvd., Beverly Hills, CA 90212 |
| | |
| **SWIFT** | ██████████ |
| **ABA** | ██████████ |
| **FOR FURTHER CREDIT TO** | |
| **Bank Officer** | |
| **Signature & Seal** | |

| | |
|---|---|
| **Bank Telephone /Fax** | |
| **Signed Date** | |
| | |
| **Required Message/MEMO** | |

# EXHIBIT 6

RADICAL INVESTMENTS LTD.
20 Micoud Street
Castries
St. Lucia

June 25, 2021

Jonathan M Sutton & Associates, Attorneys-at-Law
4157 S Harvard Ave #121
Tulsa
OK 74135
United States of America

Attention: Mr Jonathan M. Sutton, Attorney-at-Law

Dear Sirs                                                           WITHOUT PREJUDICE

<u>Re: Termination of Sale and Purchase Agreement</u>

We refer to recent correspondence in connection with the above matter, and to the following:

1.) Purchase Agreement dated as of April 16, 2021 among Good Vibrations Entertainment LLC (as Seller) and Radical Investments Limited (as Buyer) in respect of the sale and purchase of 1 million doses of the Astra Zeneca Vaccine (the "Vaccines") (the "Purchase Agreement");

2.) Escrow and Paymaster Agreement dated as of April 16, 2021 among Radical Investments Limited, Good Vibrations Entertainment LLC and Davidovich Stein Law Group, LLC (as Paymaster) (the "Paymaster Agreement"); and

3.) Subsequent correspondence to parties, some of which you were copied on.

Pursuant to the terms of the Purchase Agreement, your client was to deliver or procure delivery of the Vaccines to the Purchaser by no later than May 7, 2021. Despite representing to the contrary, from the inception your client never had any authorisation from Astra Zeneca to purchase the Vaccines. The Buyer has not received the Vaccines to date.

On or around May 7, 2021 your client introduced the Buyer to Moniladai Coley of Prestige Brands to perform your client's obligations under the Purchase Agreement. Contrary to Article 19 of the Purchase Agreement, your client represented that Ms Coley and Prestige Brands had the capacity to deliver the Vaccines and would do so within a matter of days. To date we have been presented with a series of delays, excuses, misleading and dishonest information all of which your client knew or ought reasonably to have known was untrue and misleading.

In addition to the foregoing, and as you are aware, we have been put on notice by Charles Stein, the Paymaster pursuant to the Paymaster Agreement that funds placed into the IOLTA Account under the terms of the Paymaster Agreement have been paid out as follows at the sole direction of your client, without the authorisation or knowledge of the Buyer and contrary to the terms of the Purchase Agreement and Paymaster Agreement:

- April 27, 2021 - USD$2 million to Prestige Pegasus, LLC;
- April 27, 2021 – USD$2.2 million to Good Vibrations Entertainment LLC;
- April 27, 2021 – USD$40,000 to Charles Stein;
- May 3, 2021 – USD$2 million to Good Vibrations Entertainment LLC;
- May 3, 2021 – USD$ 485,000 to RDS.

Your client is in breach of the terms of the Purchase Agreement and the Paymaster Agreement. At this time neither the Government of Barbados or the Buyer have any confidence in the ability or capacity of your

client or Prestige Brands to deliver under the terms of the Purchase Agreement, and furthermore have serious concerns as to the clear evidence of fraud on the part of your client and Prestige in this transaction.

Accordingly, we are hereby giving formal notice of our intention to terminate the Purchase Agreement.

We are, however, based on our earlier discussion, willing to proceed with a new transaction on the following terms:

1.) The Buyer will enter into a sale and purchase agreement directly with Serum in order to secure the delivery of the vaccines to Barbados;
2.) The Buyer will enter into a commission agreement, to be paid on delivery of the Vaccines to Barbados;
3.) The Buyer and your client will enter into an escrow agreement appointing your firm as the paymaster and escrow agent of an escrow account to be managed by your firm, setting out the terms on which payments may be made out of this account;
4.) Your client shall ensure the immediate return of all sums paid out of the IOLTA Account by Charles Stein to Alex Moore, Good Vibrations Entertainment LLC, Prestige Brands, Charles Stein and RDS and direct that these sums be paid into the escrow account to be managed and controlled by your firm as per 3.) above.

We also ask that you note that Serum has advised that the letter of authorization issued by the Ministry of Health and Wellness on behalf of the Government of Barbados authorizes the Buyer to transact on its behalf and not Prestige.  Accordingly unless the Government of Barbados were to issue a new letter authorizing Prestige on its behalf, Prestige would not be able to conclude this transaction.  For the reasons stated herein and otherwise known to the parties, such an authorization would not be issued in favour of Prestige.

We ask that you take instructions from your client on the foregoing and advise whether the proposed new transaction may be documented and executed so as to ensure delivery of the vaccines to Barbados and permit your client to earn a commission for the transaction without the threat of civil and criminal liability for his actions in this matter (subject to full compliance with the foregoing, and in particular the repayment of all monies as per point 4).

We look forward to hearing from you as a matter of urgency and to working with you to get the vaccines delivered under the terms of the new agreements.

Yours sincerely
**Radical Investments Limited**
Per:

Mark Maloney
Director

# EXHIBIT 7

[09/04/2021, 17:56:36] Barbados Attorneys Vaccin: Messages and calls are end-to-end encrypted. No one outside of this chat, not even WhatsApp, can read or listen to them.

[09/04/2021, 17:56:36] Alex Moore created group "Barbados Attorneys Vaccin"

[09/04/2021, 17:56:37] Alex Moore added you

[09/04/2021, 17:57:14] Alex Moore: Hello Charlie meet Olivia she is attorney for Mark purchaser of Vaccines 🚀 AstraZeneca

[09/04/2021, 18:11:31] Olivia: Good evening Gentlemen and thank you Alex

[09/04/2021, 19:32:17] Charlie Stein: Pleasure to meet you Olivia.

[09/04/2021, 21:16:24] Alex Moore: 1.) Certificate of registration/incorporation for Davidovich Stein Law Group LLC;

2.) Confirmation that Davidovich Stein Law Group LLC is licensed as a law firm in the State of California;

3.) Current practicing certificate or license for Charlie Stein, Attorney-at-Law;

4.) Bank statement confirming the details of the bank account noted in the Escrow and Paymaster Agreement (the balance etc can be redacted);

5.) Confirmation from an authorised representative of Bank of West that the account to be used for the purposes of the Escrow and Paymaster Agreement is an escrow account, and that funds deposited by Radical Investments will be disbursed in accordance with the Escrow Agreement only;

6.) Incorporation documents for Good Vibrations Entertainment LLC;

7.) Notice of directors showing that Alex Moore is a director for Good Vibrations Entertainment LLC;

8.) Certified copy of photo ID and proof of address for Alex Moore;

9.) Confirmation from Astra Zeneca that Good Vibrations Entertainment LLC is authorised to procure and sell the Astra Zeneca Covid 19 vaccine.


I also have comments on the 2 agreements, if these could be sent to me in Word I can note my comments and send back.


Thank you


Kind regards


Olivia Watson

Group Legal and Commercial

Tel: +1 (246) 826 1222

[10/04/2021, 20:29:15] Alex Moore: Hello I'm still waiting in updates

[11/04/2021, 15:26:16] Charlie Stein: Let me first try to address the first 3 points. Law Firms in California do not need to be registered as Law Firms in order to operate. We are not an LLC, but an LLP, which is a designation used for professional organizations such as law firms. While we did register our firm in order to deal with tax functions, the trust account at Bank of the West is managed by me individually in order to ensure that our client's funds for tasks that we bill hours to and those in which we act as a paymaster/escrow agent for are completely separated. Given the issues that arose in the early stages of the pandemic with fraud issues, my partner and I felt it was important to separate these parts of our business to avoid commingling of funds. Therefore, I am not sure what could be provided for #1 and #2. As for #3, I recommend that my identity be verified from the State of California's Bar website (www.calbar.ca.gov) and enter my name (Charles Stein) for verification that I am a lawyer in good standing in California. I am able to obtain a Certificate of Good Standing, but given delays within the State, that can take weeks to get back. I can send a copy of my CA State Bar Card if that will be sufficient.

[11/04/2021, 15:29:14] Charlie Stein: As for #4 and #5, California attorneys do not maintain escrow accounts in the general sense, but rather IOLTA  (Interest on Lawyer Trust Account) accounts. Escrow accounts are managed by escrow companies. IOLTA accounts are overseen by the State Bar and are used for attorneys to take funds that belong to their clients and distribute them as directed by their clients. Therefore, while I could give you a bank statement (which would be heavily redacted since it contains funds belonging to my clients), there is no letter that could be provided by the bank that would address #5.

[11/04/2021, 15:30:15] Alex Moore: Thank you Charlie

[12/04/2021, 10:08:02] Olivia: Good morning Charles, please can you confirm your registration number for the purposes of the California Bar search.  Thank you

[12/04/2021, 10:08:24] Charlie Stein: Sure. It is █████

[12/04/2021, 10:08:36] Olivia: Thank you.

[12/04/2021, 10:09:21] Alex Moore: We Need to be prepared to transact today Olivia we are under time restrictions

[12/04/2021, 10:10:31] Olivia: Hi Alex, understood, if I could please see one form of photo ID for each of you I can sign off.  Also did you want to speak on any of the changes to the agreements I sent through?

[12/04/2021, 10:13:24] Charlie Stein: <attached: 00000017-PHOTO-2021-04-12-10-13-24.jpg>

[12/04/2021, 10:13:26] Alex Moore: Send to me I have not received place here

[12/04/2021, 10:14:57] Olivia: Thank you Charlie

[12/04/2021, 10:17:04] Olivia: Paymaster Agreement RIL Comments.docx • 7 pages <attached: 00000020-Paymaster Agreement RIL Comments.docx>

[12/04/2021, 10:17:17] Olivia: Radical Purchase Agreement RIL Comments April 9.docx • 14 pages <attached: 00000021-Radical Purchase Agreement RIL Comments April 9.docx>

[12/04/2021, 15:05:21] Olivia: Hi Charlie, would it be possible to get a photo of the deposit slip for the account, I understand this will verify the account name and information but will not detail any confidential information such as deposits made or current balance.  Thank you

[12/04/2021, 15:34:05] Charlie Stein: I don't have deposit slips for the account. In fact, the only way I ever access it is by utilizing their online portal, which requires an extra service to access (this is not a standard business account that has normal access).

[12/04/2021, 15:34:13] Charlie Stein: ACCOUNT STATEMENT_Redact.pdf • 2 pages <attached: 00000024-ACCOUNT STATEMENT_Redact.pdf>

[12/04/2021, 15:34:19] Charlie Stein: Hopefully, this will be sufficient instead

[12/04/2021, 16:03:55] Olivia: Thank you Charlie

[12/04/2021, 17:00:57] Alex Moore: <attached: 00000027-PHOTO-2021-04-12-17-00-57.jpg>

[12/04/2021, 17:01:41] Olivia: Thank you

[13/04/2021, 12:54:56] Alex Moore: Radical Purchase Agreement RIL Comments April 9 copy.docx • 14 pages <attached: 00000029-Radical Purchase Agreement RIL Comments April 9 copy.docx>

[13/04/2021, 12:54:56] Alex Moore: Paymaster Agreement RIL Comments copy.docx • 7 pages <attached: 00000030-Paymaster Agreement RIL Comments copy.docx>

[13/04/2021, 12:56:46] Alex Moore: Also, please send a copy of your passport for diligence and that you are a license attorney in Barbados as well as UK please.

[21/04/2021, 19:50:05] Olivia: Radical Investment Transfer.pdf • 1 page <attached: 00000032-Radical Investment Transfer.pdf>

[21/04/2021, 19:50:57] Olivia: Good evening Charlie, I hope you are well.  Please can you confirm receipt of the funds into the escrow account.  Above is the wire transfer in case your bank requests it to trace funds.  Thank you

[21/04/2021, 19:52:52] Charlie Stein: Thanks Olivia. I received the funds. I never received Exhibit A from the Paymaster/Escrow Agreement signed by the buyer. I am not authorized to distribute any funds to keep things moving forward until I get that form so that I can make the Astra Zeneca distributor. Can you please send that to me as well?

[21/04/2021, 19:55:14] Olivia: Hi Charlie thank you.  I believe Alex is sharing the invoice from AZ with us shortly and as soon as we have sight of that we will send through the signed Exhibit A for the release of funds to AZ.  Thank you

[22/04/2021, 12:12:13] Alex Moore: 1th Freighter BOM_CCS.xlsx • 4 sheets <attached: 00000036-1th Freighter BOM_CCS.xlsx>

[22/04/2021, 12:14:51] Alex Moore: The redacted invoice has been provided the deliveries and we have executed everything under our contract. The Spread sheet is given every 2 months on deliveries of AstraZeneca as everything is confidential and they are not permitted to call my supplier or manufacturer with confidential information provided

[26/04/2021, 15:53:06] Olivia: Hello Gentlemen can we get on a call to settle this please.  We need to close out today.  Thank you

[26/04/2021, 16:46:50] Alex Moore: Need 5 minutes

[26/04/2021, 16:48:44] Olivia: Ok

[26/04/2021, 20:06:53] Charlie Stein: Olivia, my understanding is that you have been sent the propietary information from AZ that is only sent out to their suppliers that Alex received from his supplier, who is the allocation holder with access to the vaccine. I believe he has also supplied some shipping information. He engaged his secondary supplier in order to see if there is any additional information that they can provide that can go above and beyond what the first one is willing to supply, but what has become so typical in this industry is a level of secrecy with respect to what people consider their proprietary information (even if that goes beyond what you and I as attorneys would feel is necessary to protect). I have expressed to Alex your very legitimate concerns given the amount of money at stake and he is trying to see if he can obtain more, but he has exhausted one source who has shut down any further attempts until the transaction is moving forward, and I fear that if he continues to push with his secondary source, the delay may torpedo the transaction. I am not trying to push you unnecessarily, but at this point, it is starting to feel like time is of the essence to get this deal done.

[26/04/2021, 20:27:25] Olivia: Hi Charlie thank you for the above.  We have seen evidence that the shipping arrangements have been made from  Dubai to Barbados but the vaccines are coming from Belgium so this needs to be clarified .

There is nothing on the documents saying anything relating to AZ proprietary information.


What would assist is if you could confirm that based on your review of the contracts the entity to which the funds are to be released has: 1.) a contract with GVE as its sub distributor and 2.) the right to procure the vaccines for sub distributors.  This would give us the comfort to move forwards without seeing the underlying contracts of even knowing the name of the entity we are paying.


Do I take it from the above that we will not receive details of the account the funds are to be paid into? We have been told that this information is coming for several days now so I had expected that we would have this.


I agree entirely these delays are putting the whole transaction at risk and as an attorney can only advise my clients on what is legal and proper according to the contracts signed.  The failure to provide what was contractually agreed is the root of the problem here and I trust you will be able to give us some

comfort so we can conclude this as the last thing we all want is to send money out and not be able to get what we have paid for .

[26/04/2021, 21:46:04] Charlie Stein: I have the bank account information and I spoke to the CEO of Protecti.co and Prestige and confirmed their relationship, plus been given the account information at Wells Fargo that I can provide to you. I can't get you the answers to the other two points, but I can give you the account info for where the money is to be transferred.

[26/04/2021, 21:47:45] Charlie Stein: The CEO was having serious medical treatment which was causing some of the delays in providing that information, but when I explained what you were asking for, she sent me that info to send along

[27/04/2021, 05:39:20] Olivia: Hi Charlie good morning.  Can you clarify what relationship you are able to confirm, is this the distribution relationship? Thank you re the account information and if we can get this ASAP I would appreciate it

[27/04/2021, 09:06:04] Charlie Stein: Let me clarify. I spoke with the CEO who has confirmed that her company has the direct relationship with AZ and can fulfill the order. As I previously stated when we spoke on the phone, I am not opening myself up to personal liability with respect to confirming aspects of this deal. She did provide me with the account info, but I am only authorized to send them contingent on a confirmation from you that upon it being sent, you will be sending back the signed exhibit so that I can distribute the funds. As I explained to her and she fully understood, I have no desire to keep these funds in my trust account any longer than I have to so I asked her to provide that info to help me expedite the ability to finally get that money out of my account. As I am sure you understand, no lawyer wants to be responsible for monies any longer than absolutely necessary.

[27/04/2021, 09:44:18] Olivia: Hi Charlie I understand.  We are trying to accommodate this eternally moving goal post.  Can you get written confirmation from the lady you spoke to that she has the contractual capacity to fulfil orders for vaccines placed by Good Vibrations Entertainment, this together with the account information would get us over the line this morning

[27/04/2021, 10:13:22] Olivia: Hi Charlie is this possible?

[27/04/2021, 11:12:30] Charlie Stein: She wouldn't be sending her account information to me if she couldn't fulfill the order. Are you looking for her to send you an email that she can fill the order or send it to me and for me to confirm that I received the email?

[27/04/2021, 11:31:44] Olivia: If she could send a letter that would be very helpful confirming that she has accepted an order for 1,000,000 doses for supply to the order of Good Vibrations

[27/04/2021, 11:33:42] Charlie Stein: I will see if that is possible, but I can't guarantee that and I think I was told that goes beyond the purchase agreement (and definitely beyond my scope of involvement in this agreement)

[27/04/2021, 11:44:54] Olivia: I think this is what we need to move forwards, this is a simple confirmation from the supplier that they can perform

[27/04/2021, 12:09:57] Charlie Stein: She sent me the email. I can forward it to you or print it and drop the file here. Do you have a preference?

[27/04/2021, 12:10:36] Olivia: Can you issue the letter confirming your receipt and discussion and let me see how I get this over the line

[27/04/2021, 12:23:43] Charlie Stein: No, I am not issuing a letter stating that. You are asking me to put myself in this transaction which I have now expressed multiple times that I will not do. I am not taking on liability. I am confirming to you that I got an email stating that the order is confirmed and being processed and once payment is made, she will be providing Alex with realistic timeline updates for delivery. I am also telling you that I got the account information for where the payment is set to go, which is an account at Wells Fargo. At this point, I have run my course as a paymaster and escrow agent and probably gone slightly beyond that to help you obtain the extra assurances you are looking for. There is nothing left I can provide.

[27/04/2021, 12:26:00] Olivia: Please provide the account information

[27/04/2021, 12:28:45] Charlie Stein: Bank Name: Wells Fargo N.A.

Street Address: 9233 Lincoln Avenue

City: Lone Tree

State: CO

Country: United States of America

Postal Code: 80124

Account Name: Prestige Pegasus LLC

Account Number: ███████

Sort Code ABA No.: 1███████

SWIFT Code: ██████

[27/04/2021, 12:34:36] Olivia: Thank you Charlie please can you confirm the name of the lady that you spoke with

[27/04/2021, 12:34:51] Olivia: I am arranging to get Exhibit A Signed now

[27/04/2021, 12:38:56] Charlie Stein: I wrote it down in my office, but I won't be there until much later today and I don't want to hold things up. Please send over the form and I will make sure to send it over to you as soon as I get back to my desk.

[27/04/2021, 12:40:44] Olivia: Alex lease can you confirm the ladies name ASAP

[27/04/2021, 12:56:10] Alex Moore: I gave you here name already!!

[27/04/2021, 12:57:02] Olivia: I don't have it and it is not in any messages, please send it

[27/04/2021, 13:18:52] Alex Moore: Olivia I just spoke with Mark he said he signed and you sent release Charlie doesn't have it yet?

[27/04/2021, 13:51:14] Alex Moore: ????

[27/04/2021, 13:57:04] Olivia: Hi Charlie please see attached the signed escrow with Exhibit A executed based on the above exchange of communications Please confirm receipt.


Hi Alex, please send by cob today the following:


1.) the AstraZeneca Dossier for the 1,000,000 doses of the COVID 19 vaccine confirming the batch numbers of same;

2.) confirm that the vaccines will be delivered to Barbados as agreed on Friday April 30,2021 as per the delivery confirmation from DGS, with an ETA in Barbados of 19.25

[27/04/2021, 13:58:00] Olivia: Signed ESCROW AND PAYMASTER AGREEMENT and Exhibt A.pdf • 7 pages <attached: 00000067-Signed ESCROW AND PAYMASTER AGREEMENT and Exhibt A.pdf>

[27/04/2021, 14:02:09] Charlie Stein: Thank you

[27/04/2021, 18:05:55] Olivia: Hi Charlie please can you send me a copy of the wire confirmation. Thank you

[27/04/2021, 18:11:56] Charlie Stein: There is no wire confirmation like you would obtain from a bank as I process it from my online access. It has a confirmation page after I issue a wire, but I don't print those pages out unless I need them for my own purposes (which I didn't) and for safety reasons, it automatically times me out of the page to log me out.

[27/04/2021, 18:45:48] Olivia: Hi Charlie we need to see some sort of confirmation that the funds were sent to the account

[27/04/2021, 18:57:10] Charlie Stein: Can you please confirm where that obligation is set forth in the paymaster/escrow agreement or in the purchase agreement? While I have done more than my obligation to help you move this forward, I will be strictly complying with the terms of the agreement moving forward. I also just noticed that the escrow form that you sent over this morning added in an account information at the bottom of Exhibit A, but that has no bearing on my obligations in the Agreement.

[27/04/2021, 19:00:50] Olivia: Charlie as a paymaster you would absolutely expect we could request confirmation that you have  performed the obligation

[27/04/2021, 19:10:48] Charlie Stein: The Agreement that was sent to me in final form to sign off to act as a Paymaster has considerable problems, including but not limited to the terms of the payment arrangements. It lays out Good Vibrations Entertainment LLC as the Seller, but yet requires payment to AstraZeneca, which everyone seems to agree payment is not being made directly to, because no one makes payment directly to them. You further attempted to make changes to an agreement and the forms after the final versions were completed, including drafts of Exhibit A, which should of solely required a signature. Mr. Moore provided the information for where payments needed to be sent per the contact at Prestige and I issued the necessary wire for the goods. There is an additional amount of money still being held for the payment for the cargo transfer, which is separate and apart from the

purchase of the goods as that payment is supposed to be made after the confirmation for when the shipment is ready

[27/04/2021, 20:18:18] Olivia: Charlie, no changes were made to the agreement or Exhibit A save to provide the account information which was always to be provided in order to direct payment to that account.  You provided the account information to me and I included this in Exhibit A. You further confirmed you made payment to Prestige.  The only account it could have been paid to was this account. Please confirm this is correct .  We have only signed off on funds to be sent to Prestige as per Exhibit A. If a further wire is required to pay for the freight we need to provide an authorisation for that wire and we need the account information to authorise this wire.  All we are asking for is confirmation that the funds were paid out as instructed by us.

[27/04/2021, 20:20:12] Charlie Stein: Actually, your requests have now exceeded the scope of my role as a paymaster. Please address all further requests to Mr. Moore. I have nothing left to add at this point

[27/04/2021, 20:22:10] Alex Moore: Olivia funds have been sent out to Prestige. We on on track and schedule. Please allow us to do our job so we can meet our deadlines. Confirmed! We are speaking with AstraZeneca and executing

[27/04/2021, 20:23:19] Alex Moore: I will be providing details tomorrow. I'm signing off for Personal reasons tonight and we be back live in 5 hours.

Thank you

# EXHIBIT 8

FILED: KINGS COUNTY CLERK 11/25/2020 01:29 PM

NYSCEF DOC. NO. 15

Case 9:21-cv-81761-AMC   Document 7-1   Entered on FLSD Docket 09/17/2021   Page 46 of 110

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------------X

DIAMOND HOOK MEDIA, LLC,

                      Plaintiff,

     -against-

PRESTIGE BRANDS, INC. and
MONILADAE COLEY A/K/A MONILIDAI COLEY,
INDIVIDUALLY AND T/A PRESTIGE BRANDS, INC.,

                    Defendant.

-------------------------------------------------------------------------X

Index No. 508570/2020

__STATEMENT FOR JUDGMENT__

An action against a corporation and a
natural person based upon a non-payment
of a contractual obligation.

Amount claimed in Complaint                  $     335,000.00
    **(Attorney's fees and second cause of action waived)**

      Interest from November 4, 2020         $          83.75

                          Total   $     335,083.75

| | | |
|---|---|---|
| Costs by Statute | $ | 200.00 |
| Secretary of State Fee | $ | 00.00 |
| Service of Summons & Complaint | $ | 70.00 |
| Affidavits | $ | 0.00 |
| Transcripts and Docketing | $ | 0.00 |
| Clerk's fees entering Judgment | $ | 0.00 |
| Postage | $ | 0.00 |
| Sheriff's Fees on Execution | $ | 40.00 |
| Motion Fee | $ | 45.00 |
| Satisfaction Piece | $ | 0.00 |
| Taxing Costs | $ | 0.00 |
| Fee for Index Number | $ | 210.00 |

Costs taxed at $      565.00

*Nancy T. Sunshine* Clerk

**FILED**

2 2020 NOV 25 PM 1:29

**KINGS COUNTY CLERK**

FEE _____

                          Total   $     335,648.75

**STATE OF NEW YORK, COUNTY OF NEW YORK** ss.:

      The undersigned, attorney at law of the State of New York, the attorney of record for the plaintiff
in the above-entitled action, states that the disbursements above-specified have been or will necessarily

Case 9:21-cv-81761-AMC   Document 7-1   Entered on FLSD Docket 09/17/2021   Page 47 of 110

be made or incurred therein and are reasonable in amount that the time of the defendants to appear and answer herein has expired and that said defendants have not appeared and answered herein.

The undersigned affirms this statement to be true under the penalties of perjury.

Dated: New York, New York
November 25, 2020

_____
Rhett A. Frimet, Esq.
Rhett A. Frimet, P.C.
Attorney for Plaintiff
10 East 40th Street, 46th Floor
New York, New York 10016
Tel.: (212) 290-2247

**JUDGMENT** entered on Nov. 25 th 2020 , 2020.
Service of the Summons and Complaint in this action on the Defendant herein having been served on June 16, 2020

**NOW, ON MOTION OF RHETT A. FRIMET, P.C.**, attorney for the plaintiff, it is,

**ADJUDGED** that DIAMOND HOOK MEDIA, LLC, plaintiff, residing at 70 Maspeth Avenue, Suite 1, Brooklyn, New York 11211, do recover of PRESTIGE BRANDS, INC., defendant, residing at 99 Wall Street, Suite 701, New York, New York 10005, and MONILADAE COLEY A/K/A MONILIDAI COLEY, INDIVIDUALLY AND T/A PRESTIGE BRANDS, INC., **jointly and severally**, in the sum of $ 335,083.75, the amount claimed with interest from November 4, 2020 and waiver of attorney's fees, with $ 565.00 costs and disbursements, amounting in all to the sum of $ 335,648.75, and that plaintiff have execution therefor.

_____ Clerk

**FILED**

2 2020 NOV 25 PM 1:29

**KINGS COUNTY CLERK**

**FEE** _____

# EXHIBIT 9

RADICAL INVESTMENTS LTD.
20 Micoud Street
Castries
St. Lucia

May 28, 2021

Davidovich Stein Law Group
6442 Coldwater Canyon Avenue
Suite 209
North Hollywood
California 91606

Attention: Mr Charles Z. Stein, Attorney-at-Law

Dear Sirs                                                                                      WITHOUT PREJUDICE

Re: Non-Performance and Breach of Fiduciary Duties

We refer to the Escrow and Paymaster Agreement dated as of April 16, 2021 among Radical Investments Limited, Good Vibrations Entertainment LLC and Davidovich Stein Law Group, LLC (as Paymaster) (the "Paymaster Agreement"). We also refer to correspondence, including your email of May 28, 2021 in connection with the Paymaster Agreement and the non-performance of Good Vibrations Entertainment LLC under the Purchase Agreement dated as of April 16, 2021 among Good Vibrations Entertainment LLC and Radical Investments Limited (as Buyer) (the "Purchase Agreement").

We have consulted with Prof. Pertnoy, and the below represents our response to the claims as stated in your email of May 28, 2021:

Exhibit A to the Paymaster Agreement provides the following instruction for payment by the Paymaster:

> *"The Buyer hereby irrevocably and unconditionally confirms and authorizes the release of the Product Purchase Price by Paymaster in the IOLTA Account to Astra Zeneca in accordance with the attached invoice and as directed herein. The pay order directed herein is irrevocably confirmed and payable to Astra Zeneca, without protest delays and/or deductions."*

Accordingly, in the absence of an invoice issued by Astra Zeneca and in the absence of an account in the name of Astra Zeneca into which payment could be made, any payment made by the Paymaster was in contravention of the express terms of the Paymaster Agreement and Exhibit C.

In the lead up to the execution of Exhibit A to the Paymaster by the Buyer, the Paymaster made a series of statements to the Buyer and Buyer's counsel, including issuing a letter dated April 26, 2021, confirmed, among other things, that it had seen evidence which confirmed Good Vibrations Entertainment LLC has been involved in the medical supply and distribution business and has negotiated contracts for the right to sell Astra Zeneca products. The letter was expressed to be issued for the purpose of the present transaction. The Paymaster further, via a series of WhatsApp messages on April 27, 2021, sought to reassure the Buyer of the veracity of the transaction and the capacity of the Seller to perform under the terms of the Purchase Agreement. The Paymaster supplied details of the bank account held at Wells Fargo N.A in the name of Prestige Pegasus LLC and further confirmed the following:

> *"I am confirming to you that I got an email stating that the order is confirmed and being processed and once payment is made, she will be providing Alex with realistic timeline updates for delivery. I am also telling you that I got the account information for where the payment is set to go, which is an account at Wells Fargo."*

The account details provided by the Paymaster were included on the face of Exhibit A, which was signed and delivered on April 27, 2021 to facilitate payment to the specified account and the Exhibit was signed in reliance on the express statements made by the Paymaster to the Buyer and Buyer's counsel.

Upon delivery of Exhibit A to the Paymaster, the Paymaster was only authorized to do two things:

1.) Pay Astra Zeneca USD$10,200,000 in accordance with an invoice attached to Exhibit A; or
2.) Pay Prestige Pegasus LLC USD$10,200,000 using the Wells Fargo account details provided and noted on Exhibit A.

The Paymaster proceeded to make a payment out of the IOLTA account to a third account for a different sum, which was not authorised, and such payment constitutes a breach of the Paymaster Agreement and the fiduciary duties of the Paymaster to the Buyer.

Article 2 of the Paymaster Agreement contains two default provisions:

1.) In the event that Astra Zeneca does not deliver the Products to the Buyer of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer without any deduction.

2.) In the event that AstraZeneca does not issue an invoice in accordance with Article 4 of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off, deduction or counterclaim and the Seller shall not raise any protest or objection to same.

The obligation of the Paymaster to return the funds to the Buyer in the event that Astra Zeneca fails to deliver the Products to the Buyer is absolute.

At the time of payment, the Paymaster was aware that Astra Zeneca did not produce an invoice despite such non-compliance the Paymaster continued to reassure the Buyer of the veracity of the transaction and in reliance on such assurances from the Paymaster the Buyer authorised payment to Prestige Pegasus LLC, to its account with Wells Fargo, the details of which account were supplied to the Buyer by the Paymaster.

Furthermore, as a fiduciary and in the exercise of its due diligence, the Paymaster should have reviewed the terms of the Purchase Agreement, which was referred to in the Paymaster Agreement and which was executed simultaneously with the Paymaster Agreement on April 16, 2021. The Paymaster in fact only received and reviewed the Purchase Agreement one month later, when it was produced to the Paymaster by Prof. Pertnoy. Any possible conflict should have been raised by the Paymaster prior to executing the Paymaster Agreement and prior to disbursing the funds from the IOLTA Account.

The Seller has failed to satisfy its obligations under the Purchase Agreement in that it has failed to produce and invoice from Astra Zeneca, the dossier from Astra Zeneca in respect of the Products and has further

failed to deliver or procure delivery of the Products within the time required under the Purchase Agreement.

The Seller has also falsely represented that the Seller and/or Prestige and/or Astra Zeneca have had discussions with the Prime Minister of Barbados and Permanent Secretary Alies Jordan regarding delivery of the Products. We have been advised by both individuals that no such discussions have taken place, and this is therefore deliberate falsification and misrepresentation by the principal of Good Vibrations Entertainment LLC.

Further, the Buyer has neither taken or failed to take any action which would result in a delay in the delivery of the Products, which under the terms of the Purchase Agreement were to be delivered to the Buyer no later than May 4, 2021 and paid a premium to Seller in order to expedite the delivery of the Products.

For these and other reasons we refute the claims made in your email of May 28, 2021 in their entirety.

In summation, in despite repeated requests, the Buyer has not received any documentation verifying the veracity of the transaction, has not secured any proof from the Seller concerning delivery or the Products and now does not have his USD$12,200,000 returned.

At this time, in order to avoid us escalating this matter the preferred option is for you to ensure that Good Vibrations Entertainment LLC provides satisfactory confirmation, that we can verify in terms of the veracity of same, as it relates to the delivery of the Products, or the funds deposited by Radical Investments Limited be returned to Radical Investments Limited forthwith.

We look forward to hearing from you as a matter of urgency.

Yours sincerely
**Radical Investments Limited**
Per:

Olivia Watson
Group Legal and Commercial Director

**EXHIBIT C**
**Irrevocable Pay Order**

This Irrevocable Pay Order (the "**Irrevocable Pay Order**") is executed pursuant to the agreement between the Seller and Buyer (as each is defined below) to effect payment for the below referenced transaction:

Product: Astra Zeneca Covid-19 Vaccine

Product Location:  manufacturer location: Belgium

Quantity: 1 million doses (100,000 vials)

Total value: $12,200,000.00 (Twelve Million Two Hundred Thousand Dollars)

Seller Name, address: Good Vibrations Entertainment LLC, 2219 Main St., Santa Monica, CA 90405

Buyer Name, address: Radical Investments Limited, 20 Micoud Street, Castries, St. Lucia

Paymaster: Charles Z. Stein of Davidovich Stein Law Group, LLC (the Paymaster)

All capitalized terms used herein and not otherwise defined, shall have the meaning set forth in the Paymaster Agreement by and among the Buyer, Seller and Paymaster.

The undersigned, an authorized signatory for the Buyer, confirms the non-performance of the obligations of Astra Zeneca under the Purchase Agreement.  The Buyer hereby irrevocably and unconditionally confirms and authorizes the return and payment of the Escrow Funds by Paymaster in the IOLTA Account to the Buyer's account noted in the attached confirmation.  The pay order directed herein is irrevocably confirmed, without protest delays and/or deductions.

The Paymaster hereby agrees to place this Irrevocable Pay Order into effect with the Bank for the purposes of making the payment directed herein.

The undersigned Buyer representative hereby guarantees to fully cooperate with Paymaster's actions that are necessary to affect the directions set forth herein.

IN WITNESS WHEREOF, the undersigned Buyer has executed this Agreement as of the Effective Date

| Buyer: Radical Investments Limited | |
| --- | --- |
| Name: Mark Maloney<br>Title: Director | |

# RADICAL INVESTMENTS LTD.
20 Micoud Street, Castries, St. Lucia

# **Confirmation**

May 27, 2021

Davidovich Stein Law Group
6442 Coldwater Canyon Avenue
Suite 209
North Hollywood
California 91606

Attention: Mr Charles Z. Stein, Attorney-at-Law

Dear Sirs

<u>Re: Confirmation of Non-Performance</u>

Radical Investments Limited (as Buyer) hereby confirms the non-performance of the obligations of Good Vibrations Entertainment LLC pursuant to the Purchase Agreement dated as of April 16, 2021 among Radical Investments Limited and Good Vibrations Entertainment LLC.

Radical Investments Limited hereby irrevocably and unconditionally confirms and authorizes the return and payment of the Escrow Funds in the amount of USD$12,200,000 by Charles Z. Stein of Davidovich Stein Law Group, LLC in his capacity of Paymaster under the Escrow and Paymaster Agreement dated as of April 16, 2021 among Radical Investments Limited, Good Vibrations Entertainment LLC and Davidovich Stein Law Group, LLC, to the below account:

Payment Instructions:
Intermediary Bank Information
J.P. Morgan Chase, New York
ABA#: ███████
SWIFT: ███████
For Credit To:
RBC Royal Bank of Canada, William Peter Blvd, Castries, St. Lucia
SWIFT: ROYCLCLC
For Further Credit To:
Radical Investments Ltd, 20 Micoud Street, Castries, St. Lucia
Account #: ███████
Transit #: █████

Yours sincerely
**Radical Investments Limited**
Per:

Mark Maloney
Director

# EXHIBIT 10

From: **Charlie Stein** charlie@davidovichlaw.com
Subject: Re: EXHIBIT C.pdf
Date: 28 May 2021 at 13:54
To: Mark Maloney mmaloney@preconco.com
Cc: LEONARD PERTNOY Pertnoy@att.net, Olivia Watson oliviawatson.bgi@gmail.com



Mr. Maloney,

Thank you for sending that Exhibit over. I have reviewed the purchase agreement as well as the paymaster agreement prepared by your counsel and I am stuck in a difficult predicament. I have reached out to independent counsel to also review this issue and they have also found the same issue so let me explain.

The Paymaster Agreement states that I am ordered to release funds pursuant to the Irrevocable Pay Order that you previously signed in Exhibit A. It further states that "In the event that AstraZeneca does not issue an invoice in accordance with Article 4 of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off, deduction or counterclaim and the Seller shall not raise any protest or objection to same. The Buyer shall confirm noncompliance by Astra Zeneca by delivering to the Escrow Agent the Irrevocable Pay Order in substantially the form set forth in Exhibit C." Those two phrases are in direct conflict. Since you previously issued the first pay order, it would seemingly be impossible for you to subsequently issue the second pay order.

However, to get clarity, courtesy of Mr. Pertnoy, I was able to review the Purchase Agreement in the hopes that I would be able to resolve this conflict. Unfortunately, that actually made the situation even more convoluted. In Article 4, it states in paragraph 3, "Upon receipt of the AZ Invoice the Buyer shall execute an irrevocable pay order in accordance with the Escrow Agreement and upon receipt of same Paymaster shall release the sum of USD$10,200,000, (Ten Million Two Hundred Thousand United States Dollars) being the full purchase price for the Products, to the AZ Account." Given that I received the *irrevocable* pay order, that presumes that Seller had complied up to that point. The following paragraph then states, "In the event that the AZ Invoice is not provided to the Buyer within the time required and in accordance with the other requirements set forth in Article 4 (2) above, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off deduction or counterclaim and the Seller shall not raise any protest or objection to same." Again, if I am received Exhibit C, whereby I am ordered to comply with the terms of the Purchase agreement, that would be impossible to do so given the previously given irrevocable pay order. At this point, the extent of any return that would not be in violation of either agreement would be $2,000,000, which would be the commissions, and I am still unsure if that is allowed given the presence of a signed Exhibit A. I have no intention of holding on to this money for no reason, but I also know that I have legal obligations to follow and the paymaster agreement means that I owe a duty to both the buyer and seller.

With that being said, there is further concern that was presented to me last night by Ms. Coley, that your actions have caused a delay in receiving the products, which would force you to incur a 1% penalty pursuant to paragraph 7 of Article 4. However, as I am not a party to the Purchase Agreement nor am I acting as counsel to either party in this transaction, I will not state an opinion on this issue as I will let you and Mr. Moore address this issue directly. I will mention that following my communications with Ms. Coley last night, in which we spoke for nearly an hour, that there has been notification to you and the members of the Barbados government about the timeline for delivery, which is far quicker than would otherwise occur if you were attempting to independently acquire these goods (which I can obviously not verify, but given recent news reports, appears to be accurate). In fact, given that AstraZeneca is required to sell directly to governments, I am not sure that would even be possible without the licensed distributor like Prestige. I was further informed that the government understands that there are at least three approvals (AZ, the government receiving the vaccines and the drug administration of the local government distributing the vaccines) that need to approve any transfer across borders, for which two of those approvals have been obtained and only one remains. Unfortunately I don't have a timeline on this one as governments work at their own pace, especially when sending well needed vaccines away from their own citizens to other countries. If you or your counsel have a contradictory legal opinion about what is stated above, please send it over and I will discuss it with my independent counsel. Additionally, if you have facts that contradict what I was told, please send those over as well as I will independently verify that information also.

With Regards,

Charlie Z. Stein, Esq.



A Limited Liability Partnership
6442 Coldwater Canyon Avenue
Suite 209
North Hollywood, California 91606
Main: (818) 661-2420
Direct: (818) 794-6921
Facsimile: (818) 301-5131
Mobile: (818) 400-3265
Email: charlie@davidovichlaw.com
www.davidovichlaw.com

**Confidentiality:** The information contained in this email, including attachments, may be confidential or subject to attorney-client privilege and is only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or is the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by return email or by calling (818) 661-2420.

**Tax Advice Disclosure:** Any U.S. federal tax advice contained in this communication, including any attachment(s), unless expressly stated otherwise, was and is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

On Fri, May 28, 2021 at 5:09 AM Mark Maloney <mmaloney@preconco.com> wrote:

Charlie ,

Please see attached for your actioning .

Regards,

Mark Maloney ████████
████████

# EXHIBIT 11

RADICAL INVESTMENTS LTD.
20 Micoud Street
Castries
St. Lucia

May 29, 2021

Davidovich Stein Law Group
6442 Coldwater Canyon Avenue
Suite 209
North Hollywood
California 91606

Attention: Mr Charles Z. Stein, Attorney-at-Law

Dear Sirs                                                                                      WITHOUT PREJUDICE

Re: Non-Performance and Breach of Fiduciary Duties

We refer to the Escrow and Paymaster Agreement dated as of April 16, 2021 among Radical Investments Limited, Good Vibrations Entertainment LLC and Davidovich Stein Law Group, LLC (as Paymaster) (the "Paymaster Agreement"). We also refer to correspondence, including your email of May 28, 2021 in connection with the Paymaster Agreement and the non-performance of Good Vibrations Entertainment LLC under the Purchase Agreement dated as of April 16, 2021 among Good Vibrations Entertainment LLC (as Seller) and Radical Investments Limited (as Buyer) (the "Purchase Agreement").

We have consulted with Prof. Pertnoy, and the below represents our response to the claims as stated in your email of May 28, 2021:

Exhibit A to the Paymaster Agreement provides the following instruction for payment by the Paymaster:

> "The Buyer hereby irrevocably and unconditionally confirms and authorizes the release of the Product Purchase Price by Paymaster in the IOLTA Account to Astra Zeneca in accordance with the attached invoice and as directed herein. The pay order directed herein is irrevocably confirmed and payable to Astra Zeneca, without protest delays and/or deductions."

Accordingly, in the absence of an invoice issued by Astra Zeneca and in the absence of an account in the name of Astra Zeneca into which payment could be made, any payment made by the Paymaster was in contravention of the express terms of the Paymaster Agreement and Exhibit C.

In the lead up to the execution of Exhibit A to the Paymaster by the Buyer, the Paymaster made a series of statements to the Buyer and Buyer's counsel, including issuing a letter dated April 26, 2021, confirmed, among other things, that it had seen evidence which confirmed Good Vibrations Entertainment LLC has been involved in the medical supply and distribution business and has negotiated contracts for the right to sell Astra Zeneca products. The letter was expressed to be issued for the purpose of the present transaction. The Paymaster further, via a series of WhatsApp messages on April 27, 2021, sought to reassure the Buyer of the veracity of the transaction and the capacity of the Seller to perform under the terms of the Purchase Agreement. The Paymaster supplied details of the bank account held at Wells Fargo N.A in the name of Prestige Pegasus LLC and further confirmed the following:

> *"I am confirming to you that I got an email stating that the order is confirmed and being processed and once payment is made, she will be providing Alex with realistic timeline updates for delivery. I am also telling you that I got the account information for where the payment is set to go, which is an account at Wells Fargo."*

The account details provided by the Paymaster were included on the face of Exhibit A, which was signed and delivered on April 27, 2021 to facilitate payment to the specified account and the Exhibit was signed in reliance on the express statements made by the Paymaster to the Buyer and Buyer's counsel.

Upon delivery of Exhibit A to the Paymaster, the Paymaster was only authorized to do two things:

1.) Pay Astra Zeneca USD$10,200,000 in accordance with an invoice attached to Exhibit A; or
2.) Pay Prestige Pegasus LLC USD$10,200,000 using the Wells Fargo account details provided and noted on Exhibit A.

The Paymaster proceeded to make a series of payments out of the IOLTA Account (as defined in the Paymaster Agreement) to unauthorized third party accounts for different sums, and such payments constitute a breach of the Paymaster Agreement and the fiduciary duties of the Paymaster to the Buyer.  At this time the Paymaster has confirmed to the Buyer that there is a balance of approximately USD$5.3 million in the IOLTA Account.  This sum cannot be released to any party without the written authorization of the Buyer.

Article 2 of the Paymaster Agreement contains two default provisions:

1.) In the event that Astra Zeneca does not deliver the Products to the Buyer of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer without any deduction.

2.) In the event that AstraZeneca does not issue an invoice in accordance with Article 4 of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off, deduction or counterclaim and the Seller shall not raise any protest or objection to same.

The obligation of the Paymaster to return the funds to the Buyer in the event that Astra Zeneca fails to deliver the Products to the Buyer is absolute.

At the time of payment, the Paymaster was aware that Astra Zeneca did not produce an invoice despite such non-compliance the Paymaster continued to reassure the Buyer of the veracity of the transaction and in reliance on such assurances from the Paymaster the Buyer authorised payment to Prestige Pegasus LLC, to its account with Wells Fargo, the details of which account were supplied to the Buyer by the Paymaster.

Furthermore, as a fiduciary and in the exercise of its due diligence, the Paymaster should have reviewed the terms of the Purchase Agreement, which was referred to in the Paymaster Agreement and which was executed simultaneously with the Paymaster Agreement on April 16, 2021.  The Paymaster in fact only received and reviewed the Purchase Agreement one month later, when it was produced to the Paymaster by Prof. Pertnoy.  Any possible conflict should have been raised by the Paymaster prior to executing the Paymaster Agreement and prior to disbursing the funds from the IOLTA Account.

The Seller has failed to satisfy its obligations under the Purchase Agreement in that it has failed to produce and invoice from Astra Zeneca, the dossier from Astra Zeneca in respect of the Products and has further failed to deliver or procure delivery of the Products within the time required under the Purchase Agreement.

The Seller has also falsely represented that the Seller and/or Prestige and/or Astra Zeneca have had discussions with the Prime Minister of Barbados and Permanent Secretary Alies Jordan regarding delivery of the Products.  We have been advised by both individuals that no such discussions have taken place, and this is therefore deliberate falsification and misrepresentation by the principal of Good Vibrations Entertainment LLC.

Further, the Buyer has neither taken or failed to take any action which would result in a delay in the delivery of the Products, which under the terms of the Purchase Agreement were to be delivered to the Buyer no later than May 4, 2021 and paid a premium to the Seller in order to expedite the delivery of the Products.

For these and other reasons we refute the claims made in your email of May 28, 2021 in their entirety.

In summation, in despite repeated requests, the Buyer has not received any documentation verifying the veracity of the transaction, has not secured any proof from the Seller concerning delivery or the Products and now does not have his USD$12,200,000 returned.

At this time, in order to avoid us escalating this matter the preferred option is for you to ensure that Good Vibrations Entertainment LLC provides satisfactory confirmation, that we can verify in terms of the veracity of same, as it relates to the delivery of the Products, or the funds deposited by Radical Investments Limited be returned to Radical Investments Limited forthwith.

We look forward to hearing from you as a matter of urgency.

Yours sincerely
**Radical Investments Limited**
Per:

Olivia Watson
Group Legal and Commercial Director

# EXHIBIT 12

From: **Charlie Stein** charlie@davidovichlaw.com
Subject: Re: EXHIBIT C.pdf
Date: 30 May 2021 at 00:43
To: Olivia Watson oliviawatson.bgi@gmail.com
Cc: Mark Maloney mmaloney@preconco.com, LEONARD PERTNOY Pertnoy@att.net



Ms. Watson,

In response to your letter, let me take the opportunity to address a number of misstatements set forth therein. For the sake of clarity, I will address my points in the same chronological order as in your letter.

First, while you do correctly state the language set forth in Exhibit A to the Paymaster Agreement reflecting an invoice by Astra Zeneca, you fail to reference the specific language in the Paymaster Agreement and the Purchase Agreement. The Paymaster Agreement specific states that the payment will be irrevocable and in line with the terms of the Purchase Agreement and the Purchase Agreement states "Upon receipt of the AZ invoice the Buyer shall execute an irrevocable pay order in accordance with the Escrow Agreement..." The claims you are now making that you are now making directly contradict the language in the Purchase Agreement and put into serious doubt why Mr. Maloney would have ever executed the irrevocable pay order if he never received the invoice.

Next, let me discuss the WhatsApp messages that you have selectively chosen with reference to providing me with Exhibit A. At the time, neither you nor Mr. Moore had provided me with a copy of the Purchase Agreement. Prior to that date, you had sent me a number of messages regarding my background to verify that I was a licensed California attorney with a trust account. On April 22, Mr. Moore stated that he had sent me a redacted invoice. On April 26, you asked to get on a call and following that, I forwarded your concerns to Mr. Moore related to the additional information you were requesting. You then asked for additional information above and beyond the invoice, which according to the information that was provided to me, had already been sent to you. This information included the account information for the Prestige account. On that same day, I also sent a letter stating that I had been retained to be used as an escrow agent and paymaster and stated "I can hereby confirm, based on evidence presented to me, that Good Vibrations Entertainment LLC ("GVE") has been involved in the medical supply and distribution business and has negotiated contracts for the right to sell Astra Zeneca products throughits distribution channel for governments only. GVE has presented me with, among other things, contracts, irrevocable purchase orders, and letters of attestation from its distribution contacts supporting its involvement in this field." This is still a true statement and has been further confirmed by the conversations and documents that I have been sent in the month since this took place.

On the following day (April 27), you asked me for more information regarding the distribution relationship. I sent you the information I was able to gather about Prestige per your request. You specifically asked me if I could get Prestige to send you a letter confirming that see had accepted an order of 1,000,000 doses from Good Vibrations. I told you that she had sent me an email and that I could forward it to you or print it and drop the file in our WhatsApp chat. You asked me to issue a letter confirming receipt which I specifically refused to do. I specifically stated that you were asking me to put myself in the transaction which I outright refused to do. All I was doing was giving you the extra assurances and I had run my course. At that point, you asked me for the account information for Prestige and informed me that you were arranging for Exhibit A to be signed. Approximately 90 minutes thereafter, the signed Exhibit was sent to me.

While you continue to try to transfer the liability of this transaction to me, primarily by the continued bullying that I have received in my involvement as paymaster, it is completely unfounded and the only person to blame is you and Mr. Maloney. If you had not received an invoice, you should not have executed Exhibit A. The communication channel that I was in with you stated that you had received said document, which I did not even know was required as you never sent me the Purchase Agreement (nor was I never in need of said document until this issue of the return of funds became relevant).

The remaining statements about the communications that have occurred are entirely accurate and in fact, Mr. Maloney's business partners have attempted to communicate with members in the seller's channels about this transaction and have received acceptable updates. You are obviously free to dispute this claim, but you would be misinformed to do so.

There has been no breach of my fiduciary duty and any claim to a breach of the Purchase Agreement, either for non-delivery or an alleged delay in delivery, is either as to the Seller for failure to perform or falls at the hands of the Buyer for taking action by turning over Exhibit A without having the necessary documentation that should have been in place. Mr. Maloney has signed an **irrevocable** pay order. If a breach occurred, I recommend that you take that issue up with Mr. Moore directly on behalf of Good Vibrations as he is the other party in the Purchase Agreement. I will continue to hold the remaining funds until the transaction is consummated (or are needed to consummate the transaction) or the parties agree to roll back the transaction and return a portion or the entire amount previously paid.

With Regards,

Charlie Z. Stein, Esq.



A Limited Liability Partnership
6442 Coldwater Canyon Avenue
Suite 209

Suite 205
North Hollywood, California 91606
Main: ██████████
Direct: (██████████
Facsimile: ██████████
Mobile: (██████
Email: charlie@davidovichlaw.com
www.davidovichlaw.com

Confidentiality: The information contained in this email, including attachments, may be confidential or subject to attorney-client privilege and is only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or is the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by return email or by calling (818) 661-2420.

Tax Advice Disclosure: Any U.S. federal tax advice contained in this communication, including any attachment(s), unless expressly stated otherwise, was and is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

On Sat, May 29, 2021 at 4:44 AM Olivia Watson <oliviawatson.bgi@gmail.com> wrote:
Dear Mr Stein

Further to your email below, please find attached hereto our letter to you in this matter.

Kind regards

Olivia Watson
Group Legal and Commercial
Tel: +1 (246) 826 1222
Skype: paris.bgi

NOTICE: This communication contains information which is confidential. If you are not the intended recipient of this communication, please delete and destroy all copies and notify the sender immediately. Any use of the information in this communication by unauthorised persons is strictly prohibited. If you are the intended recipient of this communication, you must not copy, disclose or distribute this communication without the sender's authority.

> On 28 May 2021, at 13:54, Charlie Stein <charlie@davidovichlaw.com> wrote:
>
> Mr. Maloney,
>
> Thank you for sending that Exhibit over. I have reviewed the purchase agreement as well as the paymaster agreement prepared by your counsel and I am stuck in a difficult predicament. I have reached out to independent counsel to also review this issue and they have also found the same issue so let me explain.
>
> The Paymaster Agreement states that I am ordered to release funds pursuant to the Irrevocable Pay Order that you previously signed in Exhibit A. It further states that "In the event that AstraZeneca does not issue an invoice in accordance with Article 4 of the Purchase Agreement, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off, deduction or counterclaim and the Seller shall not raise any protest or objection to same. The Buyer shall confirm noncompliance by Astra Zeneca by delivering to the Escrow Agent the Irrevocable Pay Order in substantially the form set forth in Exhibit C." Those two phrases are in direct conflict. Since you previously issued the first pay order, it would seemingly be impossible for you to subsequently issue the second pay order.
>
> However, to get clarity, courtesy of Mr. Pertnoy, I was able to review the Purchase Agreement in the hopes that I would be able to resolve this conflict. Unfortunately, that actually made the situation even more convoluted. In Article 4, it states in paragraph 3, "Upon receipt of the AZ Invoice the Buyer shall execute an irrevocable pay order in accordance with the Escrow Agreement and upon receipt of same Paymaster shall release the sum of USD$10,200,000, (Ten Million Two Hundred Thousand United States Dollars) being the full purchase price for the Products, to the AZ Account." Given that I received the *irrevocable* pay order, that presumes that Seller had complied up to that point. The following paragraph then states, "In the event that the AZ Invoice is not provided to the Buyer within the time required and in accordance with the other requirements set forth in Article 4 (2) above, the Paymaster shall forthwith return the funds deposited by the Buyer into the Escrow Account to the Buyer without any set-off deduction or counterclaim and the Seller shall not raise any protest or objection to same." Again, if I am received Exhibit C, whereby I am ordered to comply with the terms of the Purchase agreement, that would be impossible to do so given the

previously given irrevocable pay order. At this point, the extent of any return that would not be in violation of either agreement would be $2,000,000, which would be the commissions, and I am still unsure if that is allowed given the presence of a signed Exhibit A. I have no intention of holding on to this money for no reason, but I also know that I have legal obligations to follow and the paymaster agreement means that I owe a duty to both the buyer and seller.

With that being said, there is further concern that was presented to me last night by Ms. Coley, that your actions have caused a delay in receiving the products, which would force you to incur a 1% penalty pursuant to paragraph 7 of Article 4. However, as I am not a party to the Purchase Agreement nor am I acting as counsel to either party in this transaction, I will not state an opinion on this issue as I will let you and Mr. Moore address this issue directly. I will mention that following my communications with Ms. Coley last night, in which we spoke for nearly an hour, that there has been notification to you and the members of the Barbados government about the timeline for delivery, which is far quicker than would otherwise occur if you were attempting to independently acquire these goods (which I can obviously not verify, but given recent news reports, appears to be accurate). In fact, given that AstraZeneca is required to sell directly to governments, I am not sure that would even be possible without the licensed distributor like Prestige. I was further informed that the government understands that there are at least three approvals (AZ, the government receiving the vaccines and the drug administration of the local government distributing the vaccines) that need to approve any transfer across borders, for which two of those approvals have been obtained and only one remains. Unfortunately I don't have a timeline on this one as governments work at their own pace, especially when sending well needed vaccines away from their own citizens to other countries. If you or your counsel have a contradictory legal opinion about what is stated above, please send it over and I will discuss it with my independent counsel. Additionally, if you have facts that contradict what I was told, please send those over as well as I will independently verify that information also.

With Regards,

Charlie Z. Stein, Esq.



**DAVIDOVICH STEIN LAW GROUP**

A Limited Liability Partnership
6442 Coldwater Canyon Avenue
Suite 209
North Hollywood, California 91606
Main: ▮▮▮▮▮▮▮▮
Direct: ▮▮▮▮▮▮▮
Facsimile: ▮▮▮▮▮▮▮▮
Mobile: ▮▮▮▮▮▮▮▮
Email: charlie@davidovichlaw.com
www.davidovichlaw.com

**Confidentiality**: The information contained in this email, including attachments, may be confidential or subject to attorney-client privilege and is only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or is the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us by return email or by calling (818) 661-2420.

**Tax Advice Disclosure**: Any U.S. federal tax advice contained in this communication, including any attachment(s), unless expressly stated otherwise, was and is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

On Fri, May 28, 2021 at 5:09 AM Mark Maloney <mmaloney@preconco.com> wrote:

Charlie ,

Please see attached for your actioning .

Regards,

Mark Maloney CS&E , SE
M: 246-262-4611

# EXHIBIT 13



14th June 2021
The Right Honorable Mia Mottley
Prime Minister of Barbados

Re: supply of 1,000,000 Oxford COVID-19 Vaccine – AZD1222

I hereby confirm receipt of your Governments Letter of Intent to order 1,000,000 doses
of COVID-19 vaccine produced by AstraZeneca.

AstraZeneca were overwhelmed by orders, last week, and have today advised Serum Pharma
Limited that we will imminently receive a confirmation from the legal department of
AstraZeneca confirming receipt of the Barbados order for 1,000,000 doses of the vaccine and
the delivery schedule.

In our telephone conversation today, I confirmed that your order has been prioritised to the
top of our list.

I look forward to providing this information to you later in the week when received.

Yours faithfully
Serum Pharma Limited

Michael Howarth
Managing Partner

# EXHIBIT 14

RADICAL INVESTMENTS LTD.
20 Micoud Street
Castries
St. Lucia

June 25, 2021

Jonathan M Sutton & Associates, Attorneys-at-Law
4157 S Harvard Ave #121
Tulsa
OK 74135
United States of America

Attention: Mr Jonathan M. Sutton, Attorney-at-Law

Dear Sirs                                                                    WITHOUT PREJUDICE

<u>Re: Termination of Sale and Purchase Agreement</u>

We refer to recent correspondence in connection with the above matter, and to the following:

1.) Purchase Agreement dated as of April 16, 2021 among Good Vibrations Entertainment LLC (as Seller) and Radical Investments Limited (as Buyer) in respect of the sale and purchase of 1 million doses of the Astra Zeneca Vaccine (the "Vaccines") (the "Purchase Agreement");
2.) Escrow and Paymaster Agreement dated as of April 16, 2021 among Radical Investments Limited, Good Vibrations Entertainment LLC and Davidovich Stein Law Group, LLC (as Paymaster) (the "Paymaster Agreement"); and
3.) Subsequent correspondence to parties, some of which you were copied on.

Pursuant to the terms of the Purchase Agreement, your client was to deliver or procure delivery of the Vaccines to the Purchaser by no later than May 7, 2021.  Despite representing to the contrary, from the inception your client never had any authorisation from Astra Zeneca to purchase the Vaccines.  The Buyer has not received the Vaccines to date.

On or around May 7, 2021 your client introduced the Buyer to Moniladai Coley of Prestige Brands to perform your client's obligations under the Purchase Agreement.  Contrary to Article 19 of the Purchase Agreement, your client represented that Ms Coley and Prestige Brands had the capacity to deliver the Vaccines and would do so within a matter of days.  To date we have been presented with a series of delays, excuses, misleading and dishonest information all of which your client knew or ought reasonably to have known was untrue and misleading.

In addition to the foregoing, and as you are aware, we have been put on notice by Charles Stein, the Paymaster pursuant to the Paymaster Agreement that funds placed into the IOLTA Account under the terms of the Paymaster Agreement have been paid out as follows at the sole direction of your client, without the authorisation or knowledge of the Buyer and contrary to the terms of the Purchase Agreement and Paymaster Agreement:

- April 27, 2021 - USD$2 million to Prestige Pegasus, LLC;
- April 27, 2021 – USD$2.2 million to Good Vibrations Entertainment LLC;
- April 27, 2021 – USD$40,000 to Charles Stein;
- May 3, 2021 – USD$2 million to Good Vibrations Entertainment LLC;
- May 3, 2021 – USD$ 485,000 to RDS.

Your client is in breach of the terms of the Purchase Agreement and the Paymaster Agreement.  At this time neither the Government of Barbados or the Buyer have any confidence in the ability or capacity of your

client or Prestige Brands to deliver under the terms of the Purchase Agreement, and furthermore have serious concerns as to the clear evidence of fraud on the part of your client and Prestige in this transaction.

Accordingly, we are hereby giving formal notice of our intention to terminate the Purchase Agreement.

We are, however, based on our earlier discussion, willing to proceed with a new transaction on the following terms:

1.) The Buyer will enter into a sale and purchase agreement directly with Serum in order to secure the delivery of the vaccines to Barbados;
2.) The Buyer will enter into a commission agreement, to be paid on delivery of the Vaccines to Barbados;
3.) The Buyer and your client will enter into an escrow agreement appointing your firm as the paymaster and escrow agent of an escrow account to be managed by your firm, setting out the terms on which payments may be made out of this account;
4.) Your client shall ensure the immediate return of all sums paid out of the IOLTA Account by Charles Stein to Alex Moore, Good Vibrations Entertainment LLC, Prestige Brands, Charles Stein and RDS and direct that these sums be paid into the escrow account to be managed and controlled by your firm as per 3.) above.

We also ask that you note that Serum has advised that the letter of authorization issued by the Ministry of Health and Wellness on behalf of the Government of Barbados authorizes the Buyer to transact on its behalf and not Prestige.  Accordingly unless the Government of Barbados were to issue a new letter authorizing Prestige on its behalf, Prestige would not be able to conclude this transaction.  For the reasons stated herein and otherwise known to the parties, such an authorization would not be issued in favour of Prestige.

We ask that you take instructions from your client on the foregoing and advise whether the proposed new transaction may be documented and executed so as to ensure delivery of the vaccines to Barbados and permit your client to earn a commission for the transaction without the threat of civil and criminal liability for his actions in this matter (subject to full compliance with the foregoing, and in particular the repayment of all monies as per point 4).

We look forward to hearing from you as a matter of urgency and to working with you to get the vaccines delivered under the terms of the new agreements.

Yours sincerely
**Radical Investments Limited**
Per:

Mark Maloney
Director

# EXHIBIT 15

# Re: Barbados Vaccines  Group General ✕



**Jonathan Sutton**

to me, LEONARD ▾

Sun, Jun 27, 10:04 PM

Dear Ms. Watson,

   I have just now had a response from my client, who is agreeable with your proposal. I am in the Denver Airport flying to work with a client, but will make contact tomorrow to get things started.

Regards,
Jonathan

---

**From:** Olivia Watson <oliviawatson.bgi@gmail.com>
**Sent:** Saturday, June 26, 2021 7:11:12 AM
**To:** Jonathan Sutton <jmsutton@sutton.law>; Prof Leonard Pertnoy <Pertnoy@att.net>
**Subject:** Barbados Vaccines

Good morning Mr Sutton

Thank you again for your time yesterday.  As discussed, please see attached our letter to you outlining our current position and proposed solution.  Please note that time is of the essence as it relates to the proposed solution, accordingly we require a response from your client no later than cob Monday June 28, 2021.

We look forward to hearing from you as soon as possible.

Kind regards

Olivia Watson

# EXHIBIT 16



# 210616a SPA draft AstraZeneca Barbados_PBG EXECUTED_7.1.2021.pdf

Group General ×

### Flex Moore



to Alies, janet.phillips@health.gov.bb, Moniladai, Juanita, Ian, me ▼

🔗 Fri, Jul 2, 8:44 AM ☆ ↱

Hello Prime Minister,

Attached is the Final Updated SPA which has taken extremely longer than usual for Prestige to provide. I received the final SPA yesterday from prestige so I'm forwarding onto the Prime Minister for her signature. I apologize for the delay on behalf of Monidoldae. In the Updated SPA is the Delivery Schedule. This will be the fastest option on AstraZeneca arriving to Barbados. Please sign and send back immediately. Prestige will be in attendance for the arrival of vaccines to Barbados. Feel free to call immediately for questions.

Thank you,
Alex Moore

## 2 Attachments



PDF 210616a SPA draf…



ATT00001.txt

# EXHIBIT 17

# SALES AND PURCHASE AGREEMENT

Between

**Prestige Brands Global, all its Subsidiaries, Successors and Assigns**

Represented by: Ms. Moniladae "Moniladai" Coley

Title: Chief Executive Officer and Chairman of the Board

Registration No.: 5904478

Registered office: 99 Wall Street, Suite 701, New York, NY 10005, United States of America

Email: m@prestigebrands.org / m@judah-partners.com / m@do-trading.com / m@maverick-trading.com / mc@leconsortium.org / m@judahinvpartners.com / mcoley@luxecaviardreamsgroup.com

Telephone: +███████████████

Hereinafter referred to as "Sᴇʟʟᴇʀ"

and,

# OFFICE OF THE PRIME MINISTER
## Government of Barbados

Represented by: Her Excellency Mia Amor Mottley QC, MP, EGH, OR

Registered office: Bay Street, St. Michael City: Bridgetown, Barbados

Email: pmbarbados@pmo.gov.bb

Telephone: +███████████████

Hereinafter referred to as "Pᴜʀᴄʜᴀsᴇʀ"

Sᴇʟʟᴇʀ and Pᴜʀᴄʜᴀsᴇʀ are hereinafter together referred to as the "Pᴀʀᴛɪᴇs" and individually a "Pᴀʀᴛʏ"

**PREAMBLE**

**WHERAS**, Sᴇʟʟᴇʀ intends to sell to the Pᴜʀᴄʜᴀsᴇʀ and Pᴜʀᴄʜᴀsᴇʀ intends to purchase from the Sᴇʟʟᴇʀ Oxford COVID-19 Vaccine – AZD1222 manufactured by AstraZeneca.

**NOW**, **THEREFORE**, the Pᴀʀᴛɪᴇs enter into the following ᴀɢʀᴇᴇᴍᴇɴᴛ (the "Aɢʀᴇᴇᴍᴇɴᴛ"):

**1.     DEFINITIONS**

"Aɢʀᴇᴇᴍᴇɴᴛ" means this sale and purchase agreement.

"Aɴɴᴇx" means an annex to this **Aɢʀᴇᴇᴍᴇɴᴛ**.

"BANKING DAY" means any day on which banks in London, U.K., are open for business.

"CLAUSE" means a clause of this Agreement.

"DEFECT" or "DEFECTIVE" shall have the meaning assigned to it in CLAUSE 7.2.

"**DELIVERY SCHEDULE**" means the delivery schedule attached as ANNEX 2.

"DESTINATION" shall have the meaning assigned to it in ANNEX 2.

"ESCROW AGENT" shall have the meaning assigned to it in ANNEX 3.

"GOODS" means the goods as specified in Section 2 and ANNEX 1.

"INSTITUTE" shall have the meaning assigned to it in CLAUSE 8.1.

"**PURCHASE PRICE**" shall have the meaning assigned to it in ANNEX 3.

"**TOTAL PURCHASE PRICE**" shall have the meaning assigned to it in ANNEX 3.

"UNIT" shall have the meaning assigned to it in ANNEX 1.

"**€**" means Euro currency

**$** means the currency of the United States of America

## 2.     OBJECT

The object of this AGREEMENT is the sale and purchase of the **Oxford COVID-19 Vaccine – AZD1222** with the specifications set out in **ANNEX 1** (the "GOODS").

## 3.     SALE AND PURCHASE

The SELLER hereby sells to the PURCHASER and the PURCHASER hereby purchases from the SELLER the GOODS in accordance with the terms of this AGREEMENT. The type and quantity of the GOODS sold and purchased hereunder are set out in **ANNEX 1.**

## 4.     DELIVERY

SELLER shall deliver the GOODS to the agreed DESTINATION in accordance with the DELIVERY SCHEDULE attached as **ANNEX 2** (the "**DELIVERY SCHEDULE**"). PARTIES shall notify each other of their shipping agents and the exact time of deliveries as soon as possible.

5.    **PURCHASE PRICE AND TERMS OF PAYMENT**

The PURCHASE PRICE payable for the GOODS sold under CLAUSE 3 and the terms of payment are set out in **ANNEX 3**.

6.    **EXAMINATION**

6.1    The PARTIES agree that the GOODS shall be examined with respect to completeness and quality in accordance with the examination procedure set out in **ANNEX 4**.

6.2    PURCHASER shall be obliged to accept and take over the GOODS in accordance with the DELIVERY SCHEDULE and pay the PURCHASE PRICE in accordance with ANNEX 4 only for the number of GOODS which, according to the examination pursuant to CLAUSE 6.1, meet the agreed quality specified in **ANNEX 1.**

6.3    PURCHASER may refuse acceptance of any GOODS which, according to the examination pursuant to CLAUSE 6.1, do not meet the agreed quality specified in **ANNEX 1**. The Purchaser's right of refusal pursuant to this Clause 6.3 shall be the Purchaser's sole remedy with respect to GOODS which according to the examination pursuant to CLAUSE 6.1, do not meet the agreed quality specified in **ANNEX 1**. In case the PURCHASER refuses the acceptance of GOODS, the SELLER shall immediately confirm replacement delivery, whereas such replacement delivery shall take place within 14 (fourteen) Banking Days.

7.    **LIMITATION OF LIABILITY**

7.1    Subject to successful examination pursuant to CLAUSE 6, the GOODS are sold and purchased AS-IS (purchased as seen). Any warranty rights are excluded unless expressly stated otherwise in this AGREEMENT.

7.2    SELLER shall only be liable for any reasonably foreseeable damage resulting from its breach of a fundamental contractual obligation. Reasonably foreseeable shall mean those damages which could have been foreseen by the SELLER at the time the AGREEMENT was entered into.

7.3    Under no circumstances shall any PARTY be liable under this AGREEMENT for loss of profits or special or exemplary damages arising hereunder, and under no circumstances shall the SELLER'S aggregate liability (whether in damages, indemnification or otherwise) under this AGREEMENT, if any, exceed the PURCHASE PRICE paid by the PURCHASER.

7.4    The limitations of this CLAUSE shall not apply in case of intent or with respect to any liability for personal injury or death.

8.    **LIQUIDATED DAMAGES FOR LATE DELIVERY / LATE ACCEPTANCE**

8.1    If the SELLER has not delivered the GOODS within the period of time set forth in the DELIVERY SCHEDULE, any damage claim of the PURCHASER for delay in performance requires that the PURCHASER has fixed an additional period of time for performance of the SELLER's obligations and that the SELLER has failed to deliver within such additional period.

8.2    If the PURCHASER has not accepted the GOODS within the period of time set forth in the DELIVERY SCHEDULE, any damage claim of the SELLER for delay in performance requires that the SELLER has fixed an additional period of time for performance of the PURCHASER's obligations and that the PURCHASER has failed to accept and take over within such additional period.

9.    **FORCE MAJEURE**

9.1    "**FORCE MAJEURE**" shall mean all causes or events beyond the reasonable control of either PARTY which cannot be foreseen or, if foreseeable, which are unavoidable which occur after the execution of this AGREEMENT and which prevent, delay or hinder the performance of a PARTY'S obligations under this AGREEMENT.

9.2    The failure or delay of either of the PARTIES hereto to perform any obligation under this AGREEMENT solely by reason of FORCE MAJEURE shall not be deemed to be a breach of this AGREEMENT, provided that the PARTY so prevented from complying herewith shall not have procured such FORCE MAJEURE, shall have used reasonable diligence to avoid such FORCE MAJEURE or ameliorate its effects, and shall continue to take all actions within its power to comply as fully as possible with the terms of this AGREEMENT.

9.3    Except where the nature of the event shall prevent it from doing so, the PARTY suffering such FORCE MAJEURE shall notify the other PARTY in writing within the shortest delay reasonable possible as of the first occurrence of the FORCE MAJEURE and shall in every instance, to the extent reasonable possible and lawful under the circumstances, use all reasonable efforts to remove or remedy such cause. The PARTY invoking FORCE MAJEURE shall inform the other PARTY in writing of the exact nature of the intervening circumstances causing FORCE MAJEURE and shall also inform the other PARTY in writing of the end of the intervening circumstances causing FORCE MAJEURE.

9.4    If by virtue of the preceding sub-articles either PARTY shall be excused from the performance or punctual performance of any obligation for a continuous period of three (3) months, then either PARTY may at any time thereafter and, provided

such performance or punctual performance is still excused, rescind the AGREEMENT with immediate effect.

## 10.   EXPORT CONTROL

SELLER shall comply with all applicable export control and trade embargo laws, rules and regulations and PURCHASER shall not resell, export, re-export, distribute, transfer or otherwise dispose of materials, directly or indirectly, without first obtaining all necessary written consents, permits and authorizations and completing such formalities as may be required by any such laws, rules and regulations.

## 11.   MISCELLANEOUS

11.1   This AGREEMENT and its Annexes and Schedules comprise the entire AGREEMENT between the PARTIES concerning its subject matter and shall supersede all prior agreements, oral and written declarations of intent and other arrangements (whether binding or non-binding) made by the PARTIES in respect thereof.

11.2   The division of this AGREEMENT into CLAUSES and the descriptive headings of each CLAUSE are for convenience of reference only and shall not control or affect the meaning or construction of any of the provisions hereof.

11.3   Amendments and additions to this AGREEMENT shall be valid only if made in writing; This also applies to any amendment to this written form CLAUSE. There are no verbal or written side agreements.

## 12.   HIERARCHY OF DOCUMENTS

In the event of contradictions between the following documents, the following hierarchical order shall apply:

1.     This AGREEMENT
2.     ANNEXES to this AGREEMENT

## 13.   CHOICE OF LAW AND ARBITRATION

13.1   This AGREEMENT shall be governed by and construed in accordance with the laws of England and Wales, without regard to principles of conflicts of laws. The UN Convention on Contracts for the International Sale of GOODS (CISG) shall not apply.

13.2   All disputes arising out of or in connection with this AGREEMENT shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with said Rules.

The place of arbitration shall be London, U.K.. The language of arbitration shall be English.

14.     **SEVERABILITY**

Should one or more provisions of this AGREEMENT be or become invalid or unenforceable, this shall not affect the validity and enforceability of the remaining provisions of this AGREEMENT.

15.      **TABLE OF ANNEXES**

**Annex 1**      Goods & quantity
**Annex 2**      DELIVERY SCHEDULE
**Annex 3**      PURCHASE PRICE and Payment Terms
**Annex 4**      Examination Procedure

THIS PORTION OF THIS PAGE INTENTIONALLY LEFT BLANK

SIGNATURES PAGE FOLLOWS

**16.   SIGNATURES**

Seller Representative:

| | |
|---|---|
| Company: | **Prestige Brands Global** |
| Represented by: | Ms. Moniladae "Moniladai" Coley |
| Title: | President, Chairman & CEO |

*USA,  7/1/2021*

.............................................................                    .............................................................
Place, Date                                                                      Stamp & Signature

Buyer Representative:

| | |
|---|---|
| Office: | **OFFICE OF THE PRIME MINISTER,** |
| | Government of Barbados |
| Represented by: | Her Excellency Mia Amor Mottley QC, MP, EGH, OR |

.............................................................                    .............................................................
Place, Date                                                                      Stamp & Signature

THIS PORTION OF THIS PAGE INTENTIONALLY LEFT BLANK

END SALES AND PURCHASE AGREEMENT

**ANNEX 1 – GOODS & QUANTITY**

**GOODS:**

Product:                        Oxford COVID-19 Vaccine – AZD1222 & Dead Space Syringe

Country of origin:          TBA

Documentation:            Commercial invoice, packing list and documents as per Annex 4

**Quantity:**

Unit Size:                      1 dose for 1 injection to 1 patient (the "**UNIT**")

Note:                            Volume of 1 dose 500ml

                                      Volume of 11 doses 11 x 500 = 5,500 ml

The low dead-volume syringe and needle combination supplied by Serum Pharma Limited have a dead volume of no more than 35 microliters. Thus when 11 x 0.5ml (500 microlitres) doses are extracted from the vial plus an additional 35 microliters using the low dead space syringe a total of 11 x 500 = 5,500 microlitres of vaccine is extracted leaving a residue of more than 0.24ml (240 microlitres) in the vial. If standard syringes and needles are used, there may not be enough of the vaccine to extract a sixth dose from a vial.

Number of sold Units:    1,000,000 UNITS

Please note: The SGS report will show 100,000 vials with each vial containing 10 doses totaling 10,000,000 doses.

The commercial invoice will show 100,000 vials with each vial containing 11 doses totaling 1,100,000 doses when dispensed with a dead space syringe which Copper cast Limited include in the total cost of the order.

THIS PORTION OF THIS PAGE INTENTIONALLY LEFT BLANK

END ANNEX 1

## ANNEX 2 – DELIVERY SCHEDULE

Port of Loading:              TBA airport

Latest Date of Shipment:     10 banking days after payment received by escrow agent

Applicable Incoterms 2020:   FCA TBA

THIS PORTION OF THIS PAGE INTENTIONALLY LEFT BLANK

END ANNEX 2

## ANNEX 3 – PURCHASE PRICE AND PAYMENT TERMS

**1.    PURCHASE PRICE**

1.1    The PURCHASE PRICE for the GOODS not including commission is **$ 23**.**00** per UNIT (the "**PURCHASE PRICE**").

1.2    The TOTAL PURCHASE PRICE for all GOODS sold under this AGREEMENT is, therefore, **TWENTY THREE MILLION UNITED STATES DOLLARS $ 23,000,000.00 USD (the** "**TOTAL PURCHASE PRICE**").

1.3    THE PURCHASE PRICE is including any export customs duty and tax, if applicable.

1.4    The total amount of funds to be paid into escrow is **$23,000,000.00 USD**

**2.    PAYMENT TERMS**

2.1    The PURCHASE PRICE shall be due and payable upon delivery of the GOODS

by way of payment to an escrow account, that shall be established at a Top-tier bank and managed by an independent third party (the "**Escrow Agent**") as mutually agreed between the PARTIES.

2.2    the PURCHASE PRICE shall be paid, without any deduction, to the following bank account of the Escrow Agent:

**Bank:**              ........................................

**Account holder:**   ......................................

**IBAN:**              ...................................

**BIC:**               ............................

END ANNEX 3

## ANNEX 4 – EXAMINATION PROCEDURE

1. Visual inspection by customer possible, before departure in TBA
2. Report of analysis
3. Certificate of origin
4. Vaccine registration confirmation in the country of origin

THIS PORTION OF THIS PAGE INTENTIONALLY LEFT BLANK

END ANNEX 4

# EXHIBIT 18

From: mhowarth@serumpharma.com 📎
Subject: RE: 210616a SPA draft AstraZeneca Barbados_PBG EXECUTED_7.1.2021.pdf
Date: 3 July 2021 at 09:00
To: Richard Waters richard@proinnolabs.com, Olivia Watson oliviawatson.bgi@gmail.com, Mark Maloney mmaloney@preconco.com
Cc: Moses Mandelbaum Moses@proinnolabs.com, Nathan Jacobson nathan@proinnolabs.com

Dear All,

Confirmed and acknowleged.

**Michael E.**
**Howarth**
Managing Partner

Telephone ███████████

www.serumpharma.com



**Disclaimer:**
This transmission may contain privileged and/or confidential information and is intended
solely for the use of the addressee. Upon receipt of these documents, you as the
recipient, acknowledge this disclaimer and warnings herein.

By reading beyond this point, you agree, acknowledge and accept that this is a
privileged, proprietary and confidential communication and you agree to keep it private.

All information provided by Serum Pharma, with or without a binding business
relationship with Serum Pharma or a Serum Pharma legal entity is considered as
information supplied by Serum Pharma  without any commitment.Any advice given is
provided only on the basis that Serum Pharma accepts no liability whatsoever.

This email is sent over a public network and its completeness or accuracy cannot be
guaranteed. Any attached files were checked with virus detection software before
sending, but you should carry out your own virus check before opening them and we do
not accept liability for any loss or damage caused by software viruses.

**From:** Richard Waters <richard@proinnolabs.com>
**Sent:** 02 July 2021 20:02
**To:** Olivia Watson <oliviawatson.bgi@gmail.com>; Michael Howarth

<mhowarth@serumpharma.com>; Mark Maloney <mmaloney@preconco.com>
**Cc:** Moses Mandelbaum <Moses@proinnolabs.com>; Nathan Jacobson
<nathan@proinnolabs.com>
**Subject:** Re: 210616a SPA draft AstraZeneca Barbados_PBG EXECUTED_7.1.2021.pdf

Hello All:

In regards to the below email, I would like to formally state that Serum Pharma and Proprietary Innovation Labs Inc. have zero affiliation with the document you sent over this morning. It appears that the document was edited and copied from our original FCO and SPA, and has been used for nefarious purposes.

We have never received a filled out / executed SPA or KYC package for escrow opening from any group pertaining to this order, and are not in the position to be transacting with any party, other than the party authorized by the Barbados Ministry of Health.

Should the authorized entity decide to provide a fully executed copy of our SPA and Escrow Agreement package, along with a completed KYC package, we can continue with this transaction.

Anything from any group other than the authorized party will NOT be acknowledged by Serum Pharma or Proprietary Innovation Labs.

Sincerely,

**Richard Waters** | President | Founder

**Proprietary Innovation Labs Inc.**
345 Wilson Avenue, Suite 306 | Toronto, ON | M3H 5W1
--
**Office (CA):** ▓▓▓▓▓5 | **Office (INTL):** ▓▓▓▓▓▓
**Mobile (CA):** ▓▓▓▓▓ | **Mobile (USA):** 8▓▓▓▓▓▓
**Mobile (INTL)** ▓▓▓▓▓▓

---

**From:** Olivia Watson <oliviawatson.bgi@gmail.com>
**Date:** Friday, July 2, 2021 at 9:37 AM
**To:** Michael Howarth <mhowarth@serumpharma.com>, Richard Waters <richard@proinnolabs.com>, Mark Maloney <mmaloney@preconco.com>
**Subject:** Fwd: 210616a SPA draft AstraZeneca Barbados_PBG EXECUTED_7.1.2021.pdf

Good morning Gentlemen

We just received the below and attached from Alex Moore on behalf of Prestige.  This is very concerning indeed.  Richard I will call you shortly and would appreciate if we could set up a call for all those in copy today.

Thank you

Kind regards

Olivia

Olivia Watson
Legal and Commercial
Tel: ███████████
Skype: Paris.bgi
Sent from my iPhone



Begin forwarded message:

**From:** Flex Moore <flex@goodvibrationsentertainment.com>
**Date:** 2 July 2021 at 08:44:23 GMT-4
**To:** Alies Jordan <Alies.Jordan@pmo.gov.bb>, janet.phillips@health.gov.bb, Moniladai Coley <m@prestigebrands.org>, Juanita Thorington-Powlett <Juanita.Thorington-Powlett@barbados.gov.bb>, Ian Carrington <Ian.Carrington@barbados.gov.bb>
**Cc:** Olivia Watson <oliviawatson.bgi@gmail.com>
**Subject: 210616a SPA draft AstraZeneca Barbados_PBG EXECUTED_7.1.2021.pdf**

Hello Prime Minister,

Attached is the Final Updated SPA which has taken extremely longer than usual for Prestige to provide. I received the final SPA yesterday from prestige so I'm forwarding onto the Prime Minister for her signature. I apologize for the delay on behalf of Monidoldae. In the Updated SPA is the Delivery Schedule. This will be the fastest option on AstraZeneca arriving to Barbados. Please sign and send back immediately. Prestige will be in attendance for the arrival of vaccines to Barbados. Feel free to call immediately for questions.

Thank you,
Alex Moore


Sent from my iPhone

# EXHIBIT 19



**From:** **Scott Furssedonn-Wood (Sensitive)** scott.furssedonnwood@fcdo.gov.uk
**Subject:** RE: Barbados Request for Vaccines
**Date:** 14 July 2021 at 13:30
**To:** Olivia Watson oliviawatson.bgi@gmail.com
**Cc:** Craig Fulton (Sensitive) craig.fulton@fcdo.gov.uk

Dear Ms Watson,

Thank you for your email of 11 July regarding the potential purchase of Astra Zeneca vaccine by the Government of Barbados.

Unfortunately, Astra Zeneca have confirmed that they do not have any relationship with Serum Pharma Limited.  It should therefore be assumed that this is not a legitimate enquiry or opportunity.

In line with their commitment to supply COVID-19 vaccine broadly and equitably at no profit during the pandemic, AstraZeneca is  focused on delivering supply agreements through governments and COVAX and presently do not work with private sector distributors or intermediaries.   Therefore, any similar private offers such as this would also likely be counterfeit.

Astra Zeneca are continuing to look into this particular case and we will pass on further information and advice on any further steps as and when that is received from AZ.

Yours sincerely,
Scott Furssedonn-Wood

**Scott Furssedonn-Wood l British High Commissioner to Barbados & the Eastern Caribbean**
British High Commission | Lower Collymore Rock | Bridgetown
Tel +1 (246) 430-7801 | Mob +1 (246) 836 4869 | Scott.Furssedonnwood@fcdo.gov.uk
Personal Assistant: Keisha.Noel@fcdo.gov.uk

**From:** Olivia Watson <oliviawatson.bgi@gmail.com>
**Sent:** 11 July 2021 11:20
**To:** Scott Furssedonn-Wood (Sensitive) <Scott.FurssedonnWood@fco.gov.uk>;
keisha.noel@fcdo.gov.uk; Keisha Noel (Sensitive) <Keisha.Noel@fco.gov.uk>
**Subject:** Barbados Request for Vaccines

Dear Mr Furssedonn Wood

We hope this email finds you well.

We are authorised by the Government of Barbados to represent them in the purchase of AstraZeneca vaccines. Please see attached letters in this regard.

We would like to share the attached letter from Serum Pharma, a British company, which has represented the contents of same to the Government of Barbados.   We have been unable to obtain any comfort as to whether the letter from Serum is legitimate or whether Astra

Zeneca have in fact allocated the 1,000,000 does of the Astrazeneca Covid vaccines to Barbados, and the promised letter of allocation from Astra Zeneca has not been forthcoming.  In addition to the below, we have reached out to Astra Zeneca directly but have not received any response as yet.

As you would appreciate, obtaining these vaccines is critical for the Island and it is imperative that we are able to determine the status of the allocation and the timeframe for delivery to Barbados.  We are therefore seeking your assistance in making contact with Astra Zeneca to determine the veracity of the letter from Serum, the status of the allocation for Barbados and the likely delivery date for the vaccines.

Thank you.

Kind regards

Olivia Watson
Group Legal and ███████████
███████████████████
Skype: paris.bgi

NOTICE: This communication contains information which is confidential. If you are not the intended recipient of this communication, please delete and destroy all copies and notify the sender immediately. Any use of the information in this communication by unauthorised persons is strictly prohibited. If you are the intended recipient of this communication, you must not copy, disclose or distribute this communication without the sender's authority.

Follow us online: www.gov.uk/fcdo

This email is intended for the addressee(s) only: All messages sent and received by the Foreign, Commonwealth & Development Office may be monitored in line with relevant UK legislation

# EXHIBIT 20

Radical Investments Limited
20 Micoud Street
Castries
St. Lucia

AND

Good Vibrations Entertainment LLC
2219 Main Street
Santa Monica
CA 90405
United States

July 6, 2021

Davidovich Stein Law Group
6442 Coldwater Canyon Avenue
Suite 209
North Hollywood
California 91606
Attention: Mr Charles Z. Stein, Attorney-at-Law

Dear Sirs

<u>Re: Amendment to Escrow and Paymaster Agreement</u>

We refer to the Escrow and Paymaster Agreement dated as of April 16, 2021 among Radical Investments Limited, Good Vibrations Entertainment LLC and Davidovich Stein Law Group, LLC (as "Paymaster") (the "Paymaster Agreement"). All capitalized terms used herein and not otherwise defined shall bear the same meaning as in the Paymaster Agreement.

The transaction contemplated by the Purchase Agreement dated as of April 16, 2021 among Good Vibrations Entertainment LLC (as Seller) and Radical Investments Limited (as Buyer) (the "Purchase Agreement"), and to which the Paymaster Agreement relates (the "Transaction"), has not been completed. Accordingly the undersigned, being Mr Mark Maloney on behalf of Radical Investments Limited and Mr Alex Moore on behalf of Good Vibrations Entertainment LLC, have agreed to the following amendments to the Paymaster Agreement with immediate effect, which amendments shall be irrevocable:

1. The Balance of all sums received by the Paymaster from Radical Investments Limited and held in the IOLTA Account, being USD$5,475,000 (five million four hundred and seventy five thousand United States dollars) shall be returned forthwith to Radical Investments Limited in accordance with the payment instructions set forth in Exhibit A hereto (the "RIL Account") and evidence of same shall be provided to Radical Investments Limited immediately upon request.

2. The Paymaster shall notify Radical Investments Limited forthwith upon receipt by the Paymaster of any sums by way of a return or refund of sums previously paid out of the IOLTA Account in respect of the Transaction and shall pay such sums to Radical Investments Limited by way of transfer to the RIL Account forthwith.

3. The Paymaster shall forthwith provide any information relating to payments made out of the IOLTA Account, or funds returned to the Paymaster as aforesaid, as may be requested by either Radical Investments Limited or Good Vibrations Entertainment LLC.

Yours sincerely
**Radical Investments Limited**
Per:

Mark Maloney
Director

Yours sincerely
**Good Vibrations Entertainment LLC**
Per:

Alex Moore
CEO/Authorised Signatory

cc:     Professor Leonard Pertnoy
        Mr. Jonathan M Sutton, Attorney-at-Law

Exhibit A

Radical Investments Limited Payment Instructions (RIL Account)

PAYMENT INSTRUCTIONS:

| | |
|---|---|
| INTERMEDIARY BANK | BANK OF NEW YORK, WALL STREET, NEW YORK, USA |
| ABA# | ██████████ |
| SWIFT: | ██████████ |
| | |
| FOR CREDIT TO: | 1ST NATIONAL BANK ST LUCIA LIMITED CASTRIES, ST. LUCIA |
| SWIFT: | ██████████ |
| | |
| FOR FURTHER CREDIT TO: | RADICAL INVESTMENTS LTD., 20 MICOUD STREET, CASTRIES, ST. LUCIA |
| ACCOUNT NO: | ██████████ |
| TRANSIT NO: | ████5 |

# EXHIBIT 21

# RELEASE

THIS RELEASE ("Release") is being given and entered into by Radical Investments Limited ("Radical"), in favour of Charlie Stein, Esq. ("Stein" and collectively, the "Parties") as of July 9, 2021.

## 1. **RECITALS**

WHEREAS, Radical and Good Vibrations Entertainment LLC ("GVE") entered into a Sale and Purchase Agreement dated as of April 16, 2021 ("SPA") in respect of the sale and purchase of Astra Zeneca vaccines (the "Transaction") and an Escrow and Paymaster Agreement dated as of April 16, 2021 with Stein acting as the Escrow Agent for the SPA as set forth in the Escrow Agreement ("Escrow Agreement");

WHEREAS, Radical deposited USD$11,999,980 in Stein's IOLTA Account (as defined in the Escrow Agreement);

WHEREAS, Stein disbursed funds out of the IOLTA Account to parties including, without limitation, Alex Moore, GVE, Prestige Brands/ Moniladai Coley and RDS (the "IOLTA Recipients");

Radical alleges that
WHEREAS, GVE has not performed its obligations under the terms of the SPA and Radical has served notice of termination of same;

WHEREAS, Radical and GVE entered into an Amendment to Escrow Agreement as of July 6, 2021 pursuant to which Radical and GVE agreed that funds remaining in the IOLTA Account, together with any sums previously disbursed by Stein out of the IOLTA Account which are returned to Stein/the IOLTA Account, be returned to Radical forthwith;

WHEREAS, Stein has agreed to diligently pursue all persons to whom funds were disbursed to out of the IOLTA Account and to use its best endeavours to procure the return of all sums previously paid out in connection with the Transaction;

WHEREAS, Stein has agreed to provide to Radical such assistance as may be requested by Radical to facilitate Radical in pursuing all parties to whom sums were paid by Stein out of the IOLTA Account including the IOLTA Recipients;

NOW, THEREFORE, in consideration of mutual promises contained herein and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## 2. **TERMS OF AGREEMENT**

1.     Incorporation of Recitals. The Recitals found in Section 1 above are incorporated into this Release as if fully set forth herein.

2.     Settlement Terms.

a. Stein shall wire the balance of the funds in the IOLTA Account relating to the Transaction, being $5,474,830 to Radical within one (1) business day of mutual execution of this Release.

b. Stein shall use his best endeavours to pursue the IOLTA Recipients and all persons to whom funds were disbursed to out of the IOLTA Account in order to procure the return of all sums previously paid out in connection with the Transaction.

c. Stein shall provide to Radical such assistance as may be requested by Radical to allow Radical to pursue the IOLTA Recipients and all parties to whom sums were paid by Stein out of the IOLTA Account in connection with the Transaction.

d.  Stein shall provide such correspondence, documentation or other communication related to requests for disbursements out of the IOLTA Account or otherwise related to the Transaction together with evidence of all payments made, as Radical may request.

e.  Stein shall forthwith pay to Radical any sums which are returned to Stein/the IOLTA Account in respect of any repayment of sums previously disbursed by Stein out of the IOLTA Account to the IOLTA Recipients or otherwise in respect of the Transaction.

f.  Other than those obligations set forth hereinabove, Stein shall have no further obligations as set forth in the Escrow Agreement.

g.  Any action arising under this Release must be commenced within one (1) year after the cause of action accrues.

3.      RELEASE.

a.  Subject to compliance with Article 2, Radical hereby, releases, acquits and forever discharges Stein, Davidovich Stein Law Group, LLP, their parents, subsidiaries and affiliated corporations, and their respective successors, assignees, representatives, agents, shareholders, officers, directors, executives, members, attorneys, and employees, both current and former (collectively, the "Releasees") of and from any and all claims and causes of actions, known and unknown, from any and all claims and causes of actions that may exist between them including but not limited to any rights arising out of breach of contract, express or implied, any covenant of good faith and fair dealing, express or implied, or any tort, which each party at any time may have, own or hold, or claim to have, own or hold against each other. The Parties fully understand that in making a final and binding agreement at this time, they assume the risk of the existence of unknown injuries and the risk of future injuries arising from the Escrow Agreement.

b.  WAIVER OF CALIFORNIA CIVIL CODE SECTION 1542. Radical intends for this Release to serve as a full and final accord and satisfaction and release as to all claims as to Stein. In furtherance of this intention, and as further consideration for this Release, Radical expressly waive and relinquish all rights under Section 1542 of the California Civil Code as to Stein, which provides:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

c.  Accordingly, the releases given herein shall remain in effect notwithstanding the discovery or existence of any additional facts or claims in existence at the time this Release was executed.

d.  The settlement, releases and other matters set forth herein are a compromise and settlement of potentially disputed and contested claims between the Parties, and nothing contained herein shall be construed as an admission by any Party of any obligation and/or liability of any kind to any other Party.

4.      Representations

a.    Each Party represents and warrants that it is the sole owner of all rights, title and interests in and to the matters set forth above and claims settled under this Release and that they have not heretofore assigned, transferred or purported to assign and/or transfer to any person any matters, or portions thereof, settled and released under this Release

b.  Each of the Parties hereby represents and warrants that it has reviewed or had the opportunity to review this Release with its respective attorney, and if either party does not review with an attorney it is because that party has chosen not to; that it fully understands the terms contained herein, the waiver of §1542 of the California Civil Code; that it understands the significance of this Release; and that each of the Parties is relying fully on its own judgment and in doing so, accepts the stipulations and conditions set forth herein for the purposes of making a full and final compromise, adjustment and settlement of the claims and causes of action referred to herein.

c.  This Release constitutes a valid and binding obligation of each of the Parties, enforceable in accordance with its terms. This Release constitutes the entire agreement between the Parties concerning the subject matter

contained herein. No promise, inducement, or agreement not herein expressed has been made to any party, or his/her/its agents, servants, or employees, to induce acceptance of this Release.

5.       General

a.     This Release may be executed in one or more counterparts, all of which together shall constitute one and the same instrument, which shall be binding on all of the Parties hereto. Facsimile and/or electronic signatures shall have the same force and effect when affixed hereto as the original signatures.

b.  The language of this Release shall be construed as a whole, according to its fair meaning and intendment, regardless of who was principally responsible for drafting any specific term or condition hereof. This Release shall be deemed to have been drafted by all Parties, and no party shall argue otherwise.

c.  The Parties hereto agree that each party shall bear his own attorney's fees, expenses and costs incurred in connection with this Release. In the event that any party commences an action arising out of the breach of this Release, or to enforce or interpret this Release, the Parties agree that the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and expenses actually incurred with such action from the losing party or parties.

d.  This Release is made and entered into in the State of California and shall in all respects be interpreted and enforced by and under the laws of this state. The sole venue for adjudication of any dispute or claim arising out of or related to the matters set forth above and/or this Release shall be in a court of competent jurisdiction located within Los Angeles County.

e.  Whenever possible, each provision of this Release will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Release is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but such invalid, illegal or unenforceable provision will be reformed, construed and enforced in such jurisdiction so as to render it valid, legal, and enforceable consistent with the intent of the parties insofar as possible.

f.  This Release shall be admissible as evidence in any future action or proceeding.

g.  The failure of either party to enforce any provisions of this Release shall not be deemed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Release.

h.  The Parties hereto agree that this Release is confidential and that the terms of this Release will not be disclosed to any person that is not a party to this Release, unless expressly required by law provided, however, nothing shall preclude the disclosure of the terms hereof (i) to any legal, accounting or other professional advisor in connection with the obtaining of any professional advice; or (ii) in response to a subpoena or other legal process.

"Radical"                                                    "Stein"
RADICAL INVESTMENTS LIMITED          CHARLES Z. STEIN

By:   _____      By:   _____
Name:   Mark Maloney                              Name:   Charles Z. Stein
Title:   Director                                       Title:   Attorney-at-Law

# EXHIBIT 22

11:02

View all 9 comments

June 18

 **moniladai** ...





39 likes

**moniladai** So ICY ❄️.... ❤️🍥📣✨ #billionairebabe #maneent #leconsortium ##prestigebrandsglobal #mercedesbenz #louisvutton #california #LA... more

View all 3 comments

June 16

 **moniladai** ...



6:51

MONILADAI
**Posts**

Follow



moniladai

...

28 likes

**moniladai** #DIOGEYÉ #ROLLSROYCE #CULLINAN
#BILLIONAIREBABE #HOME #CITYOFANGELS
#NORWNTSL

June 18

   

6:51


MONILADAI
**Posts**

Follow

View 1 comment

July 11


moniladai                                    ...



♡ ⊙ ⩗                                        🔖

**72 likes**

**moniladai** ⬛ ✨ #billionairebabe #versace #cullinan #rolex #rollsroyce #werk #makingmogul #blessings #godisgood #la #nyc #paris #international #pbg #queen #APOC #PRESTIGEBRANDSGLOBAL #LECONSORTIUM

View all 5 comments

July 11


moniladai                                    ...

⌂          Q          ⊕          ♡          ⊚



28 likes

**moniladai** #DIOGEYÉ #ROLLSROYCE #CULLINAN
#BILLIONAIREBABE #HOME #CITYOFANGELS
#NORWNTSL

June 18

**moniladai**                                        ...



@**moniladai** 💙 i
literally love youuu

357 views

**moniladai** ❤️🎏✨👑 Queen Ish #billionairebabe

View all 9 comments

June 18

    



31 likes

**moniladai** #tour #life #apoc #leconsortium #pbg #maneent #billionairebabe My babies go with me wherever I go #jordan1 #jordan #music #love #laugh #live #blessings #mercedesbenz #sprinter #rolex #rolexdatejust

View all 2 comments

June 16

 **moniladai**                    ...



33 likes

**moniladai** @lodak_loso popping' bottles #RollsRoyce #Cullinan #littlebrother #mamabear #billionairebabe #apoc #pbg #ShowingOut #SundayFunDay #MakingMogul #YoungRich&Black #Laubade #Cognac #fyp #fypシ

June 13

 **moniladai**                    ...

    



50 likes

moniladai #Gucci everything ... #blessings #billionairebabe #apoc #prestigebrandsglobal #YoungRich&Black #YRB #MakingMogul #ManeEnt #LeConsortium #werk #DoEpicShit #goldenskin ✨ #fyp

View all 12 comments

June 13

moniladai

6:55

MONILADAI

**Posts**

Follow

moniladai

**153 likes**

**moniladai** Happy Days.... #RollsRoyce #Cullinan #MakingMogul #Billionairebabe #WomenDoItBetter #YoungRichandBlack #NoRental #cullinan #love... more

View all 36 comments

    

MONILADAI

Posts

Follow

83 likes

**moniladai** Me, God, The #RollsRoyce & #Jordans and YES I'm sleepy don't judge me I WERK!!! #BillionaireBabe #YoungRichANDBlack #yrb #makingmogul #womendoitbetter #blessings 🗣️ ✨ 🔥 #fyp #fypシ

View all 15 comments

June 11

    

6:55

MONILADAI
**Posts**

Follow



○ ○ ▽                                    ◻

**116 likes**

**moniladai** Blessings on Blessings.... #rollsroyce #cullinan
Finally some time to sleep .... then back to WERK 🙏 God
and the Universe for all my blessings #1 My Babies #2 LIFE
#3 LOVE....📢 ✨

View all 26 comments

June 11

⌂          ○          ⊕          ♡          ◎