UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

Case No.: 21-81761-CIV-CANNON

| | |
|---|---|
| RADICAL INVESTMENTS LTD., a Barbados Company, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| GOOD VIBRATIONS ENTERTAINMENT LLC, a Florida Corporation, et al., | ) ) ) ) ) |
| Defendants. | ) / |

**PLAINTIFF'S OPPOSITION TO STEIN DEFENDANTS' MOTION TO QUASH SERVICE OF SUMMONS AND DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

COMES NOW, Plaintiff, by and through the undersigned counsel, and files its Opposition and Incorporated Memorandum of Law to Defendants CHARLES Z. STEIN, ESQ. ("Stein") and Defendant DAVIDOVICH STEIN LAW GROUP, LLP ("DSLG" and, collectively with Stein the "Stein Defendants") Motion to Quash Service of Summons and Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction (DE #29) (the "Motion"), and states as follows:

I.     INTRODUCTION

In their Motion, the Stein Defendants have made various overtures to attempt to convince this Court that they are not subject to Personal Jurisdiction in Florida despite the fact that they: (1) were a member of a conspiracy that began in and has its roots firmly entrenched in the state of

Florida; (2) had systematic contacts with the main perpetrator of the conspiracy, Co-Defendant Alex Moore ("Moore"), the principal of co-Defendant Good Vibrations Entertainment, LLC, a Florida LLC ("GVE") via phone, text message, and e-mail correspondence; Moore was, at all times material to the allegations in the complaint, working and living in the state of Florida within this district; and, (3) the majority of the funds which were misappropriated by the Stein Defendants were wired to Moore via GVE, which again is an LLC duly organized under the laws of the State of Florida.

The Stein Defendants' motion makes the argument that they are not subject to the jurisdiction of this Court because they have not been to Florida, the Plaintiff is not from Florida, and because there is a settlement agreement between the Stein Defendants and Plaintiff which the Stein Defendants assert must be litigated in California. However, the Stein Defendants' argument does not match the well-settled case law in Florida that Florida courts may exercise personal jurisdiction under Florida's long arm statute over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state.

Plaintiffs have alleged in great detail the civil conspiracy in which all of the Defendants named in this matter partook and have included a vast array of documents evidencing same, which are attached as exhibits to Plaintiff's Amended Complaint. Plaintiff has also separately attached a declaration from Olivia Watson, the Legal and Commercial Director for Plaintiff, which details the events complained of as they unfolded between Plaintiff and the Defendants. Based upon the existence of this conspiracy, and the Stein Defendant's acts therein, it is crystal clear that the Stein Defendants are within the purview of this Court's jurisdiction.

## II.     Standard of Review

The issue of personal jurisdiction in this case involves a two-part analysis. *Advanced Bodycare Solutions LLC v. Thione Int'l, Inc.,* 514 F. Supp. 2d 1326, 1328 (S.D. Fla. 2007). First, the Court must decide whether Florida's Long Arm Statute reaches the Stein Defendants; then, the Court must decide if exercising jurisdiction over the Stein Defendants comports with constitutional due process requirements. *Id.* at 1329. Once Plaintiff has pled sufficiently to support the exercise of personal jurisdiction, the burden then shifts to the Stein Defendants to "challenge plaintiff's allegations by affidavits or other competent evidence," which then triggers a requirement that Plaintiff "substantiate the jurisdictional allegations by affidavits or other competent proofs." *Id.* Plaintiff has attached a Declaration separately to this Opposition and will set forth further competent proofs that this Court has jurisdiction over the Stein Defendants below.

## III.    ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A. THIS COURT HAS JURISDICTION OVER THE STEIN DEFENDANTS BECAUSE THEY ARE CO-CONSPIRATORS WITH OTHER FLORIDA ACTORS AND THEIR CONTACTS WITH FLORIDA WERE CONTINUOUS AND SYSTEMATIC

Defendants Moore and GVE, are, respectively, a Florida resident, and an LLC incorporated and existing under the laws of Florida (and the parties to which Stein was continuously interacting with). Stein's motion asserts that he was under the impression that Moore was a California person and that GVE was a California company. However, at all times material to this action, Moore was a resident of the state of Florida. Further, a search of the California Corporate Database reveals that there is not a "Good Vibrations Entertainment LLC" registered in the State of California. This will be discussed in greater detail below.

With respect to the civil conspiracy between the Defendants as alleged in Plaintiff's

Amended Complaint, the Stein Defendants undoubtedly played a critical role in the scheme to mislead and defraud Plaintiff out of millions of dollars, which Plaintiff had deposited with the Stein Defendants in order to procure vaccines for the nation of Barbados, and which were ultimately grossly misappropriated by Stein. Had Stein not transmitted nearly seven million dollars in unauthorized wire transfers, nearly two-thirds of which were sent to Moore via GVE, we would not be in front of this Court litigating this dispute. This, coupled with the fact that the Stein Defendants were continuously in contact with a Florida citizen and a Florida entity for months upon months in order to carry out this fraud, undoubtedly subjects the Stein Defendants to being hailed into a Florida Court. Thus, not only are the Stein Defendants co-conspirators in a fraud that originated and largely took place in the state of Florida, they also dealt directly with the a Florida person and LLC, both avenues of which independently would be sufficient to bring the Stein Defendants under this Court's jurisdiction.

## B. THE STEIN DEFENDANTS ARE WITHIN THE PURVIEW OF THE FLORIDA LONG ARM STATUTE

The Long Arm Statute reaches the Stein Defendants on several fronts, any one of which is, by itself, sufficient to confer jurisdiction. For instance, under § 48.193(1)(a), the Stein Defendants clearly have operated, conducted, engaged in, and/or carried on a business or business venture in Florida - providing the service of acting as an attorney/escrow agent in a transaction involving a Florida Citizen and a Florida LLC – a transaction for which Defendant Moore provided to Plaintiff an Agreement and escrow and paymaster agreement naming Stein as the escrow agent. Plaintiff deposited $12.2 million with the Stein Defendants, $10.2 million of which was to be used to purchase the vaccines, with $2 million payable to GVE upon delivery of the vaccines to Barbados. (*See* Amend. Compl. 31-38). It was at this point that Defendant Moore, while residing and operating in the state of Florida, provided Plaintiff's with a fake

AstraZeneca invoice to "prove" he could obtain the vaccines. (*See* Amend. Compl. 40-41). Plaintiff, at the time, did not realize the invoice was fraudulent. Only after receiving assurances from Moore's counsel, one of which was Defendant Stein, (on DSLG letterhead) in which Stein wrote that that evidence had been presented to him that GVE has been "involved in the medical supply and distribution business" and "has presented (Stein) with, among other things, contracts, irrevocable purchase orders, and letters of attestation from its distribution contacts supporting its involvement in this field", did Plaintiff move forward with the transaction (*See* Exhibit 4 to Plaintiff's Amend. Compl.). With the benefit of hindsight, Stein clearly was an advocate for the transaction to go forward, and materially was participating in the ongoing fraud and conspiracy against Plaintiff.

Despite clear instructions from Plaintiff to Stein to send the $10.2 million only to AstraZeneca or a qualified intermediary, Stein, for some reason which is yet to be fully ascertained, took it upon himself to wire nearly $6.7 million out of the escrow account, $4.2 million of which went to GVE. (*See* Amend. Compl. 43-48). Undoubtedly, the Stein Defendants were involved in a business venture in the state of Florida – they had sufficient enough contacts with a person and business in Florida to feel comfortable wiring $4.2 million. Defendants argue in their motion that the outgoing wire transfers which were made to GVE were to an account at a Bank of America in New York. (*See* the Motion at ¶ 18). However, this is a red herring. For example, an account holder at Bank of America who is a citizen of Florida could have funds wired to a Bank of America branch in Alaska but will still receive the benefit of the wire transfer all the same. Thus, the branch of the bank to which the wire transfer was sent has no bearing on this jurisdictional analysis and is entirely inconsequential.

More importantly, the Stein Defendants committed tortious acts in the state of Florida

which are sufficient to bring them into Court in this jurisdiction under § 48.193(1)(b), both through their direct communications with a Florida resident/the principal of a Florida company to effectuate the fraud, and through their role as a co-conspirator as an escrow agent gone bad who misappropriated millions of dollars in the Plaintiffs funds to the Stein Defendants fellow co-conspirators.

### i. The Stein Defendants Communications into Florida Subject them to Jurisdiction

The Stein Defendants communications via telephone, e-mail, and text message with Moore and GVE in Florida relating to the transaction and the underlying fraud brings them squarely within the reach of a Florida Court. This is true regardless of whether the Stein Defendants ever had a physical presence in Florida. *E.g., Wendt v. Horowitz,* 822 So. 2d 1252, 1253, 1260 (Fla. 2002). Physical presence in Florida is not required to meet § 48.193(1)(b); a "nonresident defendant's telephonic, electronic, or written communications into Florida" can bring that defendant under § 48.193(1)(b) provided that "the alleged cause of action arises from the communications." *Id.*

The Stein Defendants communications into the state of Florida have been duly pled throughout Plaintiff's Amended Complaint and are attached as multiple exhibits therewith. Stein routinely communicated with Moore in order to facilitate this fraud, as has been alleged and shown through Plaintiff's Amended Complaint and the exhibits thereto, and will be shown in further detail once discovery is permitted. Plaintiff has alleged that the Stein Defendants materially participated in the fraud by misappropriating millions of dollars in funds, the majority beneficiary of which was GVE and Moore, both Florida citizens (*supra* pp. 4-5 and the citations therein). The scheme to misappropriate $4.2 million to a person or company does not simply happen by chance or out of thin air; the Stein Defendants had to have extensively communicated

with Moore and GVE in order to facilitate this transaction and the underlying fraud.

As such, Plaintiff's claims against the Stein Defendants arise from their communications into Florida, which stem from their involvement in the transaction and the fraud which underlies it. Counts XII, XIII, XXVIII, XXIX of Plaintiff's Amended Complaint for fraud and negligence against the Stein Defendants arise from these communications; the fraud could not have committed without them. Further, Plaintiff's Count III for Civil Conspiracy against Defendants is centered around the fact that the Defendants acted in concert to continue along with a charade that they could source and deliver vaccines to the island of Barbados, despite the fact that they had no ability to do so (*See* Amend. Compl. 121-125). Clearly, the Stein Defendants could not have accomplished their role in the conspiracy as the unscrupulous paymaster, absent communications with Moore and GVE which were continuously transmitted through the state of Florida.

> ii. **The Stein Defendants Role as a Co-Conspirator Subjects them to the Courts of Florida**

Florida law recognizes that a defendant may also subject itself to jurisdiction under the Long Arm Statute by virtue of its role as a co-conspirator in a civil wrong with other Florida actors in the conspiracy. *Wilcox v. Stout,* 637 So.2d 335, 337 (Fla. 2d DCA 1994) (affirmed by *Execu-Tech Business Sys., Inc. v. New Oji Paper Co. Ltd,* 752 So. 2d 582, 586 (Fla. 2000)).

> Where [1] a civil conspiracy to commit tortious acts has been successfully alleged, and [2] some of those acts are alleged to have been accomplished within the state of Florida ... every act and declaration of each member of the conspiracy [are] the act and declaration of them all. Additionally, each conspirator is liable for and bound by the act and declaration of each and all of the conspirators done or made in furtherance of the conspiracy even if not present at the time. *Id.*

Further, the Eleventh Circuit has held that allegations of intentional torts support the exercise of personal jurisdiction over a nonresident defendant with no other contacts with the

forum. *PLAINTIFF Equitable Life Ins. Co. v. Infinity Financial Group, LLC,* 608 F.Supp.2d 1349, 1355 (2009) (quoting *Licciardello, 544 F3d* at 1285)).

Plaintiff's conspiracy count against the Stein Defendants satisfies the *Wilcox* test and, thus, brings the Stein Defendants under the jurisdiction of this Court. First, Plaintiff has successfully alleged a civil conspiracy in Count III, the elements of which are "(a) Conspiracy between two or more parties, (b) To do an unlawful act or to do a lawful act by unlawful means, (c) The doing of some overt act in pursuance of the conspiracy, and (d) Damages to plaintiff as a result of the acts done under the conspiracy." *Primerica Fin. Servs., Inc. v. Mitchell,* 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999). Although the conspiracy is intricate and has lots of moving parts and parties, the Stein Defendants' substantial role in the conspiracy is undoubtedly pled with enough sufficiency and specificity for them to be "put on notice as to the nature of the conspiracy alleged" and Plaintiff has provided some factual basis for the legal conclusion that a conspiracy existed in its pleadings and the exhibits filed along with it.

As for the conspiratorial agreement, Plaintiff sufficiently has identified the nature of the agreement and specified all of its participants. While Plaintiff cannot be entirely sure *exactly* to what extent Defendants communicated with one another, the general purpose of their conspiracy is made clear by Plaintiff's Amended Complaint and its attachments: The Defendants conspired with one another to mislead and defraud Plaintiff out of millions of dollars that Plaintiff intended to be used to obtain vaccines. Instead, the misappropriated funds have been given to the Defendants family members, used to purchase luxury items and vehicles, and sent off to a shipping company in Dubai that was never actually used or needed. (*See* Amend. Compl. 83-84), *see JES Properties, Inc. v. USA Equestrian, Inc.,* 253 F. Supp. 2d 1273, 1279 (M.D.Fla. 2003) ("It is only in rare cases that a plaintiff can establish a conspiracy by showing an express agreement. Most conspiracies are

inferred from the behavior of the alleged conspirators."); *Mitchell,* 48 F. Supp. 2d at 1369 (rejecting defendant's contention that heightened detail is necessary for alleging conspiratorial agreement and deeming agreement element met upon naming of alleged conspirators).

The multiple unlawful acts underlying the conspiracy include the numerous fraudulent misrepresentations and nefarious activities pled (*e.g.,* Amend. Compl. 40-41, 43-48, 57, 62-65, 68-76). Specifically, as to the Stein Defendants, their overt acts include their communications into Florida regarding the transaction and the fraudulent wire transfers, their contacts with Moore and GVE, who again were based out of Florida, their actual transmission of funds to GVE/Moore via wire transfer, the sending of e-mails and text messages to persons/entities in the state of Florida where the "mastermind" of the conspiracy, Defendant Alex Moore, resided and operated, and any other systematic communications yet to be unveiled in discovery. (*E.g.,* Amend. Compl. 42, 45-46 49-55). Plaintiff's damages are also clearly pled throughout Plaintiff's Amended Complaint.

Part two of the *Wilcox* test is met in that, to the extent that some of the Stein Defendants' overt acts were done outside of Florida, plenty of the overt acts of other conspirators like Moore and his Florida-based corporation, GVE, took place in or were transmitted to/from the state of Florida. (*E.g.,* Amend. Compl. ¶¶ 27-29, 31, 40-41, 45-46, 56-58, 68-77, 84). In fact, the genesis of this entire action was in Florida in this very district, when at the outset of the events Plaintiff has complained of, Cheryl Chamley, a South Florida resident, assisted Plaintiff with establishing a connection with Moore and GVE to facilitate the transaction for the vaccines. *(*Amend. Compl. ¶ 27). Simply put, this entire conspiracy began and ran through the state of Florida, and the main conspirator and his LLC were based here.

As such, "every act and declaration" of Moore and Good Vibrations that took place in Florida are "the act and declaration of" all other conspirators, including the Stein Defendants, for

which the Stein Defendants are liable "even if not present at the time." *Wilcox,* 637 So. 2d at 337. Accordingly, Fla. Stat. § 48.193(1)(b) is satisfied as to the Stein Defendants.

There exists a long line of case law in this district which establishes that co-conspirators without any other contacts to the forum can in fact be hailed into Florida Courts. The first of which is *AXA Equitable Life Insurance Co. v. Infinity Financial Group, LLC, et al.,* 608 F.Supp.2d 1349 (S.D. Fla. 2009). In the *AXA* case, one of the Defendants filed a very similar Motion to Dismiss as the Stein Defendants have for lack of Personal Jurisdiction, arguing that they, as a Delaware entity, did not have sufficient contacts to Florida. *Id.* at 1354. The Plaintiff in the *AXA* case alleged that the Delaware Defendants were part of a conspiracy with others which was carried out in the state of Florida. The Court ultimately held that Florida Courts may exercise personal jurisdiction pursuant to Florida's long arm statute over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state. *Id. See* Order in *AXA* case denying Defendant's Motion to Dismiss for Lack of Personal Jurisdiction attached as **Exhibit A.**

A 2011 case furthered this Court's sentiment on this issue and is even more relevant to Plaintiff's analysis than the *AXA* case. In *Energy Source, Inc. and RMS Oil and Gas LLC v. Gleeko Properties LLC, et. al.,* 2011 WL 3236047 (S.D. Fla. 2011), one of the Defendants was actually tasked with acting as an escrow agent for the Plaintiff's funds in a sugar deal with a foreign sugar company. The Plaintiffs needed to provide a security deposit to the seller of the sugar and place funds into escrow. One of the Defendants offered to, and ultimately did connect the Plaintiff with parties who would, in exchange for a procurement fee, secure the bank guarantee for them. The Defendant who held the escrowed funds ultimately misappropriated the monies with which they were so entrusted. *Id.* at *1. The complaint alleged in large part that the Defendants had conspired with one another to obtain and unlawfully retain Plaintiff's funds. Two of the Defendants were

citizens of the State of Florida. *Id.* at *6.

Two of the other Defendants were a Virginia based person and a Virginia LLC, which both moved to dismiss Plaintiff's complaint under F.R.C.P. 12 (b)(2) just as the Stein Defendants have, arguing that there is a lack of personal jurisdiction over them because they are non-Florida parties with no other contacts to Florida. *Id.* at *2.

However, just like in *AXA*, the Court ultimately held that:

> For the purpose of § 48.193(1)(b), the defendant does not have to be physically present in Florida and a defendant can commit the tortious act based on telephonic, electronic, or written communications into Florida so long as the cause of action arises from those communications. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla.2002); *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1296 (11th Cir.2009); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F.Supp.2d 1213, 1222–23 (S.D.Fla.2009). *Id.* at *5.

Ultimately, the Court in *Energy Source* denied the Defendants Motion to Dismiss for Lack of Personal Jurisdiction. *See* Order Denying Motion to Dismiss for Lack of Personal Jurisdiction attached as **Exhibit B**. Clearly, the cause of action with respect to the Stein Defendants arose from their telephonic, electronic and/or written communications with Moore and GVE while Moore was in the State of Florida. Stein cannot credibly assert that he sent $4.2 million to Moore and GVE without any form of prior communication. This was clearly a concerted effort between the Stein Defendants and Moore/GVE who again, at all times material, were operating in the State of Florida.

Given the page constraints of this Opposition, Plaintiff will briefly touch on two more recent cases in which this sentiment of bringing in out-of-state bad actors who participated in a civil conspiracy was discussed by the Courts of Florida. In the case of *Universal Physicians Services LLC v. Del Zotto,* W.L. 11016112 (M.D. Fla 2017), the Court denied a Motion to Dismiss for Lack of Personal Jurisdiction for the same general reasons as the previously cited cases. The

Court discussed in pertinent part:

> Significantly, "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Technologies v. Mazer*, 556 F.3d 1260, 1281-82 (11th Cir. 2009); *AXA Equitable Life Ins. Co., v. Infinity Fin. Group, L.L.C.*, 608 F.Supp. 2d 1349, 1353 (S.D. Fla. 2009)("Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida.") (citing *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 734–36 (Fla. 3d DCA 2006) (holding that if a plaintiff successfully alleges that any member of conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction) *Id.* at *4.

*See* Order denying Defendants Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) in the *Universal Physicians* case attached as **Exhibit C.** Lastly, Plaintiffs point this Court to another case from the Middle District, *Wyndham Vacation Ownership Inc. v. Montgomery Law Firm, LLC, et al.* WL 5394186 (M.D. Fla. 2019). In *Wyndham*, the Defendants were based out of Missouri, and Plaintiffs had alleged that the Defendants had participated in, among other counts, a civil conspiracy which harmed Plaintiff's businesses and relationships with timeshare owners. Defendants, who again were based out of Missouri and did not have substantial contacts with Florida, moved to dismiss the case for lack of Personal Jurisdiction. *Id.* at *1. Similarly to the aforementioned cases, the court denied the Motion to Dismiss for Lack of Personal Jurisdiction and stated:

> …Movants "cannot defeat personal jurisdiction based on tortious conduct by filing an affidavit that attests [Movants have] not conducted business in Florida and [do] not have any business contacts in the State." *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544-Orl-22KRS, 2018 WL 7364591, at *7 (M.D. Fla. Sept. 26, 2018) (collecting cases); *see also Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 F. App'x 741 (11th Cir. 2006) (explaining that "conclusory assertions that the defendant is not subject to jurisdiction" are insufficient to shift the burden back to the plaintiff to submit evidence in support of jurisdiction). *Id* at *6.

*See* Order Denying Motion to Dismiss for Lack of Personal Jurisdiction in the *Wyndham* case attached as **Exhibit D.** There are numerous other cases which stand for this proposition that so long as a Defendant is a member of a conspiracy that committed tortious actions in the state of Florida, and so long as due process is satisfied, a Defendant cannot simply throw up it hands and say that because they have no connection to Florida that they cannot be hailed into court here. To do so would fly directly in the face of the long-running precedent established in this district.

### iii. THE STEIN DEFENDANTS CONTACTS WITH FLORIDA SATISFY DUE PROCESS REQUIREMENTS

Although the Stein Defendants are feigning exasperation at the thought of an action being brought against them in the state of Florida, it is clear from the plain reading of the statute, along with the aforementioned case law, that the long arm statute confers jurisdiction in Florida over the Stein Defendants. However, the Court must also satisfy itself that exercising jurisdiction over the Stein Defendants comports with the constitutional due process requirements that they have "certain minimum contacts with [Florida] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Execu-Tech,* 752 So. 2d at 584. The "minimum contacts" requirement is met if, (1) the contacts are related to the causes of action, (2) the Stein Defendants by some act purposefully availed themselves of the privilege of conducting business in Florida, and (3) the contacts are such that the Stein Defendants could reasonably anticipate being hailed into court in Florida. *Smolinski and Assocs., Inc. v. Continental Airlines, Inc.,* 2000 WL 1100106, *2 (S.D. Fla. 2000).

As set out in detail above, the Stein Defendants had direct and extensive contacts with the actors at the center of the conspiracy, Moore and GVE. Moore was living and operating in the state of Florida as the conspiracy to misappropriate Plaintiff's funds was being carried out, and GVE is a Florida LLC organized under the laws of the State of Florida with its principal place of

business and mailing address in this very district, Palm Beach County, Florida. It's registered agent, Nicole Hermanson, is listed at an address in Palm Beach County, Florida. And as already established, and in contravention to what the Stein Defendants set forth in their Motion to Dismiss, there is no Good Vibrations Entertainment, LLC registered in the state of California. Thus, the Stein Defendants are either being untruthful in their belief that Moore and his company were a California LLC, or they did not do even the smallest amount of due diligence.

Even further still, the Stein Defendants had such extensive contact with Florida through Moore and GVE in effectuating the fraud that the Stein Defendants cannot claim to be so removed from Florida so as not to have reasonably contemplated being hailed into court on the matters set forth in Plaintiff's Amended Complaint. The Stein Defendants took great steps in furtherance of the conspiracy, including the misappropriation of nearly $6.7 million of Plaintiff's funds, the bulk of which reached a co-conspirator based out of the state of Florida.

Factors affecting the "fair play and substantial justice" requirement are (1) the burden of defending the suit in Florida, (2) Florida's interest in adjudicating the suit, (3) Plaintiff's interest in obtaining relief, (4) interests of and efficiency in the interstate judicial system, and (5) "interests of the states in furthering shared substantive policies." *Posner,* 178 F.3d at 1221. These factors weigh toward jurisdiction:

Any burden on the Stein Defendants "is mitigated by modern methods of transportation and communication' ... as well as by the fact that the [Stein Defendants] clearly have more than isolated contacts with Florida," *id.* Given the ongoing Covid-19 pandemic and courts almost universally affording litigants the right to conduct hearings, depositions, settlement conferences, mediations, etc. via video teleconferencing software, the burden on Defendants of defending this case in Florida is minimal, at best.

Florida has a significant interest in adjudicating this suit as it is a fraud which was perpetrated within its borders. Florida is a state which has long been on the forefront of holding those accountable who commit tortious acts within the state, especially in South Florida. Further, Plaintiff's interest in obtaining relief in a single forum is paramount to the reason Plaintiff chose the state of Florida in which to file suit: this is a case involving a foreign Plaintiff with Defendants that are based out of Florida, California, and Colorado. It would be more difficult for Plaintiff to hail the Defendants into court elsewhere given that the hub of the fraud in which they participated was located in Florida. If this Court was to look at the most appropriate forum for this matter to proceed, it is undoubtedly Florida. The fraud began in Florida in Palm Beach County, Plaintiff was under the impression that it was dealing with a Florida actor in Defendant Moore, who was the centerpiece of the fraud, and the bulk of the misappropriated funds benefitted Defendant Moore and GVE, who were based out of Palm Beach County, Florida.

Lastly, other States would not be harmed by Florida's courts hearing this suit and, for the reasons stated above and the intricate nature of the fraud itself and its implications of widely held public policy, it would be imminently efficient to proceed in this Court. As such, the due process considerations only bolster the propriety of this Court's jurisdiction over the Stein Defendants.

### C. THE MOTION TO DISMISS RAISES ISSUES THAT WARRANT JURISDICTIONAL DISCOVERY.

To the extent the Court is not satisfied of the propriety of its jurisdiction over the Stein Defendants, Plaintiff respectfully submits that it has demonstrated, both through its allegations and through evidence, a good faith basis on which to conduct jurisdictional discovery to obtain information now exclusively within the possession of the Stein Defendants bearing directly on the nature and extent of their contacts with Florida. *See, e.g., Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 2008 U.S. Dist. LEXIS 30952, *2-*5 (S.D. Fla., April 15, 2008).

"Eleventh Circuit precedent indicates that jurisdictional discovery is highly favored before resolving ... motions to dismiss for want of personal jurisdiction." *Id.* at \*3; *see also id.* at \*4 (recognizing that, "plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction" (citation omitted)); *Miller v. Toyota Motor Corp., et al.,* 2008 U.S. Dist. LEXIS 33197, \*4 (M.D. Fla., April 22, 2008) (noting that, if plaintiff were required to meet jurisdictional showings as threshold for jurisdictional discovery, "jurisdictional discovery would be useless because the plaintiff would already have established personal jurisdiction"). This inquiry should be satisfied before even reaching the Stein Defendants') arguments. *Sierra Equity Group,* 2008 U.S. Dist. LEXIS 30952, \*6. Accordingly, Plaintiff respectfully moves this Court for an opportunity to conduct jurisdictional discovery to the extent the Court is not satisfied that it has jurisdiction over the Stein Defendants.

### D. STEIN'S SETTLEMENT AGREEMENT IS VOID BASED ON CALIFORNIA LAW AND HIS CONDUCT

The Stein Defendants have argued in their Motion that per the terms of the escrow agreement, the parties selected California law to resolve any disputes stemming from the escrow agreement, and the settlement agreement between Stein and Plaintiff also selects California as the venue of choice in which a dispute should be litigated. Plaintiff does not dispute what these documents state. However, the Stein Defendants conveniently gloss over simple fact that both the escrow agreement as well as the settlement agreement have been unequivocally breached by Stein, rendering them both invalid and void based on Stein's conduct.

Per the terms of the Settlement agreement, there were numerous conditions precedent to said agreement which Stein has not undertaken in any way, shape or form to this point. The agreement reads that Stein shall use his best endeavors to pursue the recipients of the funds which he misappropriated and shall provide to Plaintiff any such assistance as may be requested. Stein

also was supposed to provide correspondence, documentation, and other communications related to requests for disbursements out of his trust account or otherwise related to the transaction.

To date, exactly none of this has been done. Stein has not assisted in any meaningful way with the recoveries of the funds which he misappropriated and has done absolutely nothing to assist Plaintiff at all, in direct breach of the settlement agreement's plain terms. Further, as discussed in Plaintiff's Amended Complaint, Stein has not been forthcoming with providing correspondence and communications he had with his co-Defendants related to the disbursement of monies as described herein. Simply put, Stein has done nothing whatsoever to aid RIL in the recovery of the monies that Stein so grossly misappropriated.

Again, Plaintiffs do not dispute that the escrow and settlement agreements with the Stein Defendants state that they shall be interpreted and enforced under the laws of California. However, if one looks to California law, California has very stringent laws designed to protect the public and businesses from unfair, deceptive, or fraudulent business practices. California Civil Code § 1668, reads: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law". *See* Cal. Civ. Code. § 1668. Stein's release is exactly what this statute is contemplating: a party attempting to contract his way out of his own fraud and violations of law. It is crystal clear that Stein's attempt to obtain a release for his actions is improper under California law. This is coupled with the objective fact that Stein did not comply with the explicit terms of the settlement agreement, which Plaintiff was in effect forced to sign in order to receive a portion of its misappropriated funds back, because Stein would not release the funds without a signed release from Plaintiff. Plaintiff, under the duress and fear of losing even more of its funds, entered into this settlement agreement with Stein to recover its own

funds which Stein was entrusted with and which Stein fraudulently disbursed to his co-conspirators. Thus, it is clear that Stein violated both California law and the provisions of both the escrow and settlement agreements, thereby rendering them invalid and unenforceable.

### E. CONCLUSION

The fraudulent scheme that Plaintiff has alleged and will continue to prove, is far-reaching and contains many different moving parts that, while not all physically located in Florida, are inextricably connected and jurisdictionally linked to Florida. The Stein Defendants, who served as the paymaster and escrow agent entrusted with the funds at the center of this litigation, are a critical center piece to the fraud. Moreover, Plaintiff has taken great care in its First Amended Complaint to detail the unique nature of fraud in general and has to set out facts that support the existence of such a scheme; a scheme that had its hub in Florida with the many participating spokes joining the hub with Florida at its center.

Given the depth of the Stein Defendants involvement with the scheme here alleged, any argument by the Stein Defendants that they are jurisdictionally isolated from Florida simply is not credible.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter an order denying in full the Stein Defendants' Motion, or, in the alternative, granting Plaintiff leave to conduct limited jurisdictional discovery on the issues raised before ruling on the Motion.

**Dated: January 24, 2022**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via E-Filing on all counsel of record this 24th day of January, 2022.

Respectfully submitted,

VAZQUEZ & ASSOCIATES
*Attorney for Plaintiff*
1111 Brickell Avenue Suite 1550
Miami, Florida 33131
Telephone (305) 371-8064
Facsimile (305) 371-4967

By:     */s/ Gerardo A. Vazquez*
         **GERARDO A. VAZQUEZ, ESQ.**
         Florida Bar No.: 06904
         GV@GVazquez.com
         **RALPH R. LONGO IV, ESQ.**
         Florida Bar No.: 124169
         RL@GVazquez.com