UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

Case No.: 21-81761-CIV-CANNON

RADICAL INVESTMENTS LTD., )
a Barbados Company, )
)
)
)
)
      Plaintiff, )
)
      v. )
)
GOOD VIBRATIONS ENTERTAINMENT )
LLC, a Florida Limited Liability Company, )
et al., )
)
)
)
      Defendants. )
      /

## DECLARATION OF OLIVIA WATSON

**BEFORE ME**, on this day personally appeared **OLIVIA WATSON** known to me to be the person whose name is subscribed hereto below, and after being duly sworn did state the following:

1. My name is Olivia Watson, I am over the age of eighteen years old and the following is based on my own personal knowledge and as the person most knowledgeable with respect to the following.

2. This affidavit is signed and executed with respect to the events which preceded the filing of the above-captioned case.

3. I am the Legal and Commercial Director of a group of companies including Radical Investments Ltd. ("RIL"), the Plaintiff in the above-captioned matter.

4. On or around late March/early April 2021, Mr. Mark Maloney, the principal of RIL was introduced to a Mr. Alex Moore ("Moore") via a Cheryl Chamley. Ms. Chamley, was at all times material, to the best of my knowledge, a South Florida resident, and had contacts with Moore in Florida.

5. Ms. Chamley assisted RIL with facilitating a transaction between RIL and Mr. Moore's company, Good Vibrations Entertainment, LLC ("GVE"), which, to the best of my knowledge, is a Florida Limited Liability Company.

6. To the best of my knowledge, at the time that Moore was introduced to RIL, Moore was living and operating in the Boca Raton, Florida area.

7. The country of Barbados was seeking COVID-19 vaccines for its citizens but was struggling to obtain them. RIL was authorized by the Barbadian government to procure vaccines on its behalf.

8. Moore purported to have the connections to source and deliver vaccines to the country of Barbados. After some discussion, Moore provided RIL a purchase and sale agreement, naming an attorney, Charles Z. Stein, Esq. ("Stein") as the escrow agent/paymaster.

9. The terms of the purchase and sale agreement were to be $10.2 million for the vaccines, with a $2 million commission payable to GVE upon the physical delivery of the vaccines to Barbados. The total sum of $12.2 million was deposited into Stein's escrow account.

10. RIL sought to obtain an AstraZeneca invoice from Moore as a condition precedent to release the funds which were placed into escrow. Moore provided RIL with a heavily redacted AstraZeneca invoice, which now appears to have been fraudulent.

11. On or about April 27, 2021, two letters were sent to RIL, one from Stein which was written on Moore's behalf. Stein's letter was written on his law firm, Davidovich Stein Law Group's letterhead, and stated that based upon evidence presented to Stein, which included the contracts for the right to sell AstraZeneca, irrevocable purchases orders, and letters of attestation, that GVE had been involved in the medical supply and distribution business and had negotiated contracts to sell AstraZeneca products.

12. The letters referenced in paragraph 11 of this Affidavit written on Moore's behalf satisfied RIL, and RIL executed a release for the purchase price of $10.2 million, which was to be payable to either AstraZeneca directly, or to a qualified intermediary authorized to procure the vaccines and as identified in the release. RIL did not authorize any other disbursement of the escrowed funds.

13. On or about April 27, 2021 and May 3, 2021, as confirmed by Stein, Stein made the following wire transfers in direct violation of the escrow and paymaster agreement: $4.2 million total to Moore via GVE in two separate wire transfers, $2 million to Prestige Pegasus LLC, a supposed qualified intermediary and a co-conspirator of Moore and Stein and their co-Defendant in the above-captioned case, and $485,000 to RDS Freight, a foreign freight company.

14. At the time the wires referenced in paragraph 13 of this Affidavit were transmitted, to the best of my knowledge, Moore, the principal of GVE, was living and operating in or around the Boca Raton, Florida area.

15. The total amount disbursed by Stein was in the amount of $6,685,000. These transfers were in direct violation of his duties as the escrow agent.

16. While on a WhatsApp group message with both Stein and Moore, who again to the best of my knowledge was living and operating out of Florida, I asked Stein to provide a wire confirmation

of what he had sent out. Stein repeatedly balked at my question and told me he could not provide confirmation and that my request was outside the scope of his duties as paymaster. Moore responded in this very same WhatsApp chat that the funds had been sent to co-Defendant Prestige Pegasus and that he was speaking to AstraZeneca.

17. On or about May 28, 2021, RIL grew frustrated with the lack of progress and attempted to terminate the transaction. RIL issued a notice of its intent to terminate and demanded in a letter to Stein that RIL either required the veracity of the vaccines it was seeking to be confirmed, or, in the alternative, that it wanted its $12.2 million returned. RIL did not know at this time that the funds it had entrusted with Stein had been largely misappropriated.

18. Stein responded to this May 28 letter by saying that the only amount he could return to RIL would be $2 million which was to be paid as a commission to GVE upon receipt of the vaccines by RIL. Stein made no reference to his misappropriation of nearly $6.7 million of RIL's funds.

19. On June 25, 2021, RIL offered a compromise where it would contract with a company called Serum Pharma to source and deliver the vaccines, and pay Moore a commission upon delivery. This new agreement would be for $14.3 million. To the best of my knowledge, at this time Moore was still living and operating in the state of Florida. This June 25 agreement ultimately went nowhere, as Serum Pharma could not source the vaccines.

20. Despite this new June 25 agreement, on July 2, 2021, Moore wrote directly to the Prime Minister of Barbados and attached a purchase and sale agreement for vaccines in the amount of $23 million, with Serum Pharma as the intermediary to procure the vaccines. Serum Pharma disavowed any knowledge of this agreement and told RIL that it was fraudulent and being used for nefarious purposes.

21. After these repeated setbacks, RIL decided to terminate the transaction and once again sought a return of its funds.

22. Stein maintained that in order to remit any funds to RIL he would require instructions from both Moore and RIL. Accordingly an agreement was prepared and signed by both Moore and RIL directing Stein to release the balance of the funds held to RIL.

23. Rather than acting in accordance with the joint instructions of RIL and Moore, Stein provided a revised agreement which included an extensive release from RIL in favour of, *inter alios*, Stein and his law firm. I responded that this was not something we were in a position to do given the circumstances and again requested the funds be returned forthwith. Stein, however, refused to release the funds without a signed release from RIL. Ultimately, in order to recover its own funds, RIL was forced to enter into an agreement with Stein in which Stein would return the remaining funds from his trust account that were not misappropriated, totaling $5.475 million, in exchange for a release for his wrongdoing.

24. Per the terms of this release, Stein was obligated to diligently assist RIL and pursue the recipients of the funds which he had so grossly misappropriated.

25. To date, Stein has not assisted RIL in any meaningful way with the recovery of the nearly $6.7 million that he misappropriated, in direct breach of the settlement agreement.

26. To the best of my knowledge, Stein engaged in repeated communications with Moore via e-mail, text message, and telephone, during the entirety of which Moore was living and operating in the state of Florida.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on <u>        January 24        </u>, 2022.**

_____
MS. OLIVIA WATSON