# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-80611-CIV-HURLEY/HOPKINS

AXA EQUITABLE LIFE
INSURANCE COMPANY,

     **Plaintiff,**

v.

INFINITY FINANCIAL GROUP, LLC, et al.,

     **Defendants.**

_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

     **THIS CAUSE** comes before the court upon the motion of defendants Harlan Altman Trust Dated September 1, 2006, Walter Glass 2006 Insurance Trust Dated September 1, 2006, Carol Sciolino 2006 Life Insurance Trust Dated December 16, 2006, Kristine M. Neuhauser and NatCity Trust Company of Delaware (the "Delaware Trust Defendants") to dismiss the complaint [DE # 56]. For the reasons given below, the court will deny defendants' motion.

### BACKGROUND

     This is a suit for rescission of several insurance policies pursuant to the Florida Insurance Code, and alleging claims of fraud and negligence. The complaint alleges that the defendants collaborated in a scheme to recruit elderly applicants for life insurance policies with large face amounts. According to the complaint, the policies were never meant to be retained by the insured or their family members; rather, from the outset the policies insuring the lives of the applicants were to be paid for and held by outside investors, in violation of state law. The complaint alleges that this was accomplished by making material misrepresentations to the issuer of the policies, plaintiff Axa Equitable Life Insurance Co., and by creating trusts to hold the insurance policies in order to disguise

the policies' true ownership.  Three of those trusts were organized in Delaware, and their trustees are citizens of Delaware as well.  They comprise the group of defendants who filed the instant motion to dismiss.

### JURISDICTION

This court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to plaintiff's claim occurred in the Southern District of Florida.

### DISCUSSION

#### A.     Standard on Motion to Dismiss

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *Id.*  On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986).  The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).  Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law.  *See Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

#### B.     Defendants' Motion to Dismiss

2

1.    *Personal Jurisdiction*

The Delaware Trust Defendants first argue that they must be dismissed from this action because the court lacks personal jurisdiction over them.

When sitting in diversity, a federal court must undertake a two-step process in determining whether personal jurisdiction exists.  The court must determine whether: (1) jurisdiction over the defendant is conferred by the state long-arm statute; and, if so, whether (2) the exercise of jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment.  *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

A Florida court has specific personal jurisdiction over a non-resident of Florida to determine a cause of action arising from the non-resident's commission of a tortious act in Florida.  *See* Fla. Stat. § 48.193(1)(b).  The Florida Supreme Court has held that, for purposes of the long-arm statute, a non-resident may commit a tortious act in Florida "through the nonresident defendant's telephonic, electronic, or written communications into Florida."  *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002).  Federal courts, including the Eleventh Circuit Court of Appeals, have acknowledged and applied the Florida Supreme Court's holding in *Wendt*.  *See Internet Solutions Corp. v. Marshall*, – F.3d –, 2009 WL 311301 at *2 (11th Cir. 2009); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1168 (11th Cir. 2005).

Kristine M. Neuhauser, formerly an employee of NatCity Trust Company of Delaware, the trustee of the three Delaware Trusts, submitted an affidavit stating that no telephonic, written, or electronic communications were transmitted to anyone in Florida in relation to the three life insurance policies housed by the trusts.  Neuhauser Aff. ¶ 6.  This affidavit evidence in opposition to personal jurisdiction shifts the burden back to the plaintiff to produce evidence in favor of

3

jurisdiction.  *See Mazer*, 556 F.3d at 1274, 1277; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268 (11th Cir. 2002).

Here, the court concludes plaintiff has not met its burden in this regard.  One of the insureds, Carol Sciolino, is a resident of Boynton Beach, Florida.  Sciolino submitted a sworn statement describing her recruitment by Brasner, and her understanding that the premiums were to be financed by third parties, and that she would immediately assign the policy to a third party in exchange for a fee.  *See* DE 96-3.  But neither the Sciolino statement, nor any other evidence submitted by plaintiff, identifies any specific communications made between the Delaware Trust Defendants and any person or entity in Florida.  Thus plaintiff has not rebutted the evidence submitted by the Delaware Trust Defendants, in the form of the Neuhauser affidavit, that there were no such communications.

However, this is not the end of the analysis.  Plaintiff has also alleged that the Delaware Trust Defendants are liable for engaging in a civil conspiracy with the other defendants in the case.  *See* Am. Compl. ¶ 125-132.  Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida.  *See Machtinger v. Inertial Airline Services, Inc.*, 937 So.2d 730, 734-36 (Fla. 3d DCA 2006); *Wilcox v. Stout*, 637 So.2d 335, 336 (Fla. 2d DCA 1994).  Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state.  *See Mazer*, 556 F.3d at 1281-82.

In this case, the complaint as a whole describes a large conspiracy to fraudulently cause plaintiff to issue several life insurance policies based on material misinformation.  The majority of the defendants, including Brasner, Kevin H. Bechtel, and Gary Richardson, and at least two of the

insured, Harlan Altman and Carol Sciolino, are alleged to be citizens of Florida.  *See* Am. Compl. ¶ 11, 12, 18, 21.  The entities controlled by Brasner are also alleged to be Florida residents.  *See id.* ¶ 6-9.  One of the insurance policies alleged to be fraudulently obtained was issued to Sciolino at her residence in Florida.  *See* DE # 96-5.  Thus, the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida.  Florida's long-arm statute therefore reaches all participants in that conspiracy, even those not otherwise connected to Florida, such as the Delaware Trust Defendants.  *Cf. Arch Aluminum & Glass Co. v. Haney*, 964 So.2d 228, 234-35 (Fla. 4th DCA 2007) (finding personal jurisdiction not supported because "the tort did not occur in Florida, and *neither did the conspiracy*) (emphasis added).

The court is further satisfied that exercise of personal jurisdiction over the Delaware Trust Defendants would not be contrary to the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The Delaware Trust Defendants may not be sued in Florida unless their contacts with the state are such that they had "fair warning" that they could be subject to suit in Florida.  *See Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008).  The Delaware Trust Defendants must have been reasonably able to anticipate being sued in a Florida court.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  The exercise of jurisdiction must be consistent with "fair play and substantial justice," as determined in light of factors such as the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute.  *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

The Eleventh Circuit has held that allegations of intentional torts support the exercise of personal jurisdiction over a nonresident defendant with no other contacts with the forum. *See Licciardello*, 544 F.3d at 1285. As just discussed, the amended complaint alleges that the Delaware Trust Defendants participated in a conspiracy to cause plaintiff to issue life insurance policies based on fraudulent applications. Many of the co-conspirators and several of the named insured are Florida residents. The allegations of the complaint are sufficient to permit the inference that the Delaware Trust Defendants "purposely directed" their activities at residents of the forum. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

Moreover, many of the factors enumerated in *Woodson* weigh in favor of permitting a Florida court to exercise jurisdiction over the Delaware Trust Defendants. There appears to be no particularly significant burden on the Delaware Trust Defendants from litigating in Florida. The plaintiff, meanwhile, has a substantial interest in obtaining convenient and effective relief by asserting its claims against all defendants in a single action. Florida is the most logical forum for such an action in light of the many defendants that reside in the state. Finally, because its citizens are alleged to be involved in the scheme, both as insurance brokers and insureds, Florida and its courts have a significant interest in resolving this dispute.

In sum, the Florida long-arm statute confers personal jurisdiction over the Delaware Trust Defendants in this case, and the exercise of jurisdiction over the Delaware Trust Defendants would not violate the United States Constitution. The motion to dismiss for lack of personal jurisdiction must therefore be denied.

2.    *Failure to State a Claim*

The Delaware Trust Defendants next argue that several of plaintiff's claims against them

6

must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Count I asserts a claim for rescission of an insurance contract due to a fraudulent misrepresentation in an application pursuant to Fla. Stat. § 627.409. That section provides that a "misrepresentation, omission, concealment of fact, or incorrect statement" may constitute grounds for rescission, provided certain conditions are met. The Delaware Trust Defendants argue that the amended complaint does not allege that they made any misrepresentations that would permit plaintiff to rescind the policies under the statute.

It is true that the role of the Delaware Trusts in the scheme alleged in the amended complaint was to hold the life insurance policies after they were issued. The amended complaint does not allege that the trusts themselves made the misrepresentations based upon which the policies were allegedly issued. However, an assignment of an insurance policy places the assignee in the same status with respect to all rights and liabilities under it which the insured occupied before the transfer; the assignee is effectively substituted as the insured. *See* 30A Fl. Jur. 2d Insurance § 1566; *Pendas v. Equitable Life Assurance Soc'y of U.S.*, 176 So. 104, 110 (Fla. 1937); *Moon v. Williams*, 135 So. 555, 557 (Fla. 1931). Therefore, if the policies were subject to rescission under their original ownership, they may be rescinded notwithstanding their assignment to the Delaware Trusts. Thus, because the Delaware Trusts are now the owners of the policies which may be subject to rescission, they are properly joined as defendants even though plaintiff makes no allegation that the Delaware Trust Defendants themselves made any misrepresentations. The motion to dismiss Count I will be denied.

Count II alleges that the insurance policies are void for lack of an insurable interest. *See* Fla. Stat. § 627.404(1) ("[N]o person shall procure or cause to be procured or effected an insurance

contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time such contract was made, an insurable interest in the individual insured. The insurable interest need not exist after the inception date of coverage under the contract."). The Delaware Trust Defendants emphasize the last sentence in subsection (1) – that the insurable interest need not exist after the inception date of coverage. They argue that because the amended complaint alleges that the insureds procured the insurance before assigning them to the Delaware Trusts, no violation of § 627.404 has been pled.

Florida permits the assignment of life insurance policies to persons without an insurable interest in the life of the insured. *See, e.g.*, *Great West Life Assur. Co. v. Greene*, 678 So.2d 385 (Fla. 3d DCA 1996) (involving a life insurance policy assigned as part of a divorce settlement); *Lewis State Bank v. Travelers Ins. Co.*, 356 So.2d 1344 (Fla. 1st DCA 1978) (policy assigned to bank as security for loan); *Travelers Ins. Co. v. Tallahassee Bank & Trust Co.*, 133 So.2d 463 (Fla. 1st DCA 1961) (same). But this rule extends only to assignments made in good faith, and not to sham assignments made simply to circumvent the law's prohibition on "wagering contracts." *See Wages v. Wages*, 42 S.E.2d 155, 161 (Ga. 1947) (disapproving assignment of a policy where "the insured was but incidentally a party to a transaction which in its inception was contrary to public policy"); *Chamberlain v. Butler*, 86 N.W. 481, 483 (Neb. 1901) (allowing assignments of policies "taken out in good faith, and afterwards assigned in good faith," but not where the agreement to assign the policy existed "prior to the issuance of the policy, or contemporaneously therewith"); *Steinback v. Diepenbrock*, 52 N.E. 662 (N.Y. 1899) ("The insured, instead of taking out a policy payable to a person having no insurable interest in his life, can take it out to himself and at once assign it to such

a person.  But such an attempt would not prove successful, for a policy issued and assigned, under such circumstances, would be none the less a wagering policy because of the form of it.").

Assuming the truth of the allegations of the amended complaint as true, as the court must at this stage, the procurement and the assignment of the policies was not done in good faith, but was part of a scheme devised by defendants to obtain interests in insurance policies, not yet issued, that insured lives in which the defendants had no insurable interest.  *See* Am. Compl. ¶ 44-47, 68-70, 77-79, 87-89  (alleging that defendant Brasner falsely represented on the application for each of the policies that the owner had no present intent to sell the policy as part of a viatical settlement).[1]  If the plaintiff's allegations are true, the insured never planned to maintain the policies themselves.  Rather, the policies were procured only as part of a plan established from the outset, under which third parties were to pay the premiums for the policies and the insured would immediately assign their policies to entities in which other parties would maintain interests.  Thus, the amended complaint adequately states allegations that, if proven, would render the policies void for lack of an insurable interest.  *See, e.g.*, *Lakin v. Postal Life & Cas. Ins. Co.*, 316 S.W.2d 542, 552 (Mo. 1958) (rejecting the argument that a life insurance policy was validly assigned to a person with no insurable interest where the putative assignee "personally paid the premium [and] simultaneously made arrangements to be designated as beneficiary and to have the policy assigned to him . . . .  This unquestionably constituted one transaction whereby appellant caused to be issued for his own benefit a policy of

---

[1]  Although not necessary in light of the rule requiring the court to credit the allegations in the complaint in deciding a motion to dismiss, the court notes that the allegations are at least somewhat corroborated by the sworn statement of Carol Sciolino, who stated generally that she never intended to keep the policy, but pursuant to a plan developed by Brasner, intended from the outset to sell the policy immediately after it was issued in exchange for a payment.  *See* DE # 96-3 at 19-21, 24-26, 30-33.

insurance, for which he paid the premium, on the life of [another person] in which he had no insurable interest.").  The motion to dismiss Count II must therefore be denied.

Count III alleges a common-law claim of fraud.  The Delaware Trust Defendants argue that it must be dismissed for failure to plead the allegations with the specificity required by Fed. R. Civ. P. 9(b).  This argument is without merit.

"Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)) (internal quotations omitted).

The amended complaint clearly identifies the misrepresentations made with respect to each insurance policy; the time and place of each (i.e., the application for issuance of the policy); the person responsible for making each misrepresentation and the contents of the statements; and what the defendants obtained as a consequence (issuance of the policy, and in the case of the broker defendants, commissions associated therewith).  *See* Am. Compl. ¶ 33-94.  The allegations of the amended complaint thus satisfy Rule 9(b)'s heightened pleading requirements, and the motion to dismiss Count III must be denied. *Cf. American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (affirming Rule 9(b) dismissal of claims that insurance policies were fraudulently procured, where the party asserting the claim "presented only general conclusory allegations of fraud").

The Delaware Trust Defendants' motion to dismiss Counts IV and V, which assert claims

Order Denying Defendants' Motion to Dismiss
Axa Equitable Life Ins. Co. v. Infinity Financial Group, LLC et al.
Case No. 08-80611-CIV-HURLEY/HOPKINS

of civil conspiracy and aiding and abetting fraud, must likewise be denied. *Martinez*, in which the Eleventh Circuit upheld the dismissal of a civil conspiracy claim asserted against the owners of allegedly fraudulently obtained life insurance policies, is distinguishable because in that case the insurers "did not explain how the [policy owners] knew that the policies had been procured by fraud." 480 F.3d at 1068. By contrast, in this case plaintiff has alleged that the trusts were the owners of the policies either from the beginning, as in the case of Geoffrey Glass, *see* Am. Compl. ¶ 64-65, or immediately after the issuance of the policy, as in the case of Harlan Altman, Walter Glass and Carol Sciolino, *see* Am. Compl. ¶ 49, 80, 90. Thus the amended complaint adequately alleges that the trusts both participated in a civil conspiracy to obtain fraudulently procured insurance policies, and aided and abetted that conspiracy.

## CONCLUSION

For the reasons given above, the court concludes that the exercise of personal jurisdiction over the Delaware Trust Defendants is proper, and that Counts I - V of the amended complaint state valid claims against the Delaware Trust Defendants. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendants' motion to dismiss the complaint [DE # 56] is **DENIED**.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 31st day of March, 2009.

Daniel T. K. Hurley
United States District Judge

*Copies furnished to counsel of record*

11

# EXHIBIT B

2011 WL 3236047
Only the Westlaw citation is currently available.
United States District Court,
S.D. Florida.

ENERGY SOURCE, INC. and RMS Oil and Gas, LLC, Plaintiffs,

v.

GLEEKO PROPERTIES, LLC, et al., Defendants.

No. 10–21162–CIV.
|
July 28, 2011.

**Attorneys and Law Firms**

Keith R. Gaudioso, Law Offices of Keith R. Gaudioso, Miami, FL, for Plaintiffs.

Wayne Howard Schwartz, Lee & Amtzis, Boca Raton, FL, for Defendants.

*ORDER DENYING DEFENDANTS G GROUP INTERNATIONAL, LLC AND TYRONE S. GRANDBERRY'S MOTION TO DISMISS (D.E.15)*

JOAN A. LENARD, District Judge.

**\*1 THIS CAUSE** is before the Court on Defendants G Group International, LLC and Tyrone S. Grandberry's Motion to Dismiss the Complaint (D.E.15), filed on October 4, 2010. Plaintiffs Energy Source, Inc. and RMS Oil and Gas, LLC, filed their Memorandum in Opposition (D.E.29) on November 8, 2010, to which Defendants replied (D.E.31) on November 17, 2010. Upon review of the Motion, Opposition, Reply and the record, the Court finds as follows.

**I. Background**

This case involves a sugar deal gone bad. In or around February 2008, Plaintiff Energy Source, Inc. ("ESI"), a Florida company, entered into a an agreement to buy sugar from a Brazilian company. (Compl.¶ 16, D.E.1.) In order to commence the sugar buying arrangement, ESI would have to issue a bank guarantee to provide security to the sugar seller. (*Id.* ¶ 19.) Plaintiff RMS Oil and Gas, LLC agreed to provide ESI with the bank guarantee procurement fee, $439,200.00, in exchange for a share of profits from the sugar agreement. (*Id.* ¶ 24.) Plaintiffs had been approached by Defendant Donald Ramsey who offered to connect them with parties who would, in exchange for the procurement fee, secure the bank guarantee from HSBC. (*Id.* ¶ 21.)

Ramsey subsequently introduced Plaintiffs to Defendants Gleeko Properties, LLC, G Group International, LLC, Tyrone S. Grandberry, Eddie Pace Singletary, Hazarie International Trade Solutions, Angela Hazarie and ANF Media Tech, LLC. (*Id.* ¶ 22.) Defendants made representations to ESI that they would be able to procure the bank guarantee from HSBC Bank for the specified procurement fee. Defendant William F. Dippolito, sole shareholder of Defendant William F. Dippolito P.S., Inc., was retained to act as escrow agent for the procurement fee. (*Id.* ¶ 27.) On or around April 11, 2008, ESI sent the procurement fee to Dippolito via wire transfer for placement into escrow. (*Id.* ¶ 28.)

Defendants allegedly never procured the bank guarantee from HSBC and Plaintiffs' sugar agreement fell through. (*Id.* ¶¶ 31–32 .) Dippolito never returned Plaintiffs' procurement fee. Instead, Plaintiffs allege that Dippolito disbursed the escrowed guarantee fee to all other Defendants and they retained these funds for themselves. (*Id.* ¶¶ 29–30.)

Plaintiffs filed suit in this Court on April 9, 2010, alleging claims of: Breach of Contract (Count I); Unjust Enrichment (Count II); Negligent Misrepresentation (Count III); Breach of Fiduciary Duty (Count IV); Fraud (Count V); Conversion (Count VI), Violations of Section 17(a) of the Securities Act of 1933 (Count VII); Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 (Count VIII); Aiding and Abetting Violations of the Securities Acts (Count IX); Violations of Section 20(a) of the Exchange Act (Count X); 18 U.S.C.A. § 1962(c) RICO (Count XI), Conspiracy to Commit Tortious and Wrongful Acts (Count XII); Accounting (Count XIII); and Constructive Trust (Count XIV). As of the date of this Order, all Defendants save for Grandberry and G Group International, LLC have defaulted.

### A. Motion to Dismiss

**\*2** Grandberry is a resident of Virginia and the president of G Group International, LLC which is headquartered in Virginia. (*Id.* ¶¶ 6–7.) Both he and G Group now move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(2) and (3), lack of personal jurisdiction and improper venue.

Defendants first argue that no personal jurisdiction exists over them in this Court. (Mot. at 3.) They argue that the Florida long-arm statute does not confer either general or specific jurisdiction over Defendants by virtue of their acts in Florida. (*Id.* at 4–7 (citations omitted).) In support of this argument, Grandberry submits a Declaration (D.E.16) wherein he itemizes both his and G Group's ties to Virginia and their lack of personal and business dealings in Florida. Defendants also contend they lack such minimum contacts with Florida that the Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over them. (Mot. at. 7–8 (citations omitted).) Finally, Defendants claim that venue is improper under 28 U.S.C. 1391(b) as the majority of Defendants do not reside in Florida, a substantial part of the events that gave rise to this action did not occur here and neither of the two remaining defendants are found here. (*Id.* at 8–9 (citations omitted).)

In their Opposition, Plaintiffs take issue with all of Defendant's arguments. Plaintiffs claim that Florida's long-arm statute, Fla. Stat. § 48.193(1)(b) provides jurisdiction over parties that commit tortious acts in the state. (Opp. at 4.) In support, they attach the Affidavit of Carlos Florez (D.E.29–1), president of ESI, to establish that Defendants and their co-conspirators' alleged fraudulent statements and misrepresentations were specifically aimed at Florida with the intent to defraud Plaintiffs. (Opp. at 5–6.) Plaintiffs also argue that the long-arm statute reaches all alleged participants of a civil conspiracy in which at least one act in furtherance is committed in Florida. (*Id.* at 6 (citation omitted).) For similar reasons, jurisdiction in Florida would not violate the Due Process Clause. (*Id.* at 6–7.)

As to Defendants' venue argument, Plaintiffs contend that a substantial part of the alleged fraud took place here, Plaintiffs' home forum should be entitled to substantial weight, judicial efficiency is promoted by bringing the action here and Florida has strong public policy concerns regarding adjudicating allegations of fraud committed against a resident company. (*Id.* at 7–9.)

In their Reply, Defendants minimize the number and significance of their telephonic and electronic mail contacts with Plaintiffs in Florida, claiming that in their totality, these contacts do not satisfy the "connexity" requirement for personal jurisdiction. (Reply at 2–3 (citations omitted).) Defendants also note that eight other defendants have defaulted and will not defend this suit, therefore, it will not impose a huge burden upon Plaintiffs to sue Grandberry and G Group in their home state of Virginia. (*Id.* at 3–4.)

## II. Personal Jurisdiction

**\*3** A district court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623 (11th Cir.1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair,* 94 F.3d at 626. If the requirements of the long-arm statute are satisfied, then the court must inquire as to, (1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice." *Id.* at 630–31 (quoting *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).)

Plaintiffs base their allegations of personal jurisdiction solely on Section 48.193(1)(b) of the Florida long arm statute, arguing that Defendants' commission of a tortious act within the state subjects them to jurisdiction here. (Opp. at 4.)

**A. Personal Jurisdiction Under Florida's Long–Arm Statute Section 48.193(1)**

b) Section 48.193(1)(b) provides that:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> ...
>
> (b) Committing a tortious act within this state.

Here, Plaintiffs allege that Grandberry and G Group committed negligent misrepresentation, fraud, conversion and civil conspiracy to commit each of these torts.[1] Each of these torts, if adequately pled and proved prima facie, would satisfy the requirements of the § 48.193(1)(b) and confer personal jurisdiction over a defendant. *Cf. Zurich Am. Ins. Co. V. Renasant Ins. Co.,* 2011 U.S. Dist. LEXIS 17641, ——8–9, 2011 WL 722972 (M.D.Fla. Feb. 23, 2011) (negligent misrepresentation); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.,* 2010 WL 1531489, * 13 (S.D.Fla. Apr.16, 2010) (Cohn, J.) (fraud and civil conspiracy); *Future Technology Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1250 (11th Cir.2000) (conversion).

Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction. *See Future Tech,* 218 F.3d at 1249; *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 583 (M.D.Fla.1991). The Eleventh Circuit has also stated:

> First, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

**\*4** *Polskie Linie Oceaniczne v. Seasafe Transport,* 795 F.2d 968 (11th Cir.1986) (citing *Electro Engineering Products Co., Inc. v. Lewis,* 352 So.2d 862 (Fla.1977)). Florida courts consider both sworn affidavits together with the pleadings in deciding whether a defendant has met his burden in this regard. *Atlas Aircraft Corp. v. Buckingham,* 302 So.2d 163. (Fla. 4th DCA 1974).

The district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony. *Madara v. Hall,* 916 F.2d 1510 (11th Cir.1990). Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the plaintiff. *Id.* (citing *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988).

The Court's review of the Complaint finds that Plaintiffs have alleged all elements of the torts of negligent misrepresentation, fraud, conversion and conspiracy. Plaintiffs allege that Grandberry and G Group, along with the other Defendants, made representations to Plaintiffs that they could procure the bank guarantee, despite having no actual intention to do so, in exchange for the procurement fee. (*See* Compl. ¶¶ 67–73.) In the alternative, Defendants' representations were made carelessly and negligently. (*See id.* ¶ 57.) Plaintiffs further allege that they relied on Defendants' representations and consequently entered into the Letter of Intent & Memorandum of Understanding (D.E.1–3) with, *inter alia,* G Group and Grandberry, and consummated the agreement by wiring the procurement fee to Dippolito on April 11, 2008. (*See* Compl. ¶¶ 23–28.) Once Plaintiffs wired the procurement fee to Dippolito, they allege that it was disbursed from escrow and retained by one or more Defendants, despite the funds legally belonging to Plaintiffs. (*See id.* ¶¶ 74–76.)

Plaintiffs also allege an ongoing civil conspiracy between all Defendants to obtain and keep Plaintiffs' procurement fee. (*See id.* ¶¶ 105–110.) While the conspiracy count attempts to encompass several non-tortious acts, for the purposes of this Motion, it is appropriately applied to Plaintiffs' claims of conversion and fraud.

In their Motion, Grandberry and G Group focus on their lack of contacts with Florida. Most of what Grandberry avers in his Declaration[2] is not germane to the specific jurisdiction alleged by Plaintiffs; however, he makes three relevant assertions. First, Grandberry never met with Plaintiffs in Florida nor did he sign the Letter of Intent or any other documents in Florida. (Grandberry Decl. ¶ 12.) Similarly, no employee of G Group ever traveled to Florida in connection with the parties' business dealings. (*Id.* ¶ 24.) Third, G Group did not receive any consideration or compensation in connection with the parties agreement. (*Id.* ¶ 25.)

Defendants also dispute that the connexity requirement is met—contending that any calls or e-mails sent by them did not proximately give rise to Plaintiffs' causes of action. (Reply at 2–3.)

**\*5** For the purpose of § 48.193(1)(b), the defendant does not have to be physically present in Florida and a defendant can commit the tortious act based on telephonic, electronic, or written communications into Florida so long as the cause of action arises from those communications. *Wendt v. Horowitz,* 822 So.2d 1252, 1260 (Fla.2002); *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1296 (11th Cir.2009); *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F.Supp.2d 1213, 1222–23 (S.D.Fla.2009).

Plaintiffs' Opposition and the accompanying Affidavit of Carlos Florez further establish that communications were made into Florida in February and March 2008, by Grandberry, G Group and the other Defendants. (Florez Aff. ¶¶ 18–19.) The communications were made to represent Defendants' ability to procure the bank guarantee and were relied upon by ESI in entering into the Letter of Intent with Defendants. (*Id.* ¶ 19.) The Florez Affidavit attaches two emails from Grandberry, sent on May 25, 2008 and June 20, 2008, indicating Defendants would still attempt to procure the bank guarantee or refund $150,000 of Plaintiffs money. (*See* Grandberry E-mails, Exs. to Florez Aff. at 6, 11.) Based on Defendants' subsequent nonperformance and failure to refund Plaintiffs' funds to date, these emails are cited as examples of further misrepresentations in support of Defendants' tortious activity.

In addition, defaulted Defendants Eddie Pace Singletary and Gleeko Properties, LLC are located in Florida. Singletary, as representative of Gleeko, signed the Letter of Intent, along with Florez (representative of ESI), Grandberry (representative of G Group) and Angela Hazarie. Plaintiffs argue that Singletary and Gleeko's involvement in the alleged tortious activity indicate that at least one act in furtherance of the conspiracy was committed in Florida. (Opp. at 6, citing *Axa Equitable Life Ins. Co. v. Infinity Fin. Group,* LLC, 608 F.Supp.2d 1349, 1353 (S.D.Fla.2009).)

Fraud and negligent misrepresentation are torts that can establish personal jurisdiction. *OSI Industries, Inc. v. Carter,* 834 So.2d 362, 367 (Fla. 5th DCA 2003) (discussing both intentional and negligent misrepresentation as torts under the long-arm statute). In *Wendt,* the Florida Supreme Court found long-arm jurisdiction where an out-of-state defendant allegedly made "telephonic, electronic, or written communications into Florida" and the cause of action arose from those communications. 822 So.2d at 1260; *see Acquadro v. Bergeron,* 851 So.2d 665 (Fla.2003) (allegations sufficient to support jurisdiction where nonresident allegedly committed defamation in a single telephone call into Florida); *Machtinger v. Inertial Airline Services,* Inc., 937 So.2d 730, 735 (Fla. 3d DCA 2006) (fraudulent misrepresentations made from outside Florida and directed into Florida by phone, fax, and writings constitute tortious acts committed within Florida under Florida's long-arm statute). Moreover, the *Wendt* Court held that a defendant's physical presence is not required in order to "commit a tortious act in Florida." *Id.* Given Defendants failure to dispute their involvement in phone calls and e-mails directed into Florida which induced Plaintiffs to contract with them and wire the procurement fee to the purported escrow agent, long-arm jurisdiction has been established.[3]

**\*6** Likewise, the allegation of conversion can establish long arm jurisdiction over a non-resident defendant. *See Future Tech.,* 218 F.3d at 1250. Plaintiffs' claim for conversion is arguably bolstered by Grandberry's May 25 and June 20, 2008 e-mails, in which Defendants (1) continue to make representations of their ability to procure the bank guarantee and (2) acknowledge that at least $150,000 should be rightfully returned to Plaintiffs should they fail. Assuming neither Grandberry nor G Group ever received a portion of the procurement fee, Grandberry's e-mails still suffice as a prima facie showing of his alleged participation in a scheme to allow his co-defendants to keep Plaintiff's funds.

Long-arm jurisdiction has further been established by Plaintiffs' claims for conspiracy. Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida. *See Machtinger,* 937 So.2d at 734–36; *Wilcox v. Stout,* 637 So.2d 335, 336 (Fla. 2d DCA 1994). Florida courts may exercise personal jurisdiction over parties to a Florida civil conspiracy even if the alleged civil conspirator otherwise has no connection to the state. *See Mazer,* 556 F.3d at 1281–82.

In this case, the complaint alleges a conspiracy to obtain and unlawfully keep Plaintiffs' funds. Two of the Defendants, including a signatory to the Letter of Intent, are citizens of Florida and presumably were alleged to be in contact with Plaintiffs prior to its execution and the wiring of escrow funds. Grandberry and G Group are alleged by Plaintiff to have formed a group with these Defendants for the purpose of procuring the bank guarantee. Thus, the complaint as a whole sufficiently alleges that the defendants formed a civil conspiracy, at least some acts in furtherance of which were carried out in Florida by Singletary and Gleeko. Florida's long-arm statute therefore reaches all participants in that conspiracy, even those not otherwise connected to Florida, such as Grandberry and G Group. *Cf. Axa Equitable Life Ins.,* 608 F.Supp.2d at 1354 (finding jurisdiction in Florida over Delaware-based defendants who were linked by virtue of their alleged participating in the civil conspiracy); *Arch Aluminum & Glass Co. v. Haney,* 964 So.2d 228, 234–35 (Fla. 4th DCA 2007) (finding personal jurisdiction not supported because "the tort did not occur in Florida, and neither did the conspiracy).

**B. Federal Due Process Considerations**

The Eleventh Circuit has held that allegations of intentional torts satisfy the "minimum contacts" requirement and support the exercise of personal jurisdiction over a nonresident defendant with no other contacts with the forum. *See Licciardello v. Lovelady,* 544 F.3d 1280, 1285 (11th Cir.2008). Here, Plaintiffs allege that Defendants committed fraud, conversion and participated in a conspiracy to deprive Plaintiffs of $439,200. Two of the co-conspirators are Florida residents. Thus, the allegations of the complaint are sufficient to permit the inference that Grandberry and G Group "purposely directed" their activities at Plaintiffs. *See Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *Axa Equitable,* 608 F.Supp.2d at 1355.

**\*7** Other factors, such the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute, weigh in favor of permitting this Court to exercise jurisdiction over Grandberry and G Group. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Grandberry states that litigation in Florida will create an unreasonable burden and undue financial hardship on both himself and G Group. But without more, the Court is unable to discern any significant burden that would make litigation here more difficult for Grandberry and G Group than it would be for Plaintiffs bringing the same suit in Virginia. Plaintiffs, however, have substantial interests in obtaining convenient and effective relief by asserting all of their claims against all Defendants in a single action. Splintering Grandberry and G Group off into a separate action in a different district would create potential for inconsistent findings on damages, as they are jointly and severally liable with all of the presently-defaulted Defendants. Finally, because two additional Florida entities are involved in the commission of the alleged torts and conspiracy, the Courts of this state have a significant interest in resolving this dispute. *See Axa Equitable,* 608 F.Supp.2d at 1355.

Accordingly, the Court finds that the Florida long-arm statute confers personal jurisdiction over Grandberry and G Group in this action and the exercise of jurisdiction over these Defendants would not violate the Due Process Clause of the Fourteenth Amendment.

### III. Venue

Defendants also move to dismiss this action under Federal Rule of Civil Procedure 12(b)(3), improper venue.[4] 28 U.S.C. § 1391 provides that an action not based on diversity of citizenship may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

> Subsections (1) and (3) are not applicable here as none of the ten Defendants reside in South Florida. Therefore, if venue is proper, it must be because a substantial part of the events giving rise to the claim occurred here.

To evaluate where the claim arose for the purposes of § 1391(b)(2), both the Eleventh Circuit and this District utilize the "weight of the contacts" test. *Delong Equipment Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 855 (11th Cir.1988); *Burger King Corp. v. J.T. Thomas,* 755 F.Supp. 1026, 1028 (S.D.Fla.1991). Once challenged, the burden is on the plaintiff to make a showing that venue is proper in this district. *Burger King,* 755 F.Supp. at 1028.

**\*8** Ultimately, the "contacts" in this case are anything but clear. The ten Defendants are scattered about the North American continent and the bulk of their separate communications and transactions are currently unknown. What this Court does know, based on the Complaint and the Parties' affidavits, is that the Defendants, including Grandberry and G Group, directed communications into this district for the purpose of soliciting ESI's business and moneys, the funds in dispute came from a Florida financial institution and the failure to procure the bank guarantee and return the funds to Plaintiffs caused harm to ESI in this District. Therefore, application of 'weight of the contacts' test on the few known contacts in this dispute results in this Court finding that venue is proper in this District against Grandberry and Gleeko. *See Delong,* 840 F.2d at 855.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants Tyrone S. Grandberry and G Group International, LLC's Motion to Dismiss Plaintiffs' Complaint (D.E.15), filed on October 4, 2010, is **DENIED.**

**DONE AND ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2011 WL 3236047

### Footnotes

1  The Court need not consider Plaintiffs' other, non-tort, causes of action at this time as they are not alleged to be the basis of personal jurisdiction.

2  Plaintiffs seemingly attempt to have this Court disqualify Grandberry's Declaration as unsworn, however his unsworn Declaration is submitted "under penalty of perjury" and therefore has the same effect. *See* 28 U.S.C. § 1746.

3  This assumes that the tort(s) actually occurred. Here, Defendants do not challenge Plaintiffs' ability to adequately plead their causes of action. Moreover, that analysis would be premature on a motion to dismiss for lack of personal jurisdiction. "Where the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other.' " *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 733 (11th Cir.1982) quoting *Chatham Condo. Assocs. v. Century Village, Inc.,* 597 F.2d 1002, 1011 (5th Cir.1979). *Eaton* relied on binding Fifth Circuit precedent that held that when substantive and jurisdictional issues are intertwined, a finding on jurisdiction should not be rendered until a decision on the merits

could be resolved. *See id.* (citations omitted). Based on the Eleventh Circuit's directive, this Court will exercise its discretion to reserve further ruling on the jurisdictional issues until a decision on the merits can be made. *See Exhibit Icons, LLC v. XP Cos.,* LLC, 609 F.Supp.2d 1282, 1297 (S.D.Fla.2009); *Nissim Corp. v. Clearplay, Inc.,* 351 F.Supp.2d 1343, 1351–52 (S.D.Fla.2004).

If at a later stage in these proceedings it becomes clear that a cause of action giving rise to personal jurisdiction cannot be adequately pled or proved, Defendants may once again raise the defense of personal jurisdiction.

4    Defendants' Reply includes a new request to transfer venue to Virginia. (*See* Reply at 1.) The Court declines to consider transfer as a possible remedy since Defendants did not raise it in the initial Motion (and therefore Plaintiffs did not get an opportunity to address its merits) and Defendants offer no legal or factual support for this alternative relief.

---

**End of Document**                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 22 of 40

Universal Physician Services, LLC v. Del Zotto, Not Reported in Fed. Supp. (2017)

2017 WL 11016112
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

UNIVERSAL PHYSICIAN SERVICES, LLC, Plaintiff,

v.

Amanda DEL ZOTTO, Eric DeLong, Clinical Services, LLC, Clinical
Services International, Clinical Services International, Inc., Clinical
Services International, LLC, CSI, Inc. and CSI, LLC, Defendants.

Case No: 8:16-cv-1274-T-36JSS
|
Signed 03/02/2017

**Attorneys and Law Firms**

Beatriz McConnell, Courtney Fernald, Joseph Wesley Etter, IV, Leonard S. Englander, Andrew J. Davis, Englander & Fischer, PA, St Petersburg, FL, for Plaintiff.

Amanda Del Zotto, Columbia, SC, pro se.

Alan F. Hamisch, Hamisch Law Firm, PLLC, Naples, FL, for Defendants.

**ORDER**

Charlene Edwards Honeywell, United States District Judge

 **\*1**  This matter comes before the Court upon the Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) (Doc. 5), and Plaintiff's response in opposition (Doc. 20). In the motion, Defendants move to dismiss the Plaintiff's Supplemental Complaint for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. The Court, having considered the motion and being fully advised in the premises, will deny Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

   I. **Background**[1]

Amanda Del Zotto, who is the daughter of the owners of Universal Physician Services, LLC, ("UPS") worked for UPS until her termination in 2015. Doc. 21 ("Ludvik Affidavit") at ¶ 3, 12. During her employment, Del Zotto was a Florida resident. *Id.* at ¶ 5. Eric DeLong was Del Zotto's boyfriend. *Id.* at ¶ 4. DeLong became involved with UPS in order to work with it on a prospective business venture involving the Saudi Arabia Ministry of Health (the "Saudi Deal"). *Id.* at ¶¶ 7-9. DeLong communicated by telephone and e-mail with UPS regarding the Saudi Deal in December 2014 and January 2015. *Id.* DeLong also visited Florida to work on the Saudi Deal and stayed overnight at the Plaintiff's principal place of business in St. Petersburg, Florida. *Id.* at ¶ 8. In late January 2015, DeLong advised UPS that he would not participate in the Saudi Deal. *Id.* at ¶ 10. On or about February 10, 2015, Del Zotto, while still employed with UPS, went with DeLong to the Middle East to pitch the same proposal UPS developed to the Saudi Arabia Ministry of Health. *Id.* at ¶ 11. Due to Del Zotto's use of UPS's proposal without its consent, UPS terminated Del Zotto. *Id.* at ¶ 12. Del Zotto and DeLong then began to solicit UPS's clients and promote their

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 23 of 40

Universal Physician Services, LLC v. Del Zotto, Not Reported in Fed. Supp. (2017)

competing company, Clinical Services, LLC. *See id.* at ¶¶ 13-16. At the time Del Zotto and DeLong contacted some of UPS's clients, those clients were under contract with UPS. *Id.* at ¶ 15.

Plaintiff UPS originally filed this case on or about April 9, 2015, naming Del Zotto as the sole defendant and alleging the following causes of action: injunctive relief, breach of fiduciary duty, tortious interference, conversion, replevin, civil theft, and breach of confidential relationship. Doc. 5 at 1, Doc. 2 at ¶ 98. On February 12, 2016, UPS was granted leave to file its Verified Supplemental Complaint naming Eric DeLong and Clinical Services, LLC a/k/a Clinical Services, Inc., Clinical Services International, Clinical Services International, Inc., Clinical Services International, LLC, CSI, Inc. and/or CSI, LLC (collectively referred to as "CSI"). Doc. 2 at 1. The Verified Supplemental Complaint alleged additional counts for misappropriation against Del Zotto, DeLong and CSI, civil conspiracy to misappropriate trade secrets against Del Zotto, DeLong and CSI, injunctive relief against DeLong and CSI, tortious interference against DeLong and CSI, and civil conspiracy to tortiously interfere with business relationships and contracts against DeLong and CSI. *See generally* Doc. 2.

**\*2** Defendants DeLong and CSI (collectively referred to as "Defendants") were served on or about May 6, 2016. Doc. 5 at 1. On April 1, 2016, UPS and Del Zotto went to trial on four counts of UPS's original Complaint and one count of the Supplemental Complaint. Doc. 20 at 2. The state court entered a final judgment against Del Zotto on all counts, and entered a Partial Final Judgment for Damages. *Id.* Defendants removed the case to this court and filed their Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) arguing that this court lacks personal jurisdiction over them and that UPS fails to state a claim on all of its counts.

Defendants filed two affidavits. The Affidavit of Eric Delong (Doc. 5-1) states the following:

DeLong is a resident of South Carolina, and president of Clinical Services, LLC. He does not and has not ever resided in the state of Florida, he does not own, hold, use, possess, or lease any real estate in Florida, nor maintain an office, phone number, or mailing address in Florida. He also has not applied for a loan, or opened a bank account in Florida. He does not sell any products or perform any services in Florida. He does not process, service, or manufacture any products, material or things which are used or consummated in Florida in the ordinary course of commerce, trade or use. He contends that he has not committed a tortious act with regard to Plaintiff in Florida or in any other state, and has not engaged in any service or solicitation activities in Florida and would not expect to be subject to jurisdiction in Florida.

The Affidavit of Eric DeLong on behalf of Clinical Services, LLC (Doc. 5-2) states the following:

Clinical Services, LLC is a limited liability company that is based in Columbia, South Carolina. Its registered office and principal place of business is in Columbia, South Carolina. Clinical Services, LLC is not registered with the Secretary of State in the state of Florida and does not do any of the following in Florida: maintain an office or other company facilities, maintain a phone number or mailing address, engage in contracts with any health care facilities, own, hold, use, possess or lease any real estate, target customers, sell products, perform services, or solicitations or service activities. The affidavit further contends that Clinical Services, LLC has not engaged in any act or more specifically, committed a tortious act with regard to Plaintiff in Florida or any other state. Further, it states that Clinical Services, LLC has not processed, serviced, or manufactured any products, materials, or things which are used or consummated within the state of Florida in the ordinary course of commerce, trade or use, nor has it engaged in any service activities in Florida and would not expect to subject itself to jurisdiction in Florida.

## II. Legal Standard

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2) ). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

**\*3** To subject a defendant to a judgment *in personam*, a plaintiff must make a prima facie showing that jurisdiction exists by presenting enough evidence to withstand a motion for directed verdict. *Powercerv Tech. Corp. v. Ovid Tech.*, 993 F.Supp. 1467, 1468 (M.D. Fla. 1998) (citing *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 583 (M.D. Fla. 1991) ). If the plaintiff pleads enough facts to state a prima facie basis for personal jurisdiction, the burden then shifts to the defendant to challenge Plaintiff's allegations by affidavits or other pleadings. *Structural Panels, Inc. v. Texas Aluminum Ind., Inc.*, 814 F.Supp. 1058, 1064 (M.D. Fla. 1993) (citing *Prentice*, 779 F.Supp. at 583). If the defendant sufficiently challenges the plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint. *Id.*

### III. Discussion

### a. Personal Jurisdiction

A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *see also Lamb v. Turbine Designs, Inc.*, 207 F.3d 1259, 1261 (11th Cir. 2000). The Court's analysis of the propriety of the assertion of personal jurisdiction is a two-step inquiry. First, the Court must determine "whether the exercise of jurisdiction is appropriate under the forum state's long-arm statute." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004). Second, the Court must examine "whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.' " *Id.* (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ).

### i. Florida's Long-Arm Statute Analysis

Florida's Long–Arm statute provides that:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. [formerly subsection "a."] Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. [formerly subsection "b."] Committing a tortious act within this state.

...

6. [formerly subsection "f."] Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

a. The defendant was engaged in solicitation or service activities within this state; or

b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 25 of 40

Universal Physician Services, LLC v. Del Zotto, Not Reported in Fed. Supp. (2017)

Fla. Stat. § 48.193(1)(a). Because the construction and application of the Florida Long–Arm statute is a question of Florida law, the Court is required to construe the Florida Long–Arm provisions as would the Florida Supreme Court. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

Florida's Long-Arm statute, as set forth in Fla. Stat. § 48.193, provides for personal jurisdiction over nonresident defendants under two circumstances: specific jurisdiction and general jurisdiction. *Alternate Energy Corp. v. Redstone*, 328 F.Supp. 2d 1379, 1382 (S.D. Fla. 2004). Specific personal jurisdiction exists when a claim arises from the defendant's forum-related contacts. *Id.* (citing § 48.193(1) ). General personal jurisdiction exists when the defendant's "forum-related contacts are sufficiently extensive, even though the case did not arise out of those contacts." *Id.* (citing § 48.193(2) ).

**\*4** Plaintiff asserts three bases for personal jurisdiction over the Defendants: conducting business in Florida, committing a tortious act in Florida, and causing injury to persons or property in Florida.


### 1. Conducting Business in Florida

"In order to establish that a defendant is 'carrying on business' for the purposes of the Long-Arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, *see Milberg Factors, Inc. v. Greenbaum*, 585 So. 2d 1089, 1091 (Fla. 3d DCA 1991), the possession and maintenance of a license to do business in Florida, *See Hobbs v. Don Mealey Chevrolet, Inc.*, 642 So. 2d 1149, 1153 (Fla. 5th DCA 1994), the number of Florida clients served, *See Milberg Factors, Inc.*, 585 So. 2d at 1091, and the percentage of overall revenue gleaned from Florida clients, *see id.; Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996).

Here, based on the facts presented, there is insufficient evidence that DeLong and CSI were conducting business in Florida. It is undisputed that DeLong is a citizen of another state, has never lived in Florida and does not maintain any office in Florida and has not sold any products in Florida. Further, CSI is a South Carolina corporation operating out of South Carolina, it has no employees, offices or agents in Florida and holds no business licenses in Florida. Accordingly, based on the factors relevant to a determination of jurisdiction under Fla. Stat. § 48.193(1)(a)(1), the record does not support the contention that DeLong and CSI were engaging in a general course of business activity in Florida.


### 2. Committing a Tortious Act in Florida

The Florida Long–Arm statute also provides for the assertion of jurisdiction over an out-of-state defendant who commits a tortious act in Florida. Fla. Stat. § 48.193(1)(a)(2). Florida courts construing this provision have noted that the alleged tortfeasor's "physical presence [in Florida] is not required." *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida. *See id.* For example, allegations about an out-of-state defendant's "telephonic, electronic, or written communications into Florida" are sufficient to trigger jurisdiction under the Long–Arm statute provided, however, that the cause of action arises from those communications. *Id.; see Acquadro v. Bergeron*, 851 So. 2d 665, 671 (Fla. 2003) (finding jurisdiction under Fla. Stat. § 48.193(1) (a)(2) where an out-of-state defendant allegedly defamed a Florida resident during a phone call made into Florida). Accordingly, there must be some "connexity" that exists between the out-of-state communications and the cause of action such that the cause of action "would depend upon proof of either the existence or the content of any of the communications ... into Florida." *Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So. 2d 1013, 1016 (Fla. 4th DCA 2003). Significantly, "Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida." *United Technologies v. Mazer*, 556 F.3d 1260, 1281-82 (11th

Cir. 2009); *AXA Equitable Life Ins. Co., v. Infinity Fin. Group, L.L.C.*, 608 F.Supp. 2d 1349, 1353 (S.D. Fla. 2009)("Florida law construes the state's long-arm statute to reach all of the alleged participants in a civil conspiracy, at least one act in furtherance of which is committed in Florida.") (citing *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 734–36 (Fla. 3d DCA 2006) (holding that if a plaintiff successfully alleges that any member of a conspiracy commits a tortious act in Florida in furtherance of the conspiracy, then all of the conspirators are subject to Florida's long-arm jurisdiction) ).

 **\*5** Based on the foregoing, the Court finds that UPS made sufficient allegations in its complaint that DeLong and CSI committed tortious acts in Florida as defined by Fla. Stat. § 48.193(1)(a)(2). Although DeLong and CSI claim in their affidavits that they have not committed tortious acts against UPS in Florida or elsewhere, these statements in the affidavits are legal conclusions and therefore improper for the Court to consider. *See HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1239 (S.D. Ala. 2006) ("[B]lack-letter requirement of affidavits is that they must be rooted in facts, rather than conclusory remarks."). *See also Pashoian v. GTE Directories*, 208 F.Supp. 2d 1293, 1297 (M.D. Fla. 2002) ("[A]n affidavit must be stricken when it is a conclusory argument, rather than a statement of fact").

Further, the lack of significant ties to Florida is not dispositive of personal jurisdiction where the plaintiff successfully alleges that the non-resident defendant engaged in a conspiracy with a Florida resident (Del Zotto) in furtherance of the conspiracy, as UPS has done in this case. *See Wilcox v. Stout*, 637 So. 2d 335, 336 (Fla. 2d DCA 1994) (where defendants successfully demonstrated that they were not residents of Florida, did not maintain an office in Florida and did not regularly engage in any business or business venture in Florida and plaintiff successfully raised allegations that defendants engaged in a conspiracy with Florida residents the Florida Long-Arm statute acted to bring out-of-state residents into the state's jurisdiction).

### 3. Causing Injury to Persons or Property in Florida

The Florida Long-Arm statute also provides for the assertion of jurisdiction over an out-of-state defendant who causes injury to persons or property within the state. Fla. Stat. § 48.193(1)(a)(6). However, in this case, jurisdiction does not exist under section 48.193(1)(a)(6), as this section does not permit jurisdiction over nonresidents for acts arising outside the state that cause financial injury within the state, in the absence of personal injury or property damage. *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033 (11th Cir. 1991). Moreover, subsection (1)(a)(6) does not apply to situations in which only economic damages are suffered within the state. *Prentice*, 779 F.Supp. at 585. Plaintiff has not alleged personal injury or property damage, but only financial injuries; therefore, Plaintiff has not established that personal jurisdiction exists under Section 48.193(1)(a)(6).

### ii. Due Process Analysis

Even if the exercise of Florida's Long-Arm jurisdiction is proper under section 48.193, "[a] court can exercise personal jurisdiction only if the foreign corporation maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notations of fair play and substantial justice.' " *Wendt*, 822 So. 2d at 1258 (alteration in original) (quoting *Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co.*, 752 So. 2d 582, 584 (Fla. 2000) ). "To constitute minimum contacts for purposes of personal jurisdiction, the defendant's contacts with the applicable forum must: (1) be related to the plaintiff's cause of action or have given rise to it; (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefit and protection of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court there." *Wallack v. Worldwide Machinery Sales, Inc.*, 278 F.Supp.2d 1358, 1367–68 (M.D. Fla. 2003) (citing *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1994) ).

 **\*6** In Florida, where the complaint alleges that a foreign corporation and other conspirators committed a tortious act on Florida soil and subjected themselves to the jurisdiction of Florida courts; the complaint satisfies the constitutional requirements, because it alleges sufficient minimum contacts between Florida and the non-resident defendants to satisfy due process concerns. *See Execu-Tech Bus. Sys., Inc.*, 752 So. 2d at 585 (approving *Wilcox*, 637 So. 2d 335).

Based on the foregoing, the Court concludes that it has specific personal jurisdiction over DeLong and CSI.

### b. Dismissal for Failure to State a Claim

Defendants also argue that UPS fails to state a claim against them on Counts IX-XII[2] for misappropriation and civil conspiracy to misappropriate trade secrets, Counts XIII and XIV for injunctive relief, and Counts XV- XVIII, for tortious interference and civil conspiracy to tortiously interfere with UPS's business relationships and contracts.

### i. Misappropriation

To bring a claim under the Florida Uniform Trade Secrets Act ("FUTSA") Fla. Stat. § 688.01, *et seq.* a plaintiff must allege: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002). "To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Id.*

Defendants argue that UPS's allegations fall short because it does not identify the "specific characteristics of the alleged secrets with reasonable particularity." Doc. 5 at 11. UPS alleges that Del Zotto in conjunction with Defendants refused to return UPS's personal computer and laptop containing UPS's trade secret and confidential information including "client lists, and information, proposals, contracts and pricing information ('Confidential Information')." Doc. 2 at ¶ 84. It further alleges that "UPS's Confidential Information constitutes 'trade secrets' as the term is defined by Fla. Stat. [§] 688.002(4)...." *Id.* at ¶ 85. Here, UPS has alleged the trade secret with sufficient particularity to put the Defendants on notice as to its claim.

The essential elements of a civil conspiracy are the following: "(a) [c]onspiracy between two or more parties, (b) [t]o do an unlawful act or to do a lawful act by unlawful means, (c) [t]he doing of some overt act in pursuance of the conspiracy, and (d) [d]amage to plaintiff as a result of the acts done under the conspiracy." *Primerica Fin. Services, Inc. v. Mitchell*, 48 F. Supp. 2d 1363, 1369 (S.D. Fla. 1999) (quoting *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993) ). Defendants argue that UPS does not identify specific conduct in support of these allegations or any purported agreement between them and Del Zotto.

 **\*7** As discussed above, the Court finds that UPS has sufficiently alleged a claim for misappropriation. The Verified Supplemental Complaint alleges that the Defendants "conspired and agreed to misappropriate UPS's Confidential Information[.]" Doc. 2 at ¶¶ 128, 135, 136. It further alleges that in furtherance of the conspiracy, Del Zotto and DeLong used the Confidential Information and contacted and solicited UPS's clients. *Id.* at ¶¶ 130, 136. These are sufficient to state a claim for civil conspiracy to misappropriate trade secrets. *See Whetstone Holdings, LLC v. Thorell*, 13-CV-24138-UU, 2014 WL 11906593, at \*5 (S.D. Fla. Feb. 5, 2014) (where complaint alleged that defendants agreed to misappropriate trade secrets and in fact carried out this plan, it was sufficient to state a claim for conspiracy to misappropriate trade secrets). Therefore, the Court will deny the Motion to Dismiss Counts IX – XII.

### ii. Injunctive Relief (Counts XIII-XIV)

To state a claim for preliminary injunctive relief, a plaintiff must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 28 of 40

*Universal Physician Services, LLC v. Del Zotto, Not Reported in Fed. Supp. (2017)*

would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Further, to obtain a permanent injunction Florida law requires a party to demonstrate that: "1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1286 (S.D. Fla. 2010). Defendants argue that UPS has not alleged any facts showing that there is a substantial likelihood for success on the merits, that the threatened injury outweighs the potential harm to the defendant, or that other remedies are inadequate. Doc. 5 at 12.

UPS alleges, generally, that Del Zotto used the Confidential Information to communicate with UPS's customers, customer base, and physicians, Doc. 2 at ¶ 93; and that Del Zotto disclosed that information to DeLong and CSI who are also using that information to "solicit and/or obtain contracts with multiple UPS customers and physicians subsequent to the filing of the Complaint." *Id.* at ¶ 95. Further, UPS alleges that it will suffer immediate and continuing irreparable injury and loss if Defendants are not immediately enjoined from using the Confidential Information; its injuries cannot be cured by money damages; it has a clear legal and equitable right to the relief; the injunction will not be contrary to the public interest; it has a substantial likelihood to prevail on the merits, and Defendants continue to use the Confidential information. *Id.* at ¶¶ 143-150. UPS alleges sufficient facts to alert Defendants of the grounds for relief and to survive dismissal. Therefore, the Court will deny the motion to dismiss Counts XIII and XIV.

### iii. Tortious Interference (Counts XV-XVIII)

"To state a claim for tortious interference under Florida law, a plaintiff must show: (1) the existence of a business relationship; (2) that defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result." *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1238 (S.D. Fla. 2015)(citing *Tamiami Trail Tours, Inc. v. J.C. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985) ).

Defendants argue that UPS failed to identify the specific business relationships or contracts with which they interfered citing *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996). Defendants' reliance on *Ferguson Transp., Inc.*, is misplaced, since that case discussed a motion for directed verdict and dealt with a moving storage company complaining about interference with its business relationship with the "public at large." *Ferguson Transp., Inc.*, 687 So. 2d at 821. Here, the Complaint alleges that UPS had "valuable business relationships and contracts with physicians, and hospitals, clinics, governmental agencies and other types of entities needing temporary medical staffing," Defendants knew of those relationships, intentionally and unjustifiably interfered with them and UPS suffered damage as a result. Doc. 2 at ¶¶ 167-183. These allegations are sufficient to survive dismissal.

**\*8** The Verified Supplemental Complaint makes additional allegations that the Defendants "conspired and agreed to tortiously interfere with UPS's advantageous business relationships and contracts[.]" Doc. 2 at ¶¶ 180, 187. It also alleges that DeLong and Del Zotto acted in concert to contact and solicit UPS's customers to persuade them to cease doing business with it. *Id.* at ¶ 182. Given the elements of a claim for civil conspiracy detailed above, the conspiracy to commit tortious interference claims survive as well. *See Bray & Gillespie Mgt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1372 (M.D. Fla. 2007) ("A claim for civil conspiracy can be based on a party's tortious interference with contract."). Therefore, the Court will deny the Motion to Dismiss as to Counts XV – XVIII.

### IV. Conclusion

Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) is denied in its entirety. UPS has met its burden to show that this Court has specific personal jurisdiction over DeLong and CSI because it has sufficiently alleged facts in its Supplemental Verified Complaint, as supported by the Ludvik Affidavit, to establish a claim for Defendants'

commission of a tort in Florida sufficient to confer jurisdiction. Further, UPS has sufficiently alleged facts to state a claim against Defendants on all counts of the Verified Supplemental Complaint.

**Accordingly it is ORDERED**:

1. Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) (Doc. 5) is DENIED.

**DONE AND ORDERED** in Tampa, Florida on March 2, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 11016112

Footnotes

1    The facts are derived from Plaintiff's Complaint (Doc. 2), the allegations of which the Court must accept as true in ruling on the instant motion, unless otherwise noted. *See Linder v. Portocarrero,* 963 F. 2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F. 2d 989, 994 (11th Cir. 1983).

2    Defendants' Motion to Dismiss references Counts IX and X as allegations relating to claims for misappropriation. Doc. 5 at 10. But the Verified Supplemental Complaint begins at Count VIII, omits Count IX (presumably in error) and proceeds to Count X. *See* Doc. 2 at 5-8. The Court will adopt Defendants' numbering for purposes of this order only.

    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

2019 WL 5394186
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Orlando Division.

WYNDHAM VACATION OWNERSHIP, INC.; Wyndham Vacation Resorts,
Inc.; Wyndham Resort Development Corporation; Shell Vacations, LLC;
SVC-West, LLC; SVC-Americana, LLC; and SVC-Hawaii, LLC, Plaintiffs,
v.
The MONTGOMERY LAW FIRM, LLC; Montgomery & Newcomb, LLC; M. Scott
Montgomery, Esq.; W. Todd Newcomb, Esq.; CLS, Inc.; Atlas Vacation Remedies, LLC;
Principal Transfer Group, LLC; Donnelly Snellen; Jason Levi Hemingway; Mutual Release
Corporation; Dan Chudy; Matthew Tucker; and Catalyst Consulting Firm LLC, Defendant.

Case No. 6:18-cv-2121-Orl-37LRH
|
Signed 08/08/2019

**Attorneys and Law Firms**

Alfred J. Bennington, Jr., Glennys Ortega Rubin, Shutts & Bowen, LLP, Orlando, FL, Jonathan Phillip Hart, Daniel Joseph Barsky, Shutts & Bowen, LLP, West Palm Beach, FL, for Plaintiffs.

Coleman W. Watson, Leia Villasenor Leitner, Watson LLP, Orlando, FL, Robert M. Ward, Pro Hac Vice, BMW IP Law, Atlanta, GA, for Defendant.

**ORDER**

ROY B. DALTON JR., United States District Judge

**\*1** Before the Court is Defendants Principal Transfer Group, LLC, Donnelly Snellen, and CLS, Inc.'s motion to dismiss for lack of personal jurisdiction or improper venue or to transfer venue. (Doc. 31 ("**Motion**").) Defendants Atlas Vacation Remedies, LLC, Jason Hemingway, W. Todd Newcomb, M. Scott Montgomery, Montgomery Law Firm, LLC, and Montgomery & Newcomb, LLC filed supplements to join the pending Motion[1] (Docs. 51, 56, 67) and Plaintiffs responded (Doc. 100). On review, the Motion is denied.

**I. Background**

This action centers on the "timeshare exit" industry. (*See* Doc. 1, ¶¶ 6–22.) Plaintiffs are suing Defendants for interfering with their timeshare contracts and timeshare business. (*See id.*) Plaintiffs are Florida-based entities that manage and operate timeshare properties throughout the world and contract with individuals for timeshare ownership. (*See id.* ¶¶ 1–5; 25–31.) Defendants are Missouri-based law firms, timeshare exit companies, consulting firms, and their employees who work to help dissatisfied timeshare owners rid themselves of their timeshare contracts. (*See id.* ¶¶ 32–50.) Defendants can be categorized into four groups: (1) **Montgomery Law Defendants** include the Montgomery Law Firm, LLC ("**Montgomery Law**") and Montgomery

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 32 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

& Newcomb, LLC ("**M&N Law**"), two law firms, and lawyers M. Scott Montgomery, Esq. and W. Todd Newcomb, Esq. (*id.* ¶¶ 33–37); (2) **CLS Defendants** include CLS, Inc. ("**CLS**"), Atlas Vacation Remedies, LLC ("**Atlas**"), Principal Transfer Group, LLC ("**PTG**"), a timeshare exit company and its two alter-egos, and two of its employees, Donnelly Snellen, and Jason Levi Hemingway (*id.* ¶¶ 38–45); (3) **MRC Defendants** include Mutual Release Corporation ("**MRC**"), a timeshare exit company, and two of its employees, Dan Chudy, and Matthew Tucker (*id.* ¶¶ 46–49); and (4) Catalyst is an advertising consulting firm (*id.* ¶¶ 50, 109–110).



(*Id.* ¶ 8.) And, if timeshare owners use their services, Defendants guarantee successful exit from their timeshare contracts—option 3—but do not advise the timeshare owners of the consequences of ceasing payments, i.e. default and foreclosure. (*Id.* 9–22.) Although the Defendants play different roles in the described scheme, their conduct is intertwined. (*Id.* ¶¶ 60–86; 92–138.) The CLS Defendants, MRC Defendants, and Catalyst use various advertising methods, including online, telemarketing, direct mailing, and in-person sales presentations, to target and solicit Plaintiffs' timeshare owners to use their timeshare exit services. (*Id.* ¶¶ 92–138.) Those advertisements state that the CLS Defendants, MRC Defendants, or Catalyst retain lawyers to aid in canceling the timeshare contracts, and the Montgomery Law Defendants fill that role. (*Id.* ¶¶ 75–78.) The CLS Defendants, MRC Defendants, and Catalyst, then refer clients to the Montgomery Law Defendants, who are aware of the advertisements and send demand letters on behalf of the timeshare owners to Plaintiffs. (*Id.* ¶¶ 75–82.) After sending the demand letters, Defendants take almost no further action, hoping that the threat of litigation will convince Plaintiffs' to cancel or release the timeshare owners from their contracts. (*Id.* ¶ 83.)

  **\*2**  Based on Defendants' alleged harm to Plaintiffs' businesses and relationships with timeshare owners, Plaintiffs sought damages and injunctive relief. (*Id.* 22–24.) Plaintiffs bring claims for: (1) false and misleading advertising and contributory advertising, 15 U.S.C. § 1125(a)(1); (2) tortious interference with contractual relations; (3) **civil conspiracy**; and (4) violation of **Florida's** Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("**FDUTPA**"). (*Id.* ¶¶ 155–274.) In response, several Defendants answered (Docs. 12, 83, 84, 89) and, including the supplements, the CLS Defendants and Montgomery Law Defendants (collectively, "**Movants**") moved to dismiss the Complaint for lack of personal jurisdiction or improper venue or to transfer venue. (Doc. 31, 51, 56, 67). With Plaintiffs' response (Doc. 100), the matter is ripe.

## II. Legal Standards

A party may seek dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). To establish personal jurisdiction over a nonresident defendant, a plaintiff "initially need only allege sufficient facts to make out a prima facie case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If unrefuted, courts accept the well-pled facts as true. *Id.* at 1215. However, if the defendant submits non-conclusory declarations refuting the well-pled jurisdictional facts, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri,*

736 F.3d 1339, 1350 (11th Cir. 2013). Where the record evidence conflicts, courts must "construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

Rule 12(b)(3) offers another basis for dismissal. Under Rule 12(b)(3), a party may move to dismiss a case based on "improper venue." When a defendant invokes this provision, the plaintiff must show that the venue selected is proper. *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). All facts alleged are accepted as true, unless controverted by the defendant's evidence. *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990); *Delong*, 840 F.2d at 845. And courts may consider evidence outside of the pleadings and may make findings of fact to resolve the motion. *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1314 n.1 (11th Cir. 2013) (internal citations omitted). When affidavits conflict, a court "gives greater weight to the plaintiff's version of the jurisdictional facts" and "construe[s] such facts in the light most favorable to the plaintiff." *Home Ins. Co.*, 896 F.2d at 1355.

## III. Discussion

Movants challenge the Court's personal jurisdiction over them and the propriety of venue here. (Docs. 31, 51, 56, 67.) Specifically, they argue this Court does not have personal jurisdiction over them because their actions, taken outside this venue with limited connection to Florida, cannot establish personal jurisdiction. (Doc. 31, pp. 5–18.) Movants also argue venue is proper in the U.S. District Court for the Western District of Missouri, so dismissal or transfer is warranted. (*Id.* at 17–21.) The Court takes up each argument.

### A. Personal Jurisdiction

First is whether the Court has personal jurisdiction over Movants, as Missouri citizens. (Doc. 31, pp. 7–17.) To establish personal jurisdiction over a non-resident defendant, a plaintiff need only make out a prima facie case for jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). If the defendant challenges those allegations, the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). To the extent there is a dispute, the Court must "construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

**\*3** "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). First, there must be a basis for jurisdiction under Florida's long-arm statute, which confers either general or specific personal jurisdiction over the nonresident. *See id.* (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 919 (11th Cir. 1990)); *see* Fla. Stat. § 48.193(1). Second, exercising personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment so "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

### 1. Florida's Long-Arm Statute

At the outset, the Court notes Plaintiffs aren't claiming general personal jurisdiction in Florida; rather, they claim specific personal jurisdiction based on Movants' tortious conduct. (Doc. 1, ¶ 52; Doc. 100, pp. 10–14.) So Movants' arguments about general personal jurisdiction and specific personal jurisdiction based on personal injury or damage to physical property are of no consequence.[2] (*See* Doc. 31, pp. 13–14.) The Court dispenses of that inquiry and narrows its analysis to whether specific personal jurisdiction exists based on the Moving Defendants tortious conduct.

Florida's long-arm statute provides for specific personal jurisdiction over any action arising from a person "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state"

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 34 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

or "[c]ommitting a tortious act within this state." *Fla. Stat. § 48.193(1)(a)*. A defendant need not be physically present when committing the tort. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Rather, Florida's long-arm statute applies "to defendants committing tortious acts outside the state that cause injury in Florida." *Estate of Scutieri v. Chambers*, 386 F. App'x 951, 955 (11th Cir. 2010)[3] (collecting cases "firmly establish[ing] precedent" that Florida's long-arm statute applies to "tortious acts outside the state that cause injury in Florida"). "The threshold inquiry that must be determined is whether the allegations of the complaint state a cause of action." *Wendt*, 822 So. 2d at 1260. If the complaint does, then it must be determined whether the alleged cause of action arises from the conduct. *Id.*

### i. State a Cause of Action

The Court begins with whether Plaintiffs adequately stated a cause of action against Movants. Plaintiffs bring four distinct claims against Movants: (1) false advertising under the Lanham Act; (2) tortious interference with contractual relations; (3) civil conspiracy; and (4) FDUTPA violations (*see* Doc. 1, ¶¶ 155–274), which all constitute "tortious actions" under Florida's long-arm statute.[4] Movants only contend Plaintiffs failed to state a claim for tortious interference with contractual relations and civil conspiracy; they advance no argument regarding the Lanham Act or FDUTPA claims. (*See* Doc. 31, pp. 9–12.) So the Court only considers whether Plaintiffs stated a cause of action for tortious interference and civil conspiracy here.

**\*4** First is Plaintiffs' tortious interference claim. (Doc. 1, ¶¶ 202–249.) To plead a claim for tortious interference with contractual relations, a plaintiff must allege that: (1) a contract exists; (2) the defendant knew of the contract; (3) the defendant intentionally breached the contract; (4) there was no justification or privilege for the breach; and (5) plaintiff suffered damages. *Johns Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)). Here, Plaintiffs allege Movants knew of their contractual relationships with timeshare owners and unjustifiably induced timeshare owners to breach or terminate their contracts, harming Plaintiffs. (Doc. 1, ¶¶ 202–217.) Specifically, Plaintiffs contend Movants used false and misleading advertisements to solicit and persuade timeshare owners to hire Movants to aid in ridding them of their timeshare contracts and promising illusory and fraudulent services. (*Id.*) Movants counter that Plaintiffs fail to state a claim for tortious interference because they did not identify individual timeshare owners, Movants were working as agents on behalf of timeshare owners, and the timeshare owners were predisposed to breach the contracts. (Doc. 31, pp. 3, 11–12, 19.) The Court agrees with Plaintiffs.

Movants' arguments were raised and rejected by the Court in an analogous case. *See Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, No. 6:17-cv-1542-Orl-31DCI, 2018 WL 5279135, at *3–4 (M.D. Fla. Oct. 24, 2018). As explained in *Orange Lake*, Plaintiffs' need not identify individual timeshare owners at this stage of the proceedings. *Id.* at *3. And Movants' agency status does not resolve whether Plaintiffs' stated a potential claim because an agent is not necessarily immune from liability for tortious interference. *Id.* at *4 (explaining that "an agent's privilege to interfere with the contracts of its principal is not absolute." (citing *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987))). Finally, whether the timeshare owners were predisposed to breach their timeshare contracts is irrelevant to whether Plaintiffs' have stated a claim against Movants; it is a fact-intensive inquiry inappropriate for the pleading stage. *Orange Lake*, 2018 WL 5279135 at *4. So Plaintiffs adequately stated a claim for tortious interference with contractual relations.

Next is Plaintiffs' civil conspiracy claim. (Doc. 1, ¶¶ 250–262.) The elements of a civil conspiracy cause of action are: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) performing an overt act in pursuit of the conspiracy; and (4) damage to the plaintiff because of the acts under the conspiracy. *Philip Morris USA, Inc. v. Russo*, 175 So. 3d 681, 686 n.9 (Fla. 2015). Each co-conspirator does not have to commit an act to further the conspiracy; rather, it is sufficient that each conspirator knows about the scheme and aids in some way. *MP, LLC v. Sterling Holding, LLC*, 231 So. 3d 517, 522 (Fla. 3d DCA 2017).

Plaintiffs allege Movants, along with the other Defendants, worked in concert to unlawfully interfere with and induce timeshare owners to breach their timeshare contracts with Plaintiffs, which harmed Plaintiffs financially. (Doc. 1, ¶¶ 6, 250–261.)

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 35 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

Specifically, the CLS Defendants, MRC Defendants, and Catalyst all share the same office, share common ownership or control, split fees, and use identical or nearly identical false and misleading advertisements. (*Id.* ¶¶ 60–74.) The Montgomery Law Defendants are aware of the advertisements and agreed to represent the timeshare owner clients CLS Defendants, MRC Defendants, and Catalyst solicit with false advertisements. (*Id.* ¶¶ 75–86.) Movants' only argument—that Plaintiffs' civil conspiracy pleadings are conclusory—is wholly unavailing. (Doc. 31, p. 15.) Plaintiffs pled a cause of action for **civil conspiracy**.

### ii. Connection to Florida

Next, the Court turns to Florida's long-arm statute "connexity" requirement: whether there is a causal connection between Movants' alleged conduct in Florida and Plaintiffs' causes of action. *See Wendt*, 822 So. 2d at 1260. Plaintiffs allege specific personal jurisdiction exists regarding all claims because Defendants' tortious actions were directed at consumers in Florida. (Doc. 1, ¶ 52.) And Plaintiffs are based in Orlando, Florida, so Movants' conduct caused Plaintiffs' injury in Florida. (*Id.* ¶¶ 25–31.) "[U]nder Florida law, a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton*, 736 F.3d at 1353 (quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Allegations that a Florida company suffered injury from tortious conduct will state a prima facie case for personal jurisdiction under Florida Statute § 48.193(1)(a)(2). *See, e.g., Elandia Intern.*, 690 F. Supp. 2d at 1332.

**\*5** Here, Plaintiffs are Florida-based entities and allege that Movants false and misleading advertisements induced timeshare owners to stop making their payments, which caused Plaintiffs injury in Florida. (Doc. 1, ¶¶ 6–31.) Plaintiffs establish a prima facie case for exercising personal jurisdiction over Movants.

With that, the burden shifts to Movants to challenge jurisdiction by submitting affidavits or other evidence to rebut Plaintiffs' allegations. Movants, relying on several conclusory affidavits, contend they targeted no Florida entity and lack the requisite connection to Florida for this Court to exercise personal jurisdiction over them. (Doc. 31, pp. 7–18; *see also* Docs. 31–1, 31–2, 51-1, 51-2, 56-1, 67-7.) But Movants "cannot defeat personal jurisdiction based on tortious conduct by filing an affidavit that attests [Movants have] not conducted business in Florida and [do] not have any business contacts in the State." *Gazelles FL, Inc. v. Cupp*, No. 6:18-cv-544-Orl-22KRS, 2018 WL 7364591, at \*7 (M.D. Fla. Sept. 26, 2018) (collecting cases); *see also Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 199 F. App'x 741 (11th Cir. 2006) (explaining that "conclusory assertions that the defendant is not subject to jurisdiction" are insufficient to shift the burden back to the plaintiff to submit evidence in support of jurisdiction). And, as discussed *supra*, Movants need not have connection to Florida to satisfy Florida's long-arm statute —"a tortious act committed outside of the state of Florida resulting in injury to a Florida resident confers personal jurisdiction under Fla. Stat. [§ 48.193 (1)(a)(2)]." *Ultra-Images, LLC v. Franclemont*, No. 05-60538-CIV-MARRA/SELTZER, 2005 WL 8154574, at \*3 (S.D. Fla. Dec. 27, 2005). Movants failed to meet their burden. Florida's long-arm statute is satisfied.[5]

### 2. Due Process

With that, the Court turns to the second part of the analysis—whether exercising personal jurisdiction over Movants offends due process. To determine whether exercising specific personal jurisdiction comports with due process, courts employ a three-part test, which examines:

(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum [("**Relatedness Prong**")]; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws [("**Purposeful Availment Prong**")]; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice [("**Fair Play Prong**")].

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 36 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

**\*6** *Louis Vuitton*, 736 F.3d at 1355 (citation omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.*

First is the Relatedness Prong. The Relatedness Prong concerns whether a "plaintiff's claim ... arise[s] out of or relate[s] to at least one of defendant's contacts with the forum." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222 (11th Cir. 2009) (internal quotations omitted). This inquiry focuses on "the direct causal relationship among the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotations and citation omitted). Plaintiffs assert that their claims arise from Movants' purposeful actions directed at Florida, including: (1) operating and acquiring clients at in-person sales presentations in Florida; (2) sending direct mailing to Florida residents advertising in-person presentations in Florida; (3) working with a Florida-based attorney and soliciting her clients; and (4) sending demand letters to Plaintiffs in Florida. (Doc. 100, pp. 1–2, 4–7, 15–17.) Plaintiffs satisfied the Relatedness Prong.

Next is the Purposeful Availment Prong. For claims involving intentional torts there are two applicable tests to assess whether Plaintiffs satisfied this prong: (1) the "effects" test as described in *Calder v. Jones*, 465 U.S. 783 (1984); or (2) the traditional purposeful availment test. *See Louis Vuitton*, 736 F.3d at 1356–57. Under the "effects" test, the nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Lovelady*, 544 F.3d at 1286.

Plaintiffs' claims are all intentional torts, so the first requirement of the effects test is satisfied. (*See* Doc. 1, ¶¶ 155–274.) Next, simply aiming conduct at Plaintiffs who reside in Florida cannot establish the second requirement of the effects test. *See Walden v. Flores*, 571 U.S. 277 (2014). But Movants conduct rises above that level—they arranged in-person sales presentations in Florida, sent direct mailings and solicited Florida citizens, and worked with a Florida attorney. (Doc. 100, pp. 4–7.) And, given that conduct, Movants should have anticipated that any resulting injuries would occur in Florida, where Plaintiffs are located. *See Calder*, 465 U.S. at 789-90. Therefore, under the "effects" test, the Purposeful Availment Prong is met.[6]

Last is the Fair Play Prong. With the first two prongs satisfied, Movants "must make a compelling case that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. The factors, as applied here, are: (1) the burden on Movants; (2) Florida's interest in adjudicating the dispute; (3) Plaintiffs' interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interests of Florida and Missouri in furthering fundamental social policies. *Sloss v. Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007) (citations omitted).

**\*7** Applying these factors, the Court finds Movants failed to show that exercising jurisdiction here would violate traditional notions of fair play and substantial justice. First, Movants have offered no basis for concluding that adjudicating this case in Florida would unconstitutionally burden them. (*See* Doc. 31, pp. 16–17.) Second, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Third, Plaintiffs have an interest in obtaining relief in Florida, where their alleged injuries occurred. *See id.* (finding that a "plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of resident to obtain a remedy"). Last, the Court sees no reason the interests of the interstate judicial system or shared interest of Florida or Missouri would be harmed by adjudicating this dispute. So exercising personal jurisdiction over Movants would not offend due process.

### B. Venue

Besides the jurisdictional challenge addressed above, Movants argue that dismissal is warranted because this Court is an improper venue. (Doc. 23, pp. 23–25.) Venue is proper if the case is filed in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

Case 9:21-cv-81761-AMC Document 33-2 Entered on FLSD Docket 01/24/2022 Page 37 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Once a defendant moves to dismiss a claim for improper venue, "the plaintiff bears the burden of demonstrating that the venue selected is proper." *See, e.g.*, *Watson v. Cmty. Educ. Ctrs., Inc.*, No. 2:10-cv-778-36SPC, 2011 WL 3516150, at *2 (M.D. Fla. Aug. 11, 2011) (citing *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1998).

Plaintiffs assert venue is proper in this district because a substantial part of the events causing Plaintiffs' claims occurred in this district. (Doc. 1, ¶ 54; Doc. 100, p. 18.) The inquiry on a motion to dismiss for improper venue centers on the "relevant activities of the defendant, not the plaintiff" to ensure a defendant is not "haled into a remote district having no real relationship to the dispute." *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356–57 (S.D. Fla. 2009). The Court should consider "only those acts and omissions that have a close nexus to the wrong." *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003).

On review, the Court finds venue is proper in this district because a substantial part of the events causing Plaintiffs' claims occurred in this district. Specifically, Defendants sent direct mail advertisements to timeshare owners in this district inviting them to attend in-person presentations in this district. (*See* Doc. 100-7; *see also* Doc. 100, pp. 4–7.) And Defendants referred timeshare owners to an attorney with an office within this district and frequently communicated with the attorney while she was in this district. (*See* Doc. 100-9; *see also* Doc. 100, p. 4–7.) So venue is proper in this district.

However, while venue is proper in this district, the Court finds this case should be transferred to the Tampa Division. Local Rule 1.02(c) provides that all civil cases should be heard in the "Division encompassing the county or counties having the greatest nexus with the cause, giving due regard to the place where the claim arose and the residence or principal place of business of the parties." Here, the substantial conduct giving rise to this action occurred in Sarasota and Manatee counties, which both lie within the Tampa division of this district.[7] (*See* Doc. 100-7, ¶¶ 2–5; Doc. 100-9, ¶¶ 2, 8.) Therefore, in its discretion, the Court finds the Tampa Division is the proper venue for this action to proceed. *See* Local Rule 1.02(e).

### C. Transfer Venue

**\*8** Beyond that, Movants also contend this case should be transferred to the U.S. District Court for the Western District of Missouri based on the "first-filed" rule or the 28 U.S.C. § 1404(a) factors. (Doc. 31, pp. 18–21.) The Court addresses each basis for transfer.

### 1. The First-Filed Rule

First, Movants contend this case should be transferred under the first-filed rule because a similar action was first-filed in that venue—*King v. Wyndham Vacation Resorts, Inc.*, No. 6:18-cv-03319-MDH (W.D. Mo. 2018) ("**Missouri Action**"). (Doc. 31, pp. 18–21.) Plaintiffs counter that the instant action is distinct. (Doc. 100, pp. 19–20.)

Under the first-filed rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). In determining whether to transfer a case under the first-filed rule, the court with the second-filed action typically considers: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Rudolph & Me, Inc. v. Ornament Cent., LLC*, No. 8:11-CV-670-T-33EAJ, 2011 WL 3919711, at *2 (M.D. Fla.

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 38 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

Sept. 7, 2011). The party objecting to the first-filed rule must prove "compelling circumstances" to warrant an exception to the rule. *Manuel*, 430 F.3d at 1135.

On review, the Court finds Plaintiffs met their burden of rebutting the first-filed rule. To be sure, the Missouri Action was filed first, but other considerations do not support transferring this action under the first-filed rule. In the Missouri Action, thirty-three individual plaintiffs brought claims under the Missouri Merchandising Practices Act against four Wyndham entities and several individuals for misrepresentations made in relation to the plaintiffs' purchase of timeshare properties. *See King*, Docs. 1, 1-2 (Sept. 28, 2018).

The two actions involve different parties and different issues. None of the Defendants here are parties to the Missouri Action and the individual plaintiffs in the Missouri Action are not parties to this suit. (*See* Doc. 100, p. 20.) Further, the plaintiffs in the Missouri Action brought claims under the Missouri Merchandising Practices Act while this case involves claims under the Lanham Act and Florida law. (*Id.*) The Court declines to transfer this action based on the first-first rule.

## 2. Section 1404(a) Factors

Next, Movants contend transfer is appropriate under 28 U.S.C. § 1404(a). (Doc. 31, pp. 18–21.) "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Motions to transfer under § 1404(a) require a two-step inquiry. *S.E.C. v. BIH Corp.*, No. 2:10-cv-577-FtM-29DNF, 2011 WL 3862530, at *2 (M.D. Fla. Aug. 31, 2011). First, the Court must determine whether the case could have been brought in the transferee forum. *See BIH Corp.*, 2011 WL 3862530 at *2; *see also* 28 U.S.C. § 1404(a). If so, the Court balances the conveniences of the parties. *See BIH Corp*, 2011 WL 3862530 at *2. Movants must demonstrate that transfer is appropriate. *See In re Ricoh*, 870 F.2d at 575.

 **\*9** For the first step, Court looks to see if Plaintiffs could have sued in the Western District of Missouri. *See, e.g.*, *BIH Corp.*, 2011 WL 3862530 at *2. "An action might have been brought in a proposed transferee court if: (1) the court had jurisdiction over the subject of the action; (2) venue is proper there; and (3) the defendant is amendable to process issuing out of the transferee court." *Seal Shield, LLC v. Otter Prods., LLC*, No. 6:13-cv-967-Orl-37DAB, 2013 WL 6017330, at *2 (M.D. Fla. Nov. 13, 2013) (quoting *Suomen Colorize Oy v. DISH Network LLC*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011)). Here, this action could have been originally filed in the Western District of Missouri—all Defendants are Missouri citizens and the Western District of Missouri has subject matter jurisdiction over this action based on federal question jurisdiction. (*See* Doc. 1, ¶¶ 32–51.)

For the second step, the Court considers the convenience of the parties. While no single factor controls, courts consider:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1.

Upon consideration, the factors don't support transfer. For example, other than Defendants and their employees, Movants have identified no witnesses who reside outside Florida. (*See* Doc. 31, p. 19); *see also Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) (explaining that the location of the witness is given diminished weight "when the witnesses ... are employees of a party and their presence at trial can be obtained by that party"). And while some relevant documents and evidence are in Missouri, technology permits easy exchange of documents. Further,

Case 9:21-cv-81761-AMC   Document 33-2   Entered on FLSD Docket 01/24/2022   Page 39 of 40

Wyndham Vacation Ownership, Inc. v. Montgomery Law..., Not Reported in Fed....

this Court has several timeshare exit industry cases, it is familiar with the issues in this dispute. Ultimately, there is no district that will not inconvenience some parties and witnesses, but Plaintiffs' choice of forum is afforded great weight. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). So the § 1404(a) factors do not favor disrupting Plaintiffs' chosen forum. The Court declines to transfer this case.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motions to Dismiss for Lack of Personal Jurisdiction and/or Venue, or in the Alternative to Transfer (Doc. 31) **is DENIED**.

2. Movants shall file an answer to the Complaint (Doc. 1) by Thursday, **August 22, 2019**.

3. The Clerk is **DIRECTED** to transfer this action to the Tampa Division of the U.S. District Court for the Middle District of Florida.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 8, 2019.

## All Citations

Not Reported in Fed. Supp., 2019 WL 5394186

Footnotes

1   The "supplements" are intended to add additional Defendants to the Motion; they do not present additional argument. (Docs. *See* Docs. 31, 51, 56, 67.) Although the supplements are improper under Local Rule 3.01, and Plaintiffs highlight the pitfalls of permitting such impermissible filings (*see* Doc. 100, pp. 9–10), the Court will nonetheless consider the Defendants added via the three supplements to be additional parties to the Motion.

2   The same is true for Movant's argument regarding economic injuries. (*See* Doc. 31, p. 12.) Because Plaintiffs do not attempt to establish personal jurisdiction under Florida Statute 48.193(1)(f), Movants argument on that point is irrelevant.

3   While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

4   *See, e.g., Richard Boyd Enterprises, Inc. v. Aquarium Pharm., Inc.*, No. 09-22301-CIV, 2010 WL 11448226, at *4–*5 (S.D. Fla. Feb. 5, 2010) (holding that alleged violations of the Lanham Act and FDUPTA constituted tortious acts under Florida's long-arm statute); *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1332 (S.D. Fla. 2010) (finding the tortious interference satisfied Florida's long-arm statute where the defendants' tortious conduct caused injury in Florida); *Wilcox v. Stout*, 637 So.2d 335, 337 (Fla. 2d DCA 1994) (holding that, if plaintiff successfully alleges that any member of a ==conspiracy== commits a tortious act in ==Florida== in furtherance of the ==conspiracy==, then all of the conspirators are subject to ==Florida's== long-arm jurisdiction).

5   Even assuming *arguendo* that the burden shifted back to Plaintiffs', Plaintiffs submitted additional evidence establishing the connection between Movants' conduct in Florida and this action including, *inter alia*, that: (1) Catalyst operates in-person sales presentations in Florida on behalf of PTG; (2) Patrice Hayes, a Florida resident, was solicited via mail to attend an in-person presentation in Florida, and the advertisement falsely alleged that she could recover 100% of the money she paid for her timeshare; (3) Defendants informed Mary Clapp, a Florida attorney who worked in concert with Defendants, that they would be traveling to Florida, communicated with Ms. Clapp while she was in Florida, and are soliciting Ms. Clapp's clients; and (4) PTG has powers of attorney for Florida residents and acquires Florida clients through in-person presentations in Florida. (Doc. 100, pp. 4–9.) Thus, Plaintiffs' provided additional evidence to satisfy the connexity requirement.

6   The Eleventh Circuit has also applied the traditional minimum contacts test in intentional tort cases. *See, e.g., Sec. Exchange Comm'n v. Carillo*, 115 F.2d 1540, 1542 (11th Cir. 1997). However, the Court need not apply that test here because the effects test is satisfied. *See Lovelady*, 544 F.3d at 1286-88 (discussing both tests but only applying the *Calder* "effects test").

7    Ms. Hayes, one of Plaintiffs' timeshare owners and a Sarasota, Florida resident, received a direct mail advertisement from MRC for
an in-person sales presentation where MRC would explain how she could "recover 100% of the money [she] paid to purchase [her]
timeshare." (Doc. 100-7, ¶¶ 2–4.) Ms. Hayes attended the in-person sales presentation which was conducted by MRC employees at
the Homewood Suites in Sarasota, Florida. (*Id.* ¶¶ 5–6.) Additionally, Ms. Clapp, a Florida attorney, resides and has a law office in
Lakewood Ranch, Florida. (Doc. 100-9, ¶¶ 2–7.) Ms. Clapp met with Mr. Hemingway and Mr. Tucker and agreed to accept client
referrals for individuals "who had misrepresentation disputes with a timeshare company." (*Id.* ¶ 15.) Mr. Hemingway and Mr. Tucker
communicated with Ms. Clapp while she was in Florida and Ms. Clapp was referred Florida clients. (*Id.* ¶¶ 23–31.) And before
referring a client to Ms. Clapp, PTG would require a timeshare owner to complete a "Timeshare Misrepresentation Dispute Referral
Form" which lists Ms. Clapp's Missouri and Lakewood Ranch, Florida office locations. (*Id.* at 8–12.)

---

**End of Document**                                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.